UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL W. GAHAGAN                                    CIVIL ACTION

VERSUS                                                NO. 14-2619

UNITED STATES CUSTOMS AND BORDER                      SECTION "G" (2)
PROTECTION ET AL.

## FINDINGS AND RECOMMENDATION

This is a Freedom of Information Act ("FOIA") action.  5 U.S.C. § 552 et seq.

Plaintiff Michael W. Gahagan, proceeding pro se, is an attorney who practices

immigration law.  This matter was referred to me, Record Doc. No. 33, for findings and

recommendations pursuant to 28 U.S.C. § 636(b)(1)(B), regarding plaintiff's first and

second motions for summary judgment.  Record Doc. Nos. 9, 24.  Defendants, United

States Customs and Border Protection ("Customs"), United States Department of State

("State") and United States Immigration and Customs Enforcement ("Immigration"),

filed timely memoranda in opposition to both motions.  Record Doc. Nos. 18, 27.

Plaintiff received leave to file a memorandum in reply to each opposition memorandum.

Record Doc. Nos. 19-21, 28-30.

Gahagan represents Theodore Weegar in connection with removal proceedings

against Weegar in Immigration Court in New Orleans, Louisiana.  With Weegar's written

authorization, Gahagan submitted FOIA requests to defendants in July 2014, seeking all

records in each defendant's possession regarding Weegar, specifically including records

related to Weegar's entry into the United States, his stay in the United States and any investigation carried out by each defendant relating to Weegar's immigration status.

Plaintiff filed his first motion for summary judgment before any defendant had either responded to his FOIA requests or filed an answer to his complaint in this court. He seeks summary judgment (1) compelling all defendants to conduct an adequate search for responsive agency records in accordance with FOIA; (2) compelling all defendants to respond to his FOIA requests by producing all responsive, non-exempt agency records and a "Vaughn index" of any responsive records that the agency has withheld as exempt from disclosure under FOIA; and (3) enjoining defendants from continuing to withhold non-exempt agency records responsive to his FOIA requests. Record Doc. No. 9.

Gahagan's second motion, filed shortly after defendants responded to his FOIA requests but before they filed their answer, seeks summary judgment compelling (1) Customs to produce a Vaughn index of responsive agency records withheld under claim of exemption for the responsive document that was produced; (2) Immigration to produce unredacted copies of the fully redacted records marked as "Non Responsive" in its response, Plaintiff's Exh. 12, Record Doc. No. 24-3 at pp. 1-8; (3) Immigration to submit to the court for in camera review an unredacted copy of that agency's record reproduced in Plaintiff's Exhibit 13, Record Doc. No. 24-3 at pp. 9-10, to determine whether defendant's withholdings and claim of inability to segregate any non-exempt information are lawful under FOIA; and (4) defendants to produce any reasonably

2

segregable portion of each responsive agency record being withheld under claim of lawful FOIA exemption.  Gahagan also asks the court to enjoin defendants from continuing to withhold any non-exempt agency records responsive to plaintiff's FOIA requests.  Record Doc. No. 24.

In opposition, defendants contend that they have conducted adequate searches, produced all non-exempt, responsive records; provided a sworn declaration from a knowledgeable person at each agency that is the equivalent of a <u>Vaughn</u> index; justified each of the FOIA exemptions on which they based their withholding of all or parts of responsive documents; produced all segregable, responsive materials; and redacted or withheld entire documents only when no non-exempt portion was reasonably segregable. Record Doc. Nos. 18, 27.

I.    <u>STANDARDS OF REVIEW</u>

A.    <u>Applicable FOIA Principles</u>

Judge Englehardt of this court recently summarized the principles applicable to a FOIA request in another lawsuit brought by Gahagan.

> FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . , shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  Nine categories of information are exempt from FOIA's broad rules of disclosure.  5 U.S.C. § 552(b)(l)-(9).
> FOIA was enacted to ["]'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" <u>Batton v. Evers</u>, 598 F.3d 169, 175 (5th Cir. 2010) (quoting <u>Department of the Air Force v. Rose</u>, 425 U.S. 352, 361, (1976)); <u>see also</u> <u>Mavadia v. Caplinger</u>, Civil

3

Action No. 95-3542, 1996 WL 592742, *1 (E.D. La., 10/11/96) (Vance, J.) (FOIA "created a basic policy of full agency disclosure and a broad right of access to official information, reflecting citizens' right to know what their government is up to.") (quoting United States Department of Justice v. Reporters Committee for Freedom of Press, 489 U.S. 749, 772-73 (1989) (internal quotations omitted)).

      In FOIA, Congress included exemptions to disclosure "in order to protect specified confidentiality and privacy interests." NLRB v. Robbins Tire and Rubber Co., 437 U.S. 214, 220-21 (1978). These exemptions are explicitly limited by statute and construed narrowly. Batton, 598 F.3d at 175. "Thus, in a FOIA case, a court 'generally will grant an agency's motion for summary judgment only if the agency identifies the documents at issue and explains why they fall under exemptions.'" Cooper Cameron Corp. v. United States Department of Labor, 280 F.3d 539, 543 (5th Cir. 2002); see also Mavadia, 1996 WL 592742, *1 ("The agency may satisfy its burden of proof through the submission of affidavits that identify the documents at issue and explain why they fall under the claimed exemption. These affidavits must be clear, specific and reasonably detailed while describing the withheld information in a factual and nonconclusory manner.").

Gahagan v. U.S. Dep't of Justice, No. 13-5526, 2014 WL 2158479, at *2-3 (E.D. La.

May 23, 2014) (Engelhardt, J.).

      As to the adequacy of a defendant's search in response to a FOIA request,

"[a]n agency may demonstrate that it conducted an adequate search [for responsive documents] by showing that it used 'methods [that] can be reasonably expected to produce the information requested.'" Batton, 598 F.3d at 177 (quoting Oglesby v. United States Department of Army, 920 F.2d 57, 68 (D.C. Cir. 1990)). "The issue is not whether other documents may exist, but rather whether the search for undisclosed documents was adequate." In re Wade, 969 F.2d 241, 249 n. 11 (7th Cir. 1992).

      To demonstrate the reasonableness of its search, the agency may submit nonconclusory affidavits that explain in reasonable detail the scope and method of the agency's search. Brown v. Federal Bureau of Investigation, 873 F. Supp. 2d 388, 399 (D.D.C. 7/10/12) (citing Steinberg v. Department of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). These

affidavits are afforded a "presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" Id. (quoting SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotations and citations omitted).

The required level of detail is satisfied if the agency affidavit "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched . . . ." Oglesby, 920 F.2d at 68; accord Valencia-Lucena v. United States Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999). "There is no requirement that an agency search every record system." Oglesby, 920 F.2d at 68. "The agency cannot limit its search to only one or more places[, however,] if there are additional sources that are likely to turn up the information requested." Rosenberg v. United States Dept. of Immigration and Customs Enforcement, 959 F. Supp. 2d 61, 70-71 (D.D.C. Aug. 11, 2013) (quoting Valencia-Lucena, 180 F.3d at 326 (citation omitted)). "Once the agency has shown that its search was reasonable, the burden shifts to [plaintiff] to rebut [defendant's] evidence by a showing that the search was not conducted in good faith." Moore v. Aspin, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing Miller v. United States Department of State, 779 F.2d 1378, 1383 (8th Cir. 1985)).

Id. at *4-5.

Judge Brown, the presiding district judge in the instant case, described the standards for a Vaughn index in another FOIA case brought by Gahagan in this court.

A Vaughn index is "a routine device through which the defendant agency describes the responsive documents withheld or redacted and indicates why the exemptions claimed apply to the withheld material." In Stephenson v. I.R.S., the Fifth Circuit instructed that a Vaughn index consists of a[n] "index and detailed justification for their claim [of exemption]." Although the decision to order a Vaughn index is within the discretion of the Court, the Fifth Circuit instructs that "in instances where it is determined that records do exist," a district court "must do something more" than "rely solely upon an affidavit" to "assure itself of the factual basis and bona fides of the agency's claim of exemption." A district court abuses its discretion when it refuses to order a Vaughn index "or similar

procedure" when it "relies upon agency affidavit in an investigative context when alternative procedures . . . would more fully provide an accurate basis for decision."

The Fifth Circuit has noted that district courts may, in their discretion, use a variety of procedures in place of a <u>Vaughn</u> index to determine whether an agency has properly withheld responsive information, including requesting "detailed justifications where indexing alone would be inappropriate," conducting "random sample inspection of documents listed and described in an affidavit," and reviewing documents in camera.

<u>Gahagan v. U.S. Citizenship & Immigr. Servs.</u>, No. 14-2233, 2015 WL 350356, at *22

(E.D. La. Jan. 23, 2015) (Brown, J.) (quoting <u>Batton</u>, 598 F.3d at 174, 178 (citing <u>Jones</u>

<u>v. FBI</u>, 41 F.3d 238, 241 (6th Cir. 1994); <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir.

1973))); <u>Stephenson v. IRS</u>, 629 F.2d 1140, 1145 (5th Cir. 1980)).

B.     <u>Summary Judgment Standards Under Fed. R. Civ. P. 56</u>

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Rule 56, as revised effective December 1, 2010, establishes new procedures for supporting factual positions:

(1)  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored

6

> information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
> (2)  Objection That a Fact Is Not Supported by Admissible Evidence.  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.[1]
> (3)  Materials Not Cited.  The court need consider only the cited materials, but it may consider other materials in the record.
> (4)  Affidavits or Declarations.  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, but it is not required to negate elements of the nonmoving party's case.  Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce

---

[1]Gahagan attached only unsworn exhibits to his motions for summary judgment.  He does not support his statement of undisputed facts with citations to any admissible evidence, such as an affidavit or a declaration under penalty of perjury in accordance with 28 U.S.C. § 1927.  Citations to his "verified" complaint, which was neither sworn under oath before a notary public nor executed under penalty of perjury, are not admissible evidence.  However, defendants do not dispute the authenticity of plaintiff's exhibits and defendants have attached to their opposition memoranda verified copies of many of the same exhibits, which are competent evidence that the court has considered.

admissible evidence to carry its burden as to [a particular material] fact." Advisory Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine dispute of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the essential elements of its claim. Id. (citing Celotex, 477 U.S. at 321-23); accord U.S. ex rel. Patton v. Shaw Servs., L.L.C., 418 F. App'x 366, 371 (5th Cir. 2011). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex, 477 U.S. at 323; accord U.S. ex rel. Patton, 418 F. App'x at 371.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted)

8

(emphasis in original). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" Nat'l Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291 (5th Cir. 2009).

B.    Standards for Summary Judgment Under FOIA

In the instant case, plaintiff has moved for summary judgment. Typically, it is the defendant agency that moves for summary judgment in a FOIA case. Thus, modified summary judgment standards have developed applicable to FOIA cases..

> In the FOIA context, however, the traditional standard is modified because "the threshold question in any FOIA suit is whether the requester can even see the documents the character of which determines whether they can be released." Cooper Cameron Corp. v. U.S. Dep't of Labor, OSHA, 280 F.3d 539, 543 (5th Cir. 2002). Accordingly, the FOIA statute provides that, when the Government withholds information from disclosure, the agency has the burden to prove de novo that the information is exempt from disclosure. [5 U.S.C.] § 552(a)(4)(B). Thus, "because the burden to establish an exemption remains with the agency, the district court should

not grant summary judgment [to the defendant] based on a 'conclusory and generalized' assertion, even if the FOIA requester has not controverted that assertion."  Cooper Cameron Corp., 280 F.3d at 543 (quoting Niagara Mohawk Power Corp. v. U.S. Dep't of Energy, 169 F.3d 16, 18 (D.C. Cir. 1999)).

In applying this standard, we are mindful of the purpose behind the FOIA.  The FOIA was enacted to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  Dep't of the Air Force v. Rose, 425 U.S. 352, 361 . . . (1976) (quotation marks and citation omitted).  The exemptions to disclosure are explicitly limited by statute and should be construed narrowly.  Id.  Thus, in a FOIA case, a court "generally will grant an agency's motion for summary judgment only if the agency identifies the documents at issue and explains why they fall under exemptions."  Cooper Cameron Corp., 280 F.3d at 543 (emphasis added).

Conversely, we review a district court's decision whether to order the production of a Vaughn index, as well as general discovery orders, for an abuse of discretion.  Stephenson v. IRS, 629 F.2d 1140, 1145 (5th Cir. 1980) ("Resort to in camera review is discretionary, as is resort to a Vaughn index.") (internal citation omitted).  This court has stated that, while the FOIA "leaves to the [district] court's discretion whether to order an examination of the contents of the agency records at issue, in camera," in determining whether the claimed exemptions apply, "the legislative intent for exercise of this discretion is relatively clear."  Id. at 1144.  This is because "in instances where it is determined that records do exist, the District Court must do something more to assure itself of the factual basis and bona fides of the agency's claim of exemption than rely solely upon an affidavit."  Id. at 1145.

Finally, in analyzing the affidavits and declarations submitted by the government, the agency is entitled to a "presumption of legitimacy" unless there is evidence of bad faith in handling the FOIA request.  U.S. Dep't of State v. Ray, 502 U.S. 164, 179 . . . (1991).  The presumption of legitimacy, however, does not relieve the withholding agency of its burden of proving that the factual information sought falls within the statutory exemption asserted.  Stephenson, 629 F.2d at 1145.

Batton, 598 F.3d at 175-76 (footnote omitted).

Gahagan has moved for summary judgment in this FOIA case in which defendants bear the ultimate burden of proof. Thus, the <u>Celotex</u> and Fed. R. Civ. P. 56 standards apply to his motions. To prevail, Gahagan must show the absence of any genuinely disputed material facts as to each of his claims, such that a rational trier of fact could not find for defendants based on the evidence presented. Defendants, who bear the burden of proof at trial, must come forward with admissible evidence to show material fact disputes as to the adequacy of their searches for responsive records and the applicability of their claimed exemptions from disclosure. Factual controversies are construed in the light most favorable to the non-movants, the defendants, in this situation.

D.   <u>Preliminary Injunction Standards</u>

Although Gahagan does not couch most of the relief he seeks in his motions in terms of injunctive relief, he is seeking <u>judgment</u> in his favor on all claims in his Complaint for Declaratory and Injunctive Relief that defendants have not complied with their obligations under FOIA. He requests affirmative relief, also known as a mandatory injunction, directing defendants to conduct an adequate search for responsive records, produce all non-exempt responsive records, produce a <u>Vaughn</u> index, produce unredacted copies, produce any reasonably segregable portion of each responsive agency record being withheld and stop withholding non-exempt responsive records. For the reasons discussed fully herein, his motions for summary judgment seeking preliminary injunctive

relief should be denied, subject to an order granting him some intermediate relief in the form of supplemental evidentiary declarations from two of the defendants.

When injunctive relief is requested, the decision whether to grant or deny a preliminary injunction rests within the district court's discretion.  Janvey v. Alguire, 647 F.3d 585, 589, 592 (5th Cir. 2011).

In evaluating a claim for preliminary injunctive relief, this court is "bound by stringent standards . . . , for these preliminary decisions necessarily entail very delicate trial court balancing.  Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party."  Martinez v. Mathews, 544 F.2d 1233, 1242-43 (5th Cir. 1976) (emphasis added); accord Lake Charles Diesel, Inc. v. Gen. Motors Corp., 328 F.3d 192, 196 (5th Cir. 2003); see also RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1208 & n.3 (10th Cir. 2009) (citations omitted) ("Because the primary goal of a preliminary injunction is to preserve the pre-trial status quo, courts should be especially cautious when granting an injunction that requires the nonmoving party to take affirmative action–a mandatory preliminary injunction–before a trial on the merits occurs.  Certain types of preliminary injunctions are disfavored: (1) preliminary injunctions that alter the status quo, (2) mandatory preliminary injunctions, and (3) preliminary injunctions that give the movant all the relief it would be entitled to if it prevailed in a full trial.").

To obtain a preliminary injunction, Gahagan must demonstrate (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not granted, (3) that his substantial injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) that granting the preliminary injunction would not disserve the public interest.  <u>Voting for Am. Inc. v. Steen</u>, 732 F.3d 382, 386 (5th Cir. 2013); <u>Planned Parenthood Ass'n of Hidalgo Cnty. Tex., Inc. v. Suehs</u>, 692 F.3d 343, 348 (5th Cir. 2012).  "[A] preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has <u>clearly carried the burden of persuasion</u> on all four requirements."  <u>Voting for Am. Inc.</u>, 732 F.3d at 386 (quotation omitted) (emphasis added); <u>accord</u> <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 24 (2008); <u>Planned Parenthood Ass'n</u>, 692 F.3d at 348.


II.    <u>THE UNDISPUTED FACTS</u>

Solely for purposes of the pending motions for summary judgment, the following facts are accepted as undisputed.  On July 14, 2014, Gahagan mailed a FOIA request to each defendant, seeking disclosure of all non-exempt agency records regarding his client Weegar "in connection with removal proceedings . . . currently taking place before the Immigration Court in New Orleans, Louisiana."  Although plaintiff asked for the records "as soon as possible," he did not state that Weegar had a removal hearing set in December 2014.

13

> Specifically, I am requesting any and all documents, forms, or other written, photographic, electronic, computer generated, or recorded materials relating to Mr. Theodore Weegar in the possession of the [agency]. This includes, but is not limited to, any information relating to his entry into the United States, his stay in the United States, and any investigation(s) carried out by the [agency] relating to his immigration status.

Plaintiff's Exh. 1, Record Doc. No. 36-1[2] at p. 2; Plaintiff's Exh. 2, Record Doc. No. 36-2 at p. 2; Plaintiff's Exh. 6, Record Doc. No. 36-3 at p. 2; Defendants' Exh. C, Record Doc. No. 37-2 at p. 13.

On July 25, 2014, Immigration received plaintiff's request. Because he had said that his request involved pending removal proceedings, Immigration forwarded the request to the United States Citizenship and Immigration Services ("Citizenship"), the custodian of all Alien Files (known as "A-Files"), which are the official files for all immigration and naturalization records. The A-Files are organized by a unique Alien Registration Number assigned to each non-citizen. Immigration directed Citizenship to conduct a search, process any responsive records and provide a direct response to Gahagan. Declaration of Fernando Pineiro, Deputy FOIA Officer at Immigration's FOIA

---

[2]Plaintiff's Exhibits 1, 2 and 6 attached to his original motion for summary judgment, Record Doc. No. 9-3, and defendants' Exhibits B and C attached to their opposition memorandum, Record Doc. No. 18-2 and 18-3, contained unredacted personal data identifiers in violation of Fed. R. Civ. P. 5.2(a). The court directed the Clerk of Court to remove those exhibits from the record and ordered the parties to file new exhibits that comply with the Rule. Record Doc. No. 35. The substituted exhibits are in Record Doc. No. 36 for plaintiff and Record Doc. No. 37 for defendants.

Office, Defendant's Exh. D, Record Doc. No. 18-4 at p. 7, ¶ 23.  Immigration notified plaintiff that his request had been routed to Citizenship for a direct response.

On July 31, 2014, State notified Gahagan that he had not reasonably described the records he sought from it, as required by FOIA, and advised him of the information that he needed to provide regarding Weegar's visa records.  Because plaintiff's request was invalid, State closed the file.  Plaintiff responded on August 12, 2014, with a letter that he designated as an "appeal" of State's "denial" of his request, but he also provided the requested information.  State accepted this request for visa records based on the new information, opened a new case file and notified Gahagan on September 9, 2014, that it would process his request.

On September 19, 2014, Citizenship referred responsive documents from Weegar's A-File back to Immigration through an automated electronic database.

On November 15, 2014, Gahagan, having received no records from any defendant, filed the instant lawsuit.  He filed his motion for summary judgment on November 24, 2014, the same day that he finished serving his complaint on each defendant.

Customs released a one-page record responsive to plaintiff's FOIA request on December 4, 2014.  The document contained three redactions, which were indicated on the face of the document as withheld pursuant to FOIA Exemption (b)(7)(E).  5 U.S.C. § 552(b)(7)(E).  The remainder of the document was produced in full.

15

On December 9, 2014, Weegar and plaintiff appeared at the Immigration Court in New Orleans and obtained a continuance of Weegar's removal hearing until April 6, 2015.

On the same day, a Paralegal Specialist at Immigration conducted a search of the electronic database and found 56 pages of documents that had been referred to Immigration from Citizenship. After those pages were reviewed, Immigration officials determined that additional searches were necessary in the files of an Immigration directorate known as Enforcement and Removal Operations and at the Office of Chief Counsel in New Orleans. Requests were sent to those offices on December 12 and 15, 2014, respectively. Both offices conducted searches and each office produced five pages of responsive documents to Immigration, which Immigration reviewed for redaction and approval for release. Pineiro declaration, Defendant's Exh. D, Record Doc. No. 18-4 at pp. 7-9, ¶¶ 25-31.

State responded to Gahagan on December 15, 2014, that it had located two responsive records but was withholding both under FOIA Exemption (b)(3), 5 U.S.C. § 552(b)(3), and section 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f). Letter from State's Acting Director of the Office of Information Programs and Services, John F. Hackett, to Gahagan, Record Doc. No. 37-2 at p. 25. Hackett states in his declaration in this court that each document is a three-page printout that pertains directly to the issuance or refusal of visas to enter the United States and that neither record

16

contains any reasonably segregable, non-exempt information that could be released. Defendant's Exh. C, Hackett declaration, Record Doc. No. 37-2 at p. 11, ¶ 26.

On December 16, 2014, Immigration mailed to Gahagan 56 pages of responsive documents it had found in Weegar's A-File, five pages found by Enforcement and Removal Operations and five pages found by the Office of Chief Counsel in New Orleans. Pineiro declaration, Record Doc. No. 18-4 at pp. 7-9, ¶¶ 22-31. Immigration redacted some pages partially and others fully pursuant to statutory exemptions. It produced seven pages from Weegar's A-File that were fully redacted and marked "Non Responsive." Immigration's Vaughn index states that these seven pages "were Immigration Bond documents and a copy of a cancelled check which do not pertain to Plaintiff's client. The individual referenced in these documents has a different name and Alien Number." Vaughn index, Record Doc. No. 18-4, at p. 1, Entry No. 2.

Defendants filed their memorandum in opposition to plaintiff's first motion for summary judgment on December 16, 2014. Based on competent supporting evidence, defendants state that each one searched its files for responsive documents and produced such records to Gahagan, subject to withholding pursuant to statutory exemptions or, in the case of the documents concerning another individual unrelated to Weegar that were in his A-File, because they were non-responsive.

The next day, plaintiff sought leave to file his reply memorandum, in which he accuses defendants of lying because he had not received either State's or Immigration's

responses to his FOIA requests, which defendants had shown in their opposition memorandum were mailed to him only one and two days earlier.  On December 29, 2014, Gahagan filed his second motion for summary judgment in which he admits having received all of defendants' responses to his FOIA requests.

III.   ANALYSIS

    A.   Untimeliness of Defendants' Responses

Gahagan seeks summary judgment based on each defendant's failure to comply with the FOIA time limit.  However, the case law, including a Fifth Circuit decision and Judge Brown's prior decision in one of Gahagan's cases in this court, makes it clear that the question whether defendants complied with FOIA's time limitations is moot once defendants have responded to plaintiff's request.

> [A]lthough the FOIA establishes a presumptive twenty-day deadline for an agency to respond to a request, a lack of timeliness or compliance with FOIA deadlines does not preclude summary judgment for an agency, nor mandate summary judgment for the requester. . . .  [H]owever fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform. . . .  Rather, once an agency has responded to a request, the only issue for [a] Court to consider . . . is whether the [agency's] response complies with its obligations under FOIA.  [W]hether the search was completed before or after the requestor files a lawsuit, the remedy available to the plaintiff is the same:  access to the documents to which he is entitled under the law.  If the court determines that the agency has, however belatedly, released all nonexempt material, [the court has] no further judicial function to perform under the FOIA.  Therefore, the timing of the IRS's responses is of no moment.

Worsham v. U.S. Dep't of the Treasury, No. ELH-12-2635, 2013 WL 5274358, at *10

(D. Md. Sept. 17, 2013) (citing 5 U.S.C. § 552(a)(6); Perry v. Block, 684 F.2d 121, 125

(D.C. Cir. 1982); Hainey v. U.S. Dep't of the Interior, 925 F. Supp. 2d 34, 42 (D.D.C.

2013); Richardson v. U.S. Dep't of Justice, 730 F. Supp. 2d 225, 232 (D.D.C. 2010);

Landmark Legal Found. v. EPA, 272 F. Supp. 2d 59, 68 (D.D.C. 2003)) (quotations

omitted) (emphasis added); accord Ayanbadejo v. Chertoff, 517 F.3d 273, 278 (5th Cir.

2008); Ivey v. U.S. Dep't of Justice, No. 7:13-CV-00917, 2015 WL 507219, at *3

(N.D.N.Y. Feb. 6, 2015); Gahagan, 2015 WL 350356, at *20 n.223 (citing Ayanbadejo,

517 F.3d at 278); Waterkeeper Alliance v. U.S. Coast Guard, No. 13-289, 2014 WL

5351410, at *12 (D.D.C. Sept. 29, 2014) (citing Atkins v. Dep't of Justice, No. 90-5095,

1991 WL 185084, at *1 (D.C. Cir. Sept. 18, 1991); Crooker v. State Dep't, 628 F.2d 9,

10 (D.C. Cir. 1980)).

Accordingly, plaintiff's request for summary judgment based on the untimeliness

of defendants' responses to his FOIA requests should be dismissed as moot.

B.    Adequacy of Defendants' Searches

1.    FOIA permits Immigration to refer plaintiff's request to Citizenship.

Gahagan complains in both his summary judgment motions that Immigration

unlawfully routed his request to Citizenship and refused to search its own records, as

FOIA requires.  He contends that an agency's obligation to search and produce its own

19

records cannot be transferred to another agency where the records are <u>not</u> located.  He cites neither applicable law nor competent evidence to support this argument.

Pineiro's declaration establishes that Immigration and Citizenship refer FOIA requests to each other when responsive documents <u>are located</u> at the other agency, and that  Citizenship was the custodian of Weegar's A-File.  Such referrals are clearly permissible under FOIA.

In two other cases that Gahagan filed in this court, the presiding district judges rejected his argument and held that "referral is not forbidden by FOIA."  <u>Gahagan</u>, 2015 WL 350356, at *19; <u>accord</u> <u>Gahagan</u>, 2014 WL 2158479, at *1 n.3, *3 (citing 5 U.S.C. § 552(a)(6)(B)(iii)(III); <u>Sussman v. U.S. Marshals Serv.</u>, 494 F.3d 1106, 1118 (D.C. Cir. 2008); <u>Peralta v. U.S. Attorney's Ofc.</u>, 136 F.3d 169, 175-76 (D.C. Cir. 1998)); <u>see also</u> <u>Elect. Privacy Info. Ctr. v. Nat'l Sec. Agency</u>, 795 F. Supp. 2d 85, 92 (D.D.C. 2011) ("agencies that receive FOIA requests and discover responsive documents that were created by another agency may forward, or 'refer,' those requests to the agency that 'originated' the document"); <u>Schoenman v. FBI</u>, No. 04-2202, 2009 WL 763065, at *6 (D.D.C. Mar. 19, 2009) ("A 'referral' occurs when, in the course of reviewing documents responsive to a FOIA [ ] request, an agency finds a document that was originated by a second agency.  When that occurs, the agency receiving the FOIA [ ] request forwards, or 'refers,' the document(s) at issue to the second agency, which then becomes responsible for directly responding to the requester as to those documents.")).

20

Although the Fifth Circuit has not ruled on this issue, the District of Columbia Circuit (the leading court for FOIA decisions) has "held that an agency may 'acquit itself' of its 'duty' to act on requests by referring responsive documents to another agency, [provided that] . . . it 'does not lead to improper withholding' within the meaning of McGehee v. CIA, 697 F.2d 1095 (D.C. Cir. 1978)]." Gahagan, 2015 WL 350356, at *19 (citing Sussman, 494 F.3d at 1118).

The District of Columbia Circuit explained in Sussman that

> [a]gencies cannot simply refer documents to other agencies as a matter of course but must show that the procedure is reasonable under the circumstances. . . . FOIA explicitly permits "consultation . . . with another agency having a substantial interest in the determination of the request," 5 U.S.C. § 552(a)(6)(B)(iii)(III), and if an agency chooses outright referral instead, "the advantages that would be secured by delegating all responsibility for reviewing the document . . . rather than engaging in . . . 'consultation' . . . must then be balanced against any inconvenience to the requester caused by the referral," McGehee, 697 F.2d at 1111 n. 71.
>     [Plaintiff] mistakenly reads McGehee as barring referrals outright. McGehee's description of consultation as "the only procedure expressly set forth in [FOIA]" to deal with situations in which one agency possesses documents in which a second agency has a substantial interest, id., merely reiterates that consultation is per se acceptable; it does not preclude other reasonable procedures. Similarly, McGehee's admonition that the agency receiving the initial request "cannot simply refuse to act on the ground that the documents originated elsewhere," id. at 1110, indeed imposes a duty on that agency, but the agency may acquit itself through a referral, provided the referral does not lead to improper withholding under the McGehee test.

Sussman, 494 F.3d at 1118 (emphasis added).

Therefore, a referral is not an improper withholding of records unless "its net effect is significantly to impair the requester's ability to obtain the records or

21

significantly to increase the amount of time he must wait to obtain them." McGehee, 697 F.2d at 1110.  Contrary to Gahagan's contention, he suffered no significant prejudice in the instant case as a result of Immigration's referral of his FOIA request to Citizenship.

The evidence establishes that Gahagan did not advise Immigration in his FOIA request of the date of Weegar's removal hearing, which was set in December 2014. Nonetheless, Immigration immediately referred his request to Citizenship on July 25, 2014.  Less than two months later, on September 19, 2014, Citizenship referred responsive documents from Weegar's A-File back to Immigration through an electronic database.  Weegar and plaintiff appeared at the Immigration Court in New Orleans on December 9, 2014, and obtained a continuance of his removal hearing until April 6, 2015.  Immigration searched the electronic database on December 9, 2014, and found 56 pages of documents from Weegar's A-File that had been referred from Citizenship.  After reviewing those records, Immigration asked Enforcement and Removal Operations and the Office of Chief Counsel in New Orleans to conduct additional searches.  Those offices searched their files on December 12 and 15, 2014, respectively, and each one produced five pages of responsive documents to Immigration.  Immigration reviewed, redacted and approved the documents for release, and sent all 66 pages to Gahagan on December 16, 2014.  The entire process took less than six months from the date of receipt of plaintiff's request.  Pineiro's declaration establishes that Immigration receives multiple

22

tens of thousands of FOIA requests annually and has an extremely massive backlog of requests.  Pineiro declaration, Record Doc. No. 18-4 at ¶¶ 14-17.

On these facts, plaintiff has failed to show that his ability to obtain the records was significantly impaired or that the amount of time he waited to obtain them was significantly increased by the referral.  He has not shown that a rational trier of fact could not find for Immigration based on the evidence presented.  Accordingly, his motion for summary judgment on this basis should be denied.

> 2. Defendants are not required to name particular persons in their supporting declarations and *Vaughn* indices.

In his second summary judgment motion, Gahagan contends that defendants' declarations are deficient because they identify the persons who conducted the searches for responsive records by job title or category, rather than by specific names of the persons.  None of the decisions that plaintiff cites supports this argument.

An agency's

> affidavit that "lays out in detailed fashion:  (1) the files that were searched; (2) the reasons for searching those files; (3) the search terms employed; and (4) the search method used" is sufficient to show "that the search was reasonable and thorough both in time and method."  Porter v. CIA, 778 F. Supp. 2d 60, 69 (D.D.C. 2011); see also Lawyers' Comm. for Civil Rights v. U.S. Dep't of the Treasury, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) ("[A]ffidavits or declarations submitted by the agency . . . must describe what records were searched, by whom, and through what processes.") (internal citations and quotation marks omitted).
> . . . . The description of [an agency's] search is inadequate where the affidavit fails to "explain in reasonable detail the scope and method of the search conducted by the agency sufficient to demonstrate compliance with

the obligations imposed by the FOIA."  Morley [v. CIA, 508 F.3d 1108, 1122 (D.C. Cir. 2007))].

Bothwell v. CIA, No. 13-cv-05439-JSC, 2014 WL 5077186, at *5 (N.D. Cal. Oct. 9, 2014) (emphasis added); see also Batton, 598 F.3d at 177 (quotation omitted) ("An agency may demonstrate that it conducted an adequate search by showing that it used methods which can be reasonably expected to produce the information requested.").

Gahagan relies on the often-quoted "by whom" language that I have emphasized in the quotation from Bothwell above, which originated in the District of Columbia Circuit:  "[A]n agency's affidavit must 'describe in . . . detail what records were searched, by whom, and through what process.'"  Nat'l Sec. Counselors v. CIA, 960 F. Supp. 2d 101, 153 (D.D.C. 2013) (quoting Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 552 (D.C. Cir. 1994)) (emphasis added).  However, none of the cases cited by plaintiff required the agency to name the agency employees who conducted the searches. As indicated by Batton, Bothwell and National Security Counselors, the appropriate focus is on the scope and method of the agency's search, not the particular persons who performed it.  Gahagan has not shown that a rational trier of fact could not find for Immigration based on the evidence presented.  Accordingly, his motion for summary judgment on this basis should be denied.

3.    Agencies must search all locations "likely" to contain responsive records.

Gahagan argues in his second summary judgment motion that defendants' searches are deficient to the extent they aver that they searched only those locations determined to be "most likely" to  produce responsive documents, instead of all locations "likely" to contain such materials.  The District of Columbia's <u>Oglesby</u> decision is the seminal case on this issue.

> There is no requirement that an agency search every record system. <u>See</u> <u>Meeropol v. Meese</u>, 790 F.2d 942, 952-53 (D.C. Cir. 1986) (search is not presumed unreasonable simply because it fails to produce all relevant material); <u>Miller v. United States Department of State</u>, 779 F.2d 1378, 1384-85 (8th Cir. 1985) (same); <u>Perry v. Block</u>, 684 F.2d 121, 128 (D.C. Cir. 1982) (agency need not demonstrate that all responsive documents were found and that no other relevant documents could possibly exist); <u>Marks v. United States Department of Justice</u>, 578 F.2d 261, 263 (9th Cir. 1978) (no requirement that an agency search every division or field office on its own initiative in response to a FOIA request when the agency believes responsive documents are likely to be located in one place). However, the agency cannot limit its search to only one record system if there are others that are <u>likely to turn up the information</u> requested.

<u>Oglesby</u>, 920 F.2d at 67-68 (footnotes omitted) (emphasis added).

Thus, "[f]or a search to be adequate, an agency must search all record systems 'likely to produce responsive documents.'" <u>Hall v. CIA</u>, 881 F. Supp. 2d 38, 59 (D.D.C. 2012) (quoting <u>Oglesby</u>, 920 F.2d at 68) (emphasis added); <u>accord</u> <u>Gahagan</u>, 2014 WL 2158479, at *4-5.  Several courts have deemed inadequate an agency's declaration that it searched the "records systems <u>most likely</u> to contain information responsive to

25

[plaintiff's FOIA request]. . . .  [O]nly searching the databases 'most likely' to contain responsive documents does not satisfy FOIA, as it may preclude record systems that are less likely than others to contain responsive documents, yet may still likely contain them." Hall, 881 F. Supp. 2d at 59; accord Gahagan, 2014 WL 2158479, at *5 (citing Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999); Oglesby, 920 F.2d at 68; Rosenberg v. U.S. Dep't of Immigr. & Customs Enforcement, 959 F. Supp. 2d 61, 70-71 (D.D.C. Aug. 11, 2013)).

Customs submitted the declaration of Sabrina Burroughs, Director of the FOIA Division, Privacy and Diversity Office, Office of the Commissioner of Customs, in support of the adequacy of its search.  Burroughs declares that Customs searched a single, integrated electronic database that combines two major systems.  Defendant's Exh. B, Record Doc. No. 37-1, at pp. 2-3, ¶ 6.  Although she describes the scope and contents of those systems, she does not state that Customs officials determined that the integrated database is the sole location "likely" to contain responsive records, or that other locations were considered but determined not to be likely sources.  This declaration fails to meet the Oglesby standard.

The remedy for an inadequate affidavit is not to grant summary judgment in plaintiff's favor, but to compel the agency to provide a supplemental affidavit addressing whether any other locations are likely to contain responsive records and, if so, the search that was made in those locations, and/or how defendant determined, if it did, that no other

record systems are likely to contain responsive material.  Gahagan, 2014 WL 2158479, at *5.  Accordingly, Gahagan's motion for summary judgment should be denied in this respect, but Customs should be ordered to file a supplemental declaration that addresses this issue specifically.

In contrast, the declaration of Hackett of the State Department meets the Oglesby standard.  Hackett declares that his office ordinarily evaluates any FOIA request to determine which offices, overseas posts or other records systems within the Department "may reasonably be expected" to contain the records requested, based on the description in and the nature and scope of the request and on departmental personnel's familiarity with the holdings of its records systems, applicable disposition schedules and the substantive and functional mandates of numerous Department offices and Foreign Service posts and missions.  Record Doc. No. 18-3 at ¶ 9.  Hackett describes generally the various files maintained by these offices, posts and missions.  Id. at ¶ 10.  He avers that, after reviewing Gahagan's request, his office "determined that the only offices and records reasonably likely to have documents responsive to Plaintiff's requests were" five locations that he lists.  Hackett explains that "the Department relies on the knowledge and expertise of the employees of each bureau/office/post to determine the files and locations reasonably likely to house responsive records and the best means of locating such records, as these employees are in the best position to know how their files are organized" and "to determine which search terms would yield potentially responsive

records." Id. at ¶ 11 (emphasis added). Hackett then describes the particular searches undertaken by each of the five locations identified. Id. at ¶¶ 12-21.

Hackett's description of the search methodology used by State is reasonably detailed, clear and specific. The terminology he uses of "may reasonably be expected" and "reasonably likely" is semantically indistinguishable from Oglesby's requirement that the agency search all systems "likely to produce responsive documents," especially in light of the Fifth Circuit's rule that "[a]n agency may demonstrate that it conducted an adequate search [for responsive documents] by showing that it used 'methods [that] can be reasonably expected to produce the information requested.'" Gahagan, 2014 WL 2158479, at *4 (quoting Batton, 598 F.3d at 177) (emphasis added); see also definitions of "likely" at Dictionary.com Unabridged, http://dictionary.reference.com/browse/likely (based on the Random House Dictionary 2015) (visited Apr. 19, 2015) ("1. probably or apparently destined . . . . 2. seeming like truth, fact, or certainty; reasonably to be believed or expected . . . ."). Therefore, Gahagan has not shown that a rational trier of fact could not find for State as to the adequacy of its searches, based on Hackett's description, and plaintiff's motion for summary judgment on this basis should be denied.

The declaration of Pineiro for Immigration is similarly detailed, but uses the "most likely" terminology, Record Doc. No. 18-4 at ¶¶ 12, 26, that the District of Columbia Circuit and some district courts, including Judge Engelhardt in one of Gahagan's cases in this court, have found insufficient to meet the Oglesby standard. Accordingly,

28

Gahagan's motion for summary judgment should be denied in this respect, but Immigration should be ordered to file a supplemental declaration addressing whether any other locations are likely to contain responsive records and, if so, the search that was made in those locations, and/or how defendant determined, if it did, that no other record systems are likely to contain responsive material.

      C.    <u>Adequacy of Defendants' *Vaughn* Indices and Withholdings</u>

Gahagan argues in his first motion for summary judgment, which he filed before any defendant had responded to his FOIA requests, that each defendant failed to produce all responsive, non-exempt agency records and to provide a <u>Vaughn</u> index of responsive records that the agency had withheld as exempt from disclosure under FOIA.  In his second motion, plaintiff seeks summary judgment compelling:  (1) Customs to produce a <u>Vaughn</u> index of responsive agency records withheld under claim of exemption for the responsive document that was produced; (2) Immigration to produce unredacted copies of the records it marked as "Non Responsive," Plaintiff's Exh. 12, Record Doc. No. 24-3 at pp. 1-8; (3) Immigration to submit to the court for in camera review an unredacted copy of that agency's record in Plaintiff's Exhibit 13, Record Doc. No. 24-3 at pp. 9-10, to determine whether defendant's withholdings and claim of inability to segregate any non-exempt information are lawful under FOIA; and (4) defendants to produce any reasonably segregable portion of each responsive agency record being withheld under a claim of a lawful FOIA exemption.  Plaintiff's second motion appears to concede that

some responsive records have been produced and that defendants Immigration and State have provided <u>Vaughn</u> indices, rendering moot his first motion for summary judgment to the extent it seeks to compel all defendants to produce all responsive records and <u>Vaughn</u> indices.

### 1.   The *Vaughn* index generally

As previously noted, a "<u>Vaughn</u> index is a routine device through which the defendant agency describes the responsive documents withheld or redacted and indicates why the exemptions claimed apply to the withheld material. . . .  [A] <u>Vaughn</u> index consists of a[n] 'index and detailed justification for [defendant's] claim [of exemption]." <u>Gahagan</u>, 2015 WL 350356, at *22 (quotations and citations omitted).

There is no set format for a <u>Vaughn</u> index.  <u>McQueen v. United States</u>, 264 F. Supp. 2d 502, 515 n.7 (S.D. Tex. 2003), <u>aff'd</u>, 100 F. App'x 964 (5th Cir. 2004) (citing <u>Hinton v. Dep't of Justice</u>, 844 F.2d 126, 129 (3d Cir. 1988); <u>Keys v. U.S. Dep't of Justice</u>, 830 F.2d 337, 349 (D.C. Cir. 1987)).  Thus, an agency's affidavit or declaration may be an adequate <u>Vaughn</u> index.  <u>See</u> <u>John Doe Agency v. John Doe Corp.</u>, 493 U.S. 146, 149 n.1 (1989) (quoting <u>Vaughn</u>, 484 F.2d at 826) ("[t]he 'Index' usually consists of a detailed affidavit, the purpose of which is to 'permit the court system effectively and efficiently to evaluate the factual nature of disputed information.'").  I find that each defendant has produced a <u>Vaughn</u> index in the form of admissible declarations and that

30

plaintiff's first motion for summary judgment is moot to the extent it seeks to compel

each defendant to do so.

> As to plaintiff's request that the court review withheld documents in camera,

> Congress did not intend for a court to review in camera every record an agency withholds. A <u>Vaughn</u> Index relieves a court of this burden. It allows a court to effectively and efficiently evaluate whether a withheld record is exempt; informs a court what information is contained in a withheld record so that the court can determine de novo if the record is in fact exempt; and gives the requester a meaningful opportunity to contest the agency's claim of exemption. The Index must therefore adequately describe the record, state what exemption the agency claims and explain why the agency believes the record falls within the exemption. The agency does not have to describe a record to the extent that the description compromises the secrecy of the record. A description is sufficient if it enables a court to reach its own conclusion as to what is in the record. Mere conclusory and generalized statements that a record falls within an exempt category, however, are insufficient.

<u>Church of Scientology v. IRS</u>, 816 F. Supp. 1138, 1146 (W.D. Tex. 1993) (citing <u>NLRB v. Robbins Tire & Rubber Co.</u>, 437 U.S. 214, 224 (1978); <u>Schiller v. NLRB</u>, 964 F.2d 1205, 1207 (D.C. Cir. 1992); <u>Nat'l Treasury Emps. Union v. U.S. Customs Serv.</u>, 802 F.2d 525, 527 (D.C. Cir. 1986); <u>Vaughn</u>, 484 F.2d at 826-27); <u>see also</u> <u>Stephenson</u>, 629 F.2d at 1145 ("Such flexibility is consistent with the purposes of the Act and the role of the trial court in such actions."); <u>Henry v. FBI</u>, No. 92-4683, 1993 WL 67250, at *2 (5th Cir. 1993) ("It is well established that resort to a <u>Vaughn</u> index or <u>in camera</u> review is purely discretionary. The district court was not required to employ either approach."); <u>McQueen</u>, 264 F. Supp. 2d at 533 n.12 (citing <u>Stephenson</u>, 629 F.2d at 1145 ("[A]n <u>in</u>

camera review is discretionary, and reliance on detailed <u>Vaughn</u> indices and affidavits

suffices to satisfy the government's burden of proving the application of exemptions.").

> 2.   <u>FOIA exemptions generally</u>

An agency may withhold access to records responsive to a FOIA request

> to the extent the records come within one of FOIA's nine statutory
> exemptions. 5 U.S.C. §§ 552(b)(1)-(9).   A district court reviews an
> agency's exemption claims de novo. 5 U.S.C. § 552(a)(4)(B). The burden
> of proof is on the agency to establish the exemption.   An agency may
> sustain its burden through the submission of detailed affidavits that identify
> the documents at issue and explain why they fall under the claimed
> exemptions.   Summary judgment may be granted solely on the basis of
> these affidavits if they are clear, specific, reasonably detailed, and describe
> the withheld information in a factual and nonconclusory manner.

<u>McQueen</u>, 264 F. Supp. 2d at 514 (citing <u>Reporters Comm.</u>, 489 U.S. at 755; <u>Cooper</u>

<u>Cameron Corp.</u>, 280 F.3d at 543).

When the agency determines that responsive materials are subject to one or more

statutory exemptions, FOIA requires the agency to provide to the requesting party

> [a]ny reasonably segregable portion of a record . . . after deletion of the
> portions which are exempt under this subsection.   The amount of
> information deleted, and the exemption under which the deletion is made,
> shall be indicated on the released portion of the record, unless including
> that indication would harm an interest protected by the exemption in this
> subsection under which the deletion is made.   If technically feasible, the
> amount of the information deleted, and the exemption under which the
> deletion is made, shall be indicated at the place in the record where such
> deletion is made.

5 U.S.C. § 556(b).

> [I]n analyzing the affidavits and declarations submitted by the government, the agency is entitled to a "presumption of legitimacy" unless there is evidence of bad faith in handling the FOIA request. The presumption of legitimacy, however, does not relieve the withholding agency of its burden of proving that the factual information sought falls within the statutory exemption asserted.

Batton, 598 F.3d at 176 (citations omitted). "[T]he burden of establishing the validity of a decision to withhold information remains with the agency, and the Court will not accept an agency's 'conclusory and generalized assertion[s]' on a motion for summary judgment, even if those assertions are uncontroverted." Gahagan, 2015 WL 350356 at *12 (quoting Batton, 598 F.3d at 175) (citing Cooper Cameron Corp., 280 F.3d at 543); see also id. at *23 (quoting Batton, 598 F.3d at 179) ("the agency cannot rely on 'conclusory "say so" to prove the applicability of an exemption'").

### 3.   Customs' *Vaughn* index

As previously discussed, Burroughs's declaration is insufficient to demonstrate the adequacy of defendant Customs' search and a supplemental declaration should be required regarding that issue. However, the court will address plaintiff's arguments regarding the appropriateness of the redactions on the one-page document that Customs located and produced, which Burroughs discusses in her declaration.

The declaration qualifies as a Vaughn index under the authorities cited above. The question is whether Burroughs adequately justifies the three redactions made on the single page that Customs released. She asserts that the information was withheld

33

pursuant to FOIA Exemptions (b)(6), (b)(7)(C) and (b)(7)(E).  Burroughs declaration,
Record Doc. No. 37-1 at p. 3, ¶ 9.  The cover letter sent to plaintiff with the document
contains the same statement.  Record Doc. No. 37-1 at p. 8.

Gahagan correctly observes that, despite the statements in the cover letter and
Burroughs's declaration that Customs applied three exemptions, Exemption (b)(7)(e) is
the only one noted on the face of the document at the three places where information was
redacted.  Record of Deportable/Inadmissible Alien, Record Doc. No. 37-1 at p. 10.
Plaintiff argues, and I agree, that Burroughs's explanations of all three exemptions are
generic and inadequate to meet the agency's burden to provide a clear, specific and
reasonably detailed affidavit that describes the withheld information in a factual and
nonconclusory manner.

Under FOIA,

Exemption 6 provides that an agency need not disclose "personnel and
medical files and similar files the disclosure of which would constitute a
clearly unwarranted invasion of personal privacy." § 552(b)(6). Exemption
7(C) provides that an agency need not disclose "records or information
compiled for law enforcement purposes, but only to the extent that the
production of such law enforcement records or information . . . (C) could
reasonably be expected to constitute an unwarranted invasion of personal
privacy."  § 552(b)(7)(C).
  The Supreme Court has clarified that "whether disclosure of a
private document under Exemption 7(C) is warranted must turn on the
nature of the requested document and its relationship to the basic purpose
of the Freedom of Information Act to open agency action to the light of
public scrutiny, rather than on the particular purpose for which the
document is being requested."  U.S. Dep't of Justice v. Reporters Comm.
for Freedom of Press, 489 U.S. 749, 772 . . . (1989) (internal citation and

quotation marks omitted).  Instead, the "court must balance the public interest in disclosure against the interest Congress intended the Exemption to protect."  Id. at 776. . . .   This court has performed the same analysis in cases arising under Exemption 6.  Avondale Indus., Inc. v. NLRB, 90 F.3d 955, 960 (5th Cir. 1996).

Batton, 598 F.3d at 180.

As in Batton, this court cannot determine the nature of the information withheld based on the very general categories that Burroughs states are covered by Exemptions 6 and 7(C).  As to Exemption 6, she states:

[The types of documents and/or information that we have withheld may consist of birth certificates, naturalization certificates, driver license, social security numbers, home addresses, dates of birth, or various other documents and/or information belonging to a third-party that are considered personal.] The privacy interests of the individuals in the records you have requested outweigh any minimal interest in disclosure of the information.

Burroughs declaration, Record Doc. No. 18-2 at p. 4, ¶ 11 (brackets in original) (emphasis added).  The identical language was in the cover letter that Customs sent to Gahagan.  Id. at p. 8.

On their face, the three "minimal" redactions, as defendant describes them, on the record that Customs produced certainly do not encompass birth or naturalization certificates.  If the redactions, if any, made pursuant to Exemption 6 cover identifiers such as social security numbers, home addresses or dates of birth, it is a simple matter to identify these categories without compromising anyone's personal privacy, particularly when Burroughs avers that she conducted a line-by-line review of the single

page produced.  The Fifth Circuit has held that a <u>Vaughn</u> index description of withheld

information by categorical type is not inappropriate "in cases that implicate law

enforcement records or concerns over an unwarranted invasion of privacy."  <u>Batton</u>, 598

F.3d at 181 (citing <u>Reporters Comm.</u>, 489 U.S. at 777-78; <u>Cooper Cameron Corp.</u>, 280

F.3d at 544 & n.11).

> But unlike a case where an agency asserts that "rap sheets in general . . . are
> 'law enforcement records'" that are exempt from disclosure, . . . the
> [defendant's] affidavit does not identify particular types of documents that
> are categorically exempt.  In other words, using the law enforcement
> example from the <u>Reporters Committee</u> case, it is one thing to say that a
> particular type of document–e.g., a "rap sheet"–is categorically a "law
> enforcement document" and quite another to say "we withheld a group of
> law enforcement documents."  In this case, the ambiguity in the type of
> documents withheld and the information contained therein makes it
> impossible to determine whether the individuals named in the documents
> have a viable privacy interest.
>
> In short, it is impossible to tell the type of information contained
> within the broad category of "certain Examination Workpapers, including
> information from public and private sources."  These broad, conclusory
> descriptions of the documents afford [plaintiff] no opportunity to challenge
> the withholding and offer this court no opportunity to meaningfully review
> the applicability of the claimed exemptions.

<u>Id.</u> (quoting <u>Reporters Comm.</u>, 489 U.S. at 779) (citing <u>Avondale Indus., Inc.</u>, 90 F.3d

at 960).

As in <u>Batton</u>, Burroughs's generic listing of various types of information that <u>may</u>

be withheld from documents produced by Customs, as opposed to specific types of

information actually withheld from this particular record, affords plaintiff no opportunity

36

to challenge the withholding and offers this court no opportunity to meaningfully review the applicability of the claimed Exemption 6.

As to Exemption 7(C), Burroughs does not even specifically identify the document as containing information "compiled for law enforcement purposes," which is a threshold requirement for application of any of the exemptions under the umbrella of Exemption 7. Public Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, 740 F.3d 195, 204-05 (D.C. Cir. 2014) (citing 5 U.S.C. § 552(b)(7)). Burroughs does not specify even a broad category of information that was redacted from the document. She merely parroted the paragraph regarding Exemption 7(C) from the cover letter sent to Gahagan. Both the letter and the declaration conclude that "categorical withholding of information that identifies third parties in law enforcement is ordinarily appropriate." Record Doc. No. 18-2 at p. 4, ¶ 13; id. at p. 8.

Burroughs' conclusory declarations regarding both Exemptions 6 and 7(C), combined with the designations on the face of the document that Exemption 7(E) was the only exemption applied, create such ambiguity that the court is "unable to meaningfully review the applicability of th[ese] exemptions." Batton, 598 F.3d at 181.

Exemption 7(E), which is specifically noted in the three redacted places on the document, applies to records or information compiled for law enforcement purposes, but only to the extent that production of such records "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose

37

guidelines for law enforcement investigations or prosecutions if such disclosure could

reasonably be expected to risk circumvention of the law." 5 U.S.C. § 556(b)(7)(E).

> Exemption 7(E)'s requirement that disclosure risk circumvention of the law
> sets a relatively low bar for the agency to justify withholding. To clear that
> relatively low bar, an agency must demonstrate only that release of a
> document might increase the risk that a law will be violated or that past
> violators will escape legal consequences.

Public Emps. for Envtl. Responsibility, 740 F.3d at 204-05 (quotations and citations

omitted). Even with a relatively low bar, the agency must produce evidence to carry its

burden.

In support of Exemption 7(E), Burroughs states that the redacted information

"consists of law enforcement guidelines, techniques and procedures such as," followed

by a lengthy list of various types of procedures, techniques, instructions, names, criteria,

topics and other information. She asserts that disclosure of the redacted information in

this case would permit potential violators to develop countermeasures to evade detection,

inspection and examination methods, and would aid those who seek to circumvent

Customs' operations and thus harm the agency's ability to enforce federal laws. She

concludes that "[a]ny further details description [sic] of the information withheld . . .

would divulge to Plaintiff the examination and inspection procedures, internal reporting

requirements and instructions on how to process international travelers, the very

information that [Customs] seeks to protect." Record Doc. No. 37-1 at pp. 5-6, ¶ 15.

Burroughs's declaration fails to provide a clear, specific, reasonably detailed, factual and non-conclusory description of the withheld information, especially in light of the minimal space taken up by the redactions on the document and Burroughs's purported line-by-line review.  This evidence affords Gahagan "no opportunity to challenge the withholding and offer[s] this court no opportunity to meaningfully review the applicability of the claimed exemptions." Batton, 598 F.3d at 181.  The declaration is unlike the specific, detailed and nonconclusory affidavits that courts have found sufficient to support withholding under Exemption 7(E). See, e.g., Public Emps. for Envtl. Responsibility, 740 F.3d at 200, 204, 205 (Exemption 7(E) applied when declarations established that the specific "emergency action plans contain guidelines outlining the steps that law enforcement and emergency personnel should take in response to a failure of the dams."  The plans "describe the surveillance and detection of the cause of an emergency dam failure as well as the process for evaluating the dam failure when the emergency subsides.  The guidelines also set forth the security precautions that law enforcement personnel should implement around the dams during emergency conditions."  The Agency's declarations "reasonably explained" that "[t]errorists or criminals could use the information in the emergency action plans to thwart rescue operations following a dam failure or to obstruct attempts to investigate the source of such a failure."); Shapiro v. U.S. Dep't of Justice, No. 13-595(RMC), 2015 WL 410566, at *7 (D.D.C. Feb. 2, 2015) (Exemption 7(E) applied when FBI affidavits

39

adequately described three specific types of investigative techniques and procedures and established that "[r]evealing the techniques, potential targets of the techniques, and/or the nature of the information gleaned via their use in the context of this material would effectively reveal specifics of how, and in what settings the techniques are employed;" that "revealing the titles of certain investigative units could alert individuals to a type of technique or activity used by FBI that might not necessarily be anticipated by criminal actors;" that release of internal web addresses and phone numbers could lead to "massive, disruptive, and misleading amounts of communications as well as harassment and threats" and "could enable circumvention of the law by allowing criminals to gain access to internal communication channels used by the FBI to communicate internally."); McQueen, 264 F. Supp. 2d at 521 (Exemption 7(E) applied when agency's evidence "describes the application of the exemption to the documents, stating that for both documents the withholdings detail how an agent was able to detect that McQueen and others were able to evade payment of federal diesel fuel excise taxes. The summary judgment evidence shows that these details, by themselves, would reveal law enforcement techniques and procedures for detecting federal diesel fuel tax evasion.").

Accordingly, Customs should be ordered to provide a supplemental declaration that clarifies whether Exemptions 6 and 7(C) were actually applied and describes more specifically the scope of information redacted pursuant to these exemptions. The supplemental declaration should also provide a meaningful, less conclusory description

of the types of information withheld under Exemption 7(E) and the agency's justification

for withholding the information.

### 4.   "Non-responsive" documents produced by Immigration

Gahagan seeks an order requiring Immigration to produce unredacted copies of

the records marked "Non Responsive" in Immigration's response to his FOIA request.

Plaintiff's Exh. 12, Record Doc. No. 24-3 at pp. 1-8, Bates Nos. 15-ICFO-09652 0000

22 through 0000 28.  These seven pages were redacted in their entirety, marked as non-

responsive and sent to plaintiff.  Gahagan argues that the documents were found during

a search that, as Immigration insists in its supporting declaration, was designed to recover

materials responsive to his request and that, because the documents were produced to

him, they must be responsive.  He contends that marking them as non-responsive is not

one of FOIA's nine permissible exemptions to his request and that Immigration must

produce the unredacted documents.

Immigration's declarant, Pineiro, avers that these pages "originated from Mr.

Weegar's A-File," but "they were not produced because they were not responsive" to his

request.  Record Doc. No. 18-4, at p. 11, ¶ 42.  The detailed <u>Vaughn</u> index attached to

Pineiro's declaration explains that "[t]hese documents were Immigration Bond

documents and a copy of a cancelled check which do not pertain to Plaintiff's client.  The

individual referenced in these documents has a different name and Alien Number."  <u>Id.</u>

at p. 21, Entry No. 2.  Pineiro does not explain why such documents were in Weegar's

Alien File nor why Immigration produced them to plaintiff in fully redacted form, despite Pineiro's assertion that Immigration did not produce them.

Regardless of the semantic confusion, Pineiro's uncontradicted declaration establishes that these seven pages have nothing to do with Weegar and are therefore not responsive to plaintiff's FOIA request. Non-responsive records "are simply not subject to the statute's disclosure requirements, and agencies may thus decline to release such material without invoking a statutory exemption." Competitive Enter. Inst. v. U.S. Envtl. Prot. Agency, 12 F. Supp. 3d 100, 114 (D.D.C. 2014) (citing 5 U.S.C. § 552(a)(3)(A)); accord Citizens for Responsibility & Ethics v. U.S. Dep't of Justice, 48 F. Supp. 3d 40, 51-52 (D.D.C. 2014). Accordingly, plaintiff cannot show that a rational trier of fact could not find for defendant based on the evidence presented, and his motion for summary judgment should be denied in this respect.

### 5.  Immigration document redacted pursuant to Exemption 7(E)

Gahagan asks that Immigration be ordered to submit to the court for in camera review an unredacted copy of that agency's single-page record reproduced in Plaintiff's Exhibit 13, Record Doc. No. 24-3 at pp. 9-10, Bates No. 15-ICFO-09652 0000 47, to determine whether the agency's withholdings and claim of inability to segregate any non-exempt information are lawful under FOIA. Other than a date, the title "NCIC Unit Worksheet" and some preprinted instructions at the top and bottom of the page, the

document is fully redacted and marked "(b)(7)(E), k(2)" to indicate the applicable exemptions upon which Immigration relies for the withholding of information.

Immigration's <u>Vaughn</u> index sufficiently establishes the applicability of Exemption 7(E) to this document. As previously stated, Exemption 7(E) applies to records or information compiled for law enforcement purposes, but only to the extent that production of such records "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 556(b)(7)(E). Pineiro's declaration establishes that Immigration is responsible for enforcing federal immigration laws, including identifying, arresting and removing aliens who enter the United States illegally or present a danger to national security or public safety. Record Doc. No. 18-4 at p. 9, ¶¶ 32-34.

In its <u>Vaughn</u> index, Immigration describes this particular document as being used by an Immigration employee when a packet of information must be created for submission to the National Crime Information Center. The index explains that the document contains the names of documents and law enforcement databases consulted during that process and that it withheld the types of information submitted to the National Crime Information Center under FOIA Exemption 7(E). In addition, Immigration states that the document was derived from the Alien File, Index and National File Tracking

System of Records and that these records are exempt from release under Exemption (k)(2) of the Privacy Act, 5 U.S.C. § 552a(k)(2).  Record Doc. No. 18-4 at p. 31, Entry No. 12.

As Exemption 7(E) requires, Pineiro's declaration describes in adequate and nonconclusory detail the precise types of responsive documents that Immigration found, from what sources they were derived, why they were compiled for law enforcement purposes and why disclosure of the investigative techniques and law enforcement procedures contained therein could provide the holder of the information with information derived from other law enforcement agencies, information that is not publicly known and could be used for improper access to law enforcement data to compromise or impede current or future law enforcement efforts.  Id. at p. 11, ¶¶ 43-45, 51-54.  He states that the NCIC Unit Worksheet was compiled for a law enforcement purpose, specifically detention and removal records pertaining to removal proceedings. Id. at p. 18, ¶ 64.  Finally, Pineiro avers that he has reviewed the records line-by-line and that all reasonably segregable information has been released.

Gahagan has not submitted any evidence to show that Pineiro's declaration is in bad faith.  Given the presumption of legitimacy afforded to the declaration and the lack of evidence of bad faith in handling Gahagan's FOIA request, the court sees no need to examine the NCIC Unit Worksheet in camera.  Plaintiff has not carried his burden to show that a reasonable fact finder could not find that Immigration has adequately

44

supported the applicability of Exemption 7(E) to the document. His motion for summary judgment should be denied in this regard.

6.    Other exemptions claimed

In his second motion for summary judgment, Gahagan seeks an order requiring all defendants to produce any reasonably segregable portion of each responsive agency record being withheld under claim of lawful FOIA exemption. However, he makes no specific argument in his memorandum regarding this request.

The court has already found that the Burroughs declaration submitted by Customs is deficient with respect both to her description of the search and her explanation of the exemptions claimed, such that a supplemental declaration should be ordered. The court therefore need not address this aspect of plaintiff's second motion for summary judgment with respect to Customs.

The court has also found previously that Pineiro's declaration is clear, specific, adequately detailed and non-conclusory with respect to the Non Responsive documents and the exemptions claimed by Immigration for the NCIC Unit Worksheet, as discussed above. As to the remaining records that Immigration produced to plaintiff with partial

redactions based on Exemptions 6,[3] 7(C)[4] and 7(E),[5] the court finds that, given the presumption of legitimacy afforded to agency declarations, the lack of evidence of bad faith in handling Gahagan's FOIA request and the explanations for these additional exemptions stated in Pineiro's declaration, plaintiff has not carried his burden to show that a reasonable fact finder could not find that Immigration has adequately supported the applicability of the other exemptions and withholdings described in Pineiro's declaration and <u>Vaughn</u> index.  His second summary judgment motion should be denied in this regard.

As to State, it withheld two responsive documents in their entirety under FOIA Exemption (b)(3), 5 U.S.C. § 552(b)(3), and section 222(f) of the Immigration and Nationality Act.  8 U.S.C. § 1202(f).  Exemption (b)(3), in pertinent part, permits withholding of records that are specifically exempted from disclosure by another statute if that statute "requires that the matters be withheld from the public in such a manner as

---

[3]As previously stated, Exemption 6 provides that an agency need not disclose "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).

[4]As previously stated, Exemption 7(C) provides that an agency need not disclose "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy."  <u>Id.</u> § 552(b)(7)(C).

[5]As previously stated, Exemption 7(E) applies to records or information compiled for law enforcement purposes, but only to the extent that production of such records "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  <u>Id.</u> § 556(b)(7)(E).

to leave no discretion on the issue."  5 U.S.C. § 552(b)(3).  Section 222(f) of the Immigration and Nationality Act provides in pertinent part that "[t]he records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States."  8 U.S.C. § 1202(f) (emphasis added).

State's declarant, Hackett, explains that each responsive record is a three-page document that pertains directly to the issuance or refusal of visas to enter the United States and that, after conducting a line-by-line review, neither record contains any reasonably segregable, non-exempt information that could be released.   Hackett declaration, Record Doc. No. 18-3 at ¶¶ 25-26, 28.

"It is well-established . . . that Section 1202(f) qualifies as a withholding statute under FOIA exemption 3. . . .  This provision has been interpreted to include not only information supplied by the visa applicant, but also any information revealing the thought-processes of those who rule on the application." Darnbrough v. U.S. Dep't of State, 924 F. Supp. 2d 213, 217 (D.D.C. 2013) (quotations omitted) (citing Medina-Hincapie v. Dep't of State, 700 F.2d 737, 741-42 (D.C. Cir. 1983); Perry-Torres v. Dep't of State, 404 F. Supp. 2d 140, 143 (D.D.C. 2005)).  Thus, courts have found that records pertaining to the consideration of granting or refusing a visa are exempt from disclosure.

47

Medina-Hincapie, 700 F.2d at 744; Judicial Watch, Inc. v. Dep't of State, 650 F. Supp. 2d 28, 33 (D.D.C. 2009); Badalamenti v. U.S. Dep't of State, 899 F. Supp. 542, 547-48 (D. Kan. 1995) (citing Jan-Xin Zang v. FBI, 756 F. Supp. 705, 711-12 (W.D.N.Y. 1991)).

Given the presumption of legitimacy afforded to Hackett's declaration, the lack of evidence of bad faith by State in handling Gahagan's FOIA request, Hackett's explanation of why Exemption 3 applies and the established case law regarding the applicability of 8 U.S.C. § 1202(f) to FOIA Exemption 3, the court finds that plaintiff has not carried his burden to show that a reasonable fact finder could not find that State has adequately supported the applicability of the exemptions and withholdings it claims. Accordingly, plaintiff's motion for summary judgment should be denied in this regard.

D.    Plaintiff's Request for an Injunction

Finally, Gahagan asks the court in both his motions to enjoin defendants from continuing to withhold any non-exempt agency records responsive to his FOIA requests. Gahagan has not even argued, much less shown, that he can meet the high standards for granting a preliminary injunction. Accordingly, his motion for summary judgment should be denied in this regard.

**RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's first and second motions for summary judgment should be denied, subject to the following orders:

48

IT IS RECOMMENDED that Customs and Immigration should be ordered to file supplemental declarations that address whether any other locations are likely to contain responsive records and, if so, the search that was made in those locations, and/or how defendant determined, if it did, that no other record systems are likely to contain responsive material.

IT IS FURTHER RECOMMENDED that Customs should be ordered to provide a supplemental declaration that clarifies whether FOIA Exemptions 6 and 7(C) were actually applied and describes more specifically the scope of information redacted pursuant to these exemptions.  The supplemental declaration should also provide a meaningful, less conclusory description of the types of information withheld under Exemption 7(E) and the agency's justification for withholding the information.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[6]

New Orleans, Louisiana, this _____27th_____ day of April, 2015.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[6]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

50