UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL GAHAGAN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-2619** |
| **UNITED STATES CUSTOMS AND BORDER PROTECTION,** *et al.* | **SECTION: "G"(2)** |

## ORDER AND REASONS

Before the Court are Plaintiff Michael W. Gahagan's objections[1] to the April 27, 2015 Report and Recommendation of the United States Magistrate Judge.[2] Gahagan, an immigration lawyer, filed the instant action seeking the production of documents from Defendants United States Customs and Border Protection ("CBP"), United States Immigration and Customs Enforcement ("ICE"), and United States Department of State ("State") (collectively, "Defendants") pursuant to the Freedom of Information Act[3] ("FOIA") in order to defend his client in removal proceedings.[4] Gahagan filed two motions for summary judgment,[5] and the Court referred both motions to the Magistrate Judge.[6] The Magistrate Judge issued a "Findings and Recommendations" ("Report and Recommendation") on April 27, 2015, recommending that the Court deny Gahagan's motions, subject to orders requiring ICE and CBP to file supplemental declarations regarding the adequacy of their searches.[7]

---

[1] Rec. Doc. 40.

[2] Rec. Doc. 38.

[3] 5 U.S.C. § 522.

[4] Rec. Doc. 1 at pp. 1–2.

[5] Rec. Doc. 9; Rec. Doc. 24.

[6] Rec. Doc. 33.

[7] Rec. Doc. 38 at pp. 48–49.

Gahagan timely objected.[8] Having reviewed the Magistrate Judge's Report and Recommendation, the objections, the opposition to those objections, the motions, the memoranda in support, the memoranda in opposition, the record, and the applicable law, the Court will reject the Report and Recommendation, grant Gahagan's motions in part, deny Gahagan's motions in part, and find Gahagan's motions moot in part. Finally, the Court will order the production of certain disputed documents for *in camera* review before ruling in part.

## I. Background

Gahagan, an immigration attorney, filed the instant action against CBP, ICE, and State in order to obtain materials required to represent his client, Theodore Weegar, in removal proceedings.[9] In his complaint, Gahagan alleges that he filed FOIA requests seeking these materials from CBP, ICE, and State in July 2014.[10]

He further alleges that, as of November 15, 2014, when he filed the instant complaint, he had received no response from CBP.[11] ICE, on the other hand, allegedly notified Gahagan that it "would . . . forward [his] request" to the United States Citizenship and Immigration Services ("USCIS"), prompting Gahagan to appeal ICE's "refusal to search its files for the requested agency records" on August 18, 2014.[12] Gahagan maintains that, as of November 15, 2014, he had received 56 "fully redacted and fully withheld agency records" from USCIS marked "Referred to Immigrations and Customs Enforcement," but that he had received no response from ICE regarding

---

[8] Rec. Doc. 40.

[9] Rec. Doc. 1.

[10] *Id.* at pp. 4–5.

[11] *Id.*

[12] *Id.* at pp. 5–6.

his request or his appeal.[13]  Finally, Gahagan contends that State mailed him a letter on July 31, 2014

requesting additional information to process his request, an action Gahagan deemed to be a denial

of his request, prompting him to file a FOIA appeal.[14] Gahagan avers that he supplied the requested

information to State, but had received "no substantive reply" at the time he filed the instant

complaint.[15] Gahagan argues that Defendants have harmed him by failing to provide him with the

information he requested, and requests that the Court order Defendants to respond to his FOIA

request by conducting an adequate search, producing responsive agency records, providing a

"*Vaughn* index"[16] of withheld responsive records, and preventing Defendants from withholding

responsive records.[17] He also urges the Court to award him attorney's fees pursuant to FOIA and the

Equal Access to Justice Act.[18]

    Gahagan filed two motions for summary judgment in this matter.[19] The first motion asserts

that he is entitled to judgment as a matter of law based upon ICE's "routing" of his request to

USCIS[20] and Defendants' failure to produce responsive documents, conduct an adequate search, or

---

[13] *Id.* at p. 6.

[14] *Id.*

[15] *Id.* at pp. 6–7.

[16] A *Vaughn* index is "a routine device through which the defendant agency describes the responsive documents withheld or redacted and indicates why the exemptions claimed apply to the withheld material," *Batton v. Evers*, 598 F.3d 169, 174 (5th Cir. 2010) (citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973); *Jones v. F.B.I.*, 41 F.3d 238, 241 (6th Cir. 1994)). It consists of an "index and detailed justification" of claims of exemption. *Stephenson v. I.R.S.*, 629 F.2d 1140, 1145 (5th Cir. 1980).

[17] Rec. Doc. 1 at p. 7.

[18] *Id.*

[19] Rec. Doc 9; Rec. Doc. 24.

[20] Rec. Doc. 9-2 at pp. 7–20.

3

justify their withholding of responsive information.[21] The second motion requests judgment as a matter of law premised upon: (1) CBP's failure to produce a *Vaughn* index;[22] (2) ICE's production of seven pages of documents marked as "Non Responsive" and redacted in full;[23] and (3) ICE's production of a one-page document marked as exempt and redacted in full.[24]

The Court referred both motions to the Magistrate Judge for a Report and Recommendation. On April 27, 2015, the Magistrate Judge recommended that the Court deny Gahagan's pending motions "subject to the following orders:" (1) that CBP and ICE file supplemental declarations regarding their search for documents;[25] and (2) that CBP file a supplemental declaration that more specifically describes the information it redacted pursuant to FOIA exemptions 6 and 7(C), and provide a "meaningful, less conclusory description of the types of information withheld under Exemption 7(E)."[26]

## II. Standard of Review

### A.   *Standard Applied in Review of the Magistrate Judge's Report and Recommendation*

In accordance with Local Rule 73.3, the Court referred this case to a Magistrate Judge to provide a Report and Recommendation. A District Judge "may accept, reject, or modify the

---

[21] Rec. Doc. 9-2 at pp. 20–21.

[22] Rec. Doc. 24-2 at p. 8. *See Vaughn*, 484 F.2d at 826–28.

[23] *Id.* at pp. 10–19.

[24] *Id.* at pp. 19–21. Although Gahagan requests attorney's fees in his complaint pursuant to FOIA and the Equal Access to Justice Act, neither of his two motions request that the Court award attorney's fees. *See* Rec. Doc. 1 at p. 9 (citing 5 U.S.C. § 552(a)(4)(E); 28 U.S.C. § 2412, *et seq.*).Thus, these claims are not at issue here.

[25] Specifically, the Magistrate Judge recommends that the Court order CBP and ICE "to file supplemental declarations that address whether any other locations are likely to contain responsive records and, if so, the search that was made in those locations, and/or how defendant determined, if it did, that no other record systems are likely to contain responsive material." Rec Doc. 38 at p. 49.

[26] *Id.*

4

recommended disposition" of a Magistrate Judge on a dispositive matter.[27] The District Judge must "determine de novo any part of the [Report and Recommendation] that has been properly objected to."[28]  As to parts of the report to which no proper objection has been made, the District Court's review is limited to plain error.[29]

**B.    Standard Applicable to Summary Judgment in FOIA Cases[30]**

The Supreme Court has stated that "[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."[31] Toward that end, FOIA is intended to "facilitate public access to government documents," and was "designed to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."[32] FOIA establishes a "strong presumption in favor of disclosure," and accordingly "places the burden on the [government] agency [to which a request has been made] to justify the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document."[33]

The Fifth Circuit has held that FOIA "modif[ies]" the "traditional" summary judgment standard, insofar as it prescribes its own burdens and standards of proof to address the unique

---

[27] FED. R. CIV. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

[28] *Id.*

[29] *See Douglas v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

[30] In *Gahagan v. U.S. Citizenship and Immigration Serv's.*, this Court set forth the standards governing summary judgment in the FOIA context. No. 14-2233, 2015 WL 350356 (E.D. La. Jan. 23, 2014). These standards are quoted, and applied in full, here.

[31] *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citations omitted).

[32] *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).

[33] *Id.*

5

evidentiary issues inherent in FOIA actions, where the subject matter of the suit—government documents—may be partially or entirely hidden from view.[34]  Specifically, FOIA provides that federal district courts:

> **[Have] jurisdiction to enjoin the agency from withholding agency records and to order the production of agency records improperly withheld from the complainant**.  In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action.
>
> In addition to any other matters to which a court accords substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B).[35]

In a FOIA action, an agency's supporting affidavits and declarations are entitled to a "presumption of legitimacy" in the absence of evidence of bad faith.[36] Nonetheless, the burden of establishing the validity of a decision to withhold information remains with the agency,[37] and the Court will not accept an agency's "conclusory and generalized assertion[s]" on a motion for summary judgment, even if those assertions are uncontroverted.[38]

---

[34] *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010); *Cooper Cameron Corp. v. U.S. Dep't of Labor, Occupational Safety and Health Admin.*, 280 F.3d 539, 543 (5th Cir. 2002) ("The FOIA context is unusual, however, because the threshold question in any FOIA suit is whether the requester can even see the documents the character of which determines whether they can be released. The requester would thus face an evidentiary Catch–22 if the statute and the case law did not make allowances. The statute expressly places the burden on the agency to sustain its action and directs the district courts to determine the matter de novo,  giving no deference to the agency's determinations.") (citations and internal quotation marks omitted).

[35] 5 U.S.C. § 552(a)(4)(B) (emphasis added).

[36] *Batton,* 598 F.3d at 175 (5th Cir. 2010) (citing *Ray*, 502 U.S. at 179).

[37] *Cooper Cameron*, 280 F.3d at 543.

[38] *Batton*, 598 F.3d at 175.

### III. Objections to Report and Recommendation

Gahagan timely filed objections to the Magistrate Judge's Report and Recommendation on May 11, 2015, urging the Court to reject the Report and Recommendation in full,[39] because the Magistrate Judge erred by applying a preliminary injunction standard to his motions and by failing to construe the facts in the light most favorable to him, in violation of the legal standards applicable to motions for summary judgment in FOIA cases.[40]

In response to this objection, the Government argues that the Magistrate Judge "properly distinguished between the burden of proof for a FOIA preliminary injunction and the burden of proof for a FOIA motion for summary judgment," and correctly applied the respective burdens to what it now alleges were Gahagan's "separate and distinct requests" for injunctive relief and for

---

[39] Rec. Doc. 40.

[40] Rec. Doc. 40–1 at pp. 3–22. Gahagan also contends that the Magistrate Judge erred by:

(1) Ordering CBP and ICE to file supplemental declarations, rather than grant his motion for summary judgment against these agencies, *Id.* at pp. 22–24;

(2) Giving weight to the facts that: (a) he did not state the purpose of his FOIA request, because the purpose of a FOIA request is irrelevant; (b) USCIS "A-Files" are the "official files for all immigration and naturalization records," because other government agencies also maintain immigration records; and (c) the process of responding to Gahagan's FOIA request 'took less than six months,' because FOIA requires that a response be given within 20 working days, *Id.* at pp. 24–28;

(3) Recommending that ICE be "allowed to refer an entire FOIA request to a third party," because FOIA requires agencies to conduct a search of their own records," *Id.* at pp. 28–34;

(4) Recommending that Defendants not be compelled to release the names of the individuals who conducted the searches pursuant to his FOIA request, because this places the burden on him to "prove that Defendants are not allowed to withhold the names" of these individuals," *Id.* at p. 35; and

(5) Recommending that ICE be permitted to withhold seven pages of documents marked as "non-responsive," because this recommendation places "the burden of proof on [him] to prove that" ICE is "not allowed to withhold responsive agency records without citing a lawful FOIA exemption," *Id.* at pp. 35–40.

summary judgment.[41] According to Defendants, "there is a litany of cases that discuss" the distinction between FOIA claims and injunctive claims, and these cases "place the burden squarely on a plaintiff when deciding injunctive relief in FOIA matters."[42] Defendants maintain that the Magistrate Judge therefore appropriately applied this burden of proof as to Gahagan's "injunction claim," but "utilized the typical FOIA burden of proof for the remaining FOIA claims."[43]

For the first time in their response to Gahagan's objections, Defendants claim that Gahagan is seeking relief under FOIA and additional injunctive relief, and cite cases not originally relied upon in which the parties had moved for preliminary injunctive relief in the midst of FOIA litigation.[44] Neither these cases nor such a distinction was argued by either party in the motions. The Court finds these cases distinguishable and inapplicable here.

In *Electronic Privacy Information Center v. Department of Justice*, cited by Defendants, the plaintiff simultaneously filed a complaint seeking "injunctive relief" under FOIA, and "a separate motion that requests 'entry of a preliminary injunction to enjoin . . . [the defendant's] unlawful attempts to impede plaintiff's efforts to obtain agency records under the [FOIA],'" a request alleging injury and seeking relief that was "coterminous" with the injury alleged and the relief sought in the complaint.[45] In that case, the plaintiff asserted a claim pursuant to FOIA, and specifically filed a separate motion for a preliminary injunction. After the district court denied the motion for

---

[41] Rec. Doc. 42 at pp. 2–4.

[42] *Id.* at p. 2.

[43] *Id.*

[44] *Electronic Privacy Info. Ctr. v. Dep't of Justice*, 15 F.Supp.3d 32 (D.D.C. 2014); *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 514 F.Supp.2d 7, 8–9 (D.D.C. 2007).

[45] 15 F.Supp.3d at 37.

8

preliminary injunction, the case moved forward under FOIA's statutory procedures. Gahagan has not filed a motion for a preliminary injunction here, or made a request for a preliminary injunction in his pending motions, and so the Magistrate Judge's characterization of his FOIA request as such, and his application of the preliminary injunction standard to his FOIA request, was erroneous.

Similarly, in *Judicial Watch, Inc. v. U.S. Department of Homeland Security*, also cited by Defendants in response to Gahagan's objections, the plaintiff filed suit against several defendants pursuant to FOIA, seeking "to compel the disclosure" of certain documents.[46] After receiving a disclosure it deemed unsatisfactory, the plaintiff moved for a preliminary injunction, urging the court to enjoin the defendants "from continuing to withhold the requested documents."[47] The district court applied a preliminary injunction standard to the express motion for a preliminary injunction. Thus, there, again, the plaintiff specifically requested a preliminary injunction, and the preliminary injunction standard was applied to that specific request.[48] Again, Gahagan has not moved for a preliminary injunction here, and so, the Magistrate Judge should not have applied the preliminary injunction standard to any part of Gahagan's FOIA request.

Furthermore, the Magistrate Judge himself clearly stated in the Report and Recommendation that Gahagan did not specifically request a preliminary injunction.[49] However, because the

---

[46] 514 F.Supp.2d at 8.

[47] *Id.* at 9.

[48] *Id.* at 9–10. *See* 736 F.Supp.2d. 202, 206 (D.D.C. 2010) (summarizing the procedural history of the case and stating that, in deciding prior motions for summary judgment, "[t]he Court ordered defendant to search for and produce any non-exempt responsive records and to compile a *Vaughn* index for all exempt records."). *See also Sai v. Transp. Sec. Admin.*, 54 F.Supp.3d 5 (D.D.C. 2014) (denying motion for preliminary injunction in FOIA case, and concluding that "[t]he Court need not do more than exercise its ordinary jurisdiction over this FOIA action"); *Wadelton v. Dep't of State*, 941 F.Supp.2d 120 (D.D.C. 2013) (denying motion for preliminary injunction in FOIA action); *Landmark Legal Found. v. EPA*, 910 F.Supp.2d 270 (D.D.C. 2012) (same).

[49] *See* Rec. Doc. 38 at pp. 10–12 ("Although Gahagan does not couch most of the relief he seeks in his motions in terms of injunctive relief . . . For the reasons discussed fully herein, his motions for summary judgment

Magistrate Judge believed that Gahagan's claims sounded in injunctive language, he applied the preliminary injunction standard. FOIA's language sounds in injunctive language; however, it sets forth specific and distinctive standards to apply. In the cases cited by Defendants, the plaintiffs, in addition to their FOIA claims, which are similar to the claims Gahagan asserts here, <u>specifically</u> filed motions for preliminary injunctive relief, which justified those courts applying the preliminary injunction standard to those specific preliminary injunction motions. Gahagan does not request a preliminary injunction in the motions currently pending before the Court. The parties do not dispute that these specific facts are not argued here, and so the Magistrate Judge clearly erred in his application of a preliminary injunction standard. Gahagan objects to the entire Report and Recommendation because of the Magistrate Judge's application of the incorrect standard. The Court believes that this mischaracterization permeated the Magistrate Judge's analysis, and because the Court is unable to discern to what aspects the Magistrate Judge applied the preliminary injunction standard as opposed to the standard under FOIA, the Court will apply a *de novo* review to every aspect of the Report and Recommendation.[50]

## IV. De Novo Review of Report and Recommendation

In addressing the applicable legal standard, the Report and Recommendation first quotes a Fifth Circuit decision setting forth the standard applicable to motions for summary judgment in the FOIA context,[51] and summarizes this standard as follows:

> To prevail, Gahagan must show the absence of any genuinely disputed material facts as to each of his claims, such that a rational trier of fact could not find for defendants based on the evidence presented. Defendants, who bear the burden of proof at trial,

seeking preliminary injunctive should be denied.").
    [50] Additionally, Gahagan objects to every determination made by the Magistrate Judge; thus, *de novo* review of the Magistrate Judge's Report and Recommendation is supportable on this basis as well.

    [51] Rec. Doc. 38 at pp. 9–10 (citing *Batton*, 598 F.3d at 175-76).

must come forward with admissible evidence to show material fact disputes as to the adequacy of their searches for responsive records and the applicability of their claimed exemptions from disclosure. Factual controversies are construed in the light most favorable to the non-movants, the defendants, in this situation.[52]

Immediately thereafter, however, the Report and Recommendation recites the "stringent standards" governing preliminary injunctive relief,[53] and states that:

> **Although Gahagan does not couch most of the relief he seeks in his motions in terms of injunctive relief**, he is seeking judgment in his favor on all claims in his Complaint for Declaratory and Injunctive Relief that defendants have not complied with their obligations under FOIA. **He requests affirmative relief, also known as a mandatory injunction, directing defendants to conduct an adequate search for responsive records, produce all non-exempt responsive records**, produce a Vaughn index, produce unredacted copies, produce any reasonably segregable portion of each responsive agency record being withheld and stop withholding non-exempt responsive records. **For the reasons discussed fully herein, his motions for summary judgment seeking preliminary injunctive relief should be denied, subject to an order granting him some intermediate relief in the form of supplemental evidentiary declarations from two of the defendants.**[54]

Reviewing the Report and Recommendation *de novo*, the Court finds that the Magistrate Judge erred in construing Gahagan's motions as seeking preliminary injunctive relief outside of the statutorily-defined injunctive relief FOIA provides. Although Gahagan requests "injunctive and other appropriate relief," he specifically states that he is requesting such relief under FOIA,[55] and

---

[52] *Id.* at p. 11.

[53] Specifically, the Report and Recommendation states:

To obtain a preliminary injunction, Gahagan must demonstrate (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not granted, (3) that his substantial injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) that granting the preliminary injunction would not disserve the public interest.

*Id.* at p. 13.

[54] *Id.* at pp. 11–12 (emphasis added).

[55] Rec. Doc. 1 at p. 1 ("This is an action under the Freedom of Information Act, 5 U.S.C. § 552. ("FOIA") for injunctive and other appropriate relief seeking immediate disclosure and release of agency records unlawfully withheld . . .").

urges that the Court "enjoin" Defendants from withholding responsive records, a remedy specifically

provided by FOIA. Thus, Gahagan's motion clearly seeks relief that falls within the scope of FOIA's

statutory scheme, and to which the burdens of proof set forth by that scheme apply. As noted above,

FOIA expressly provides that:

> On complaint, the district court . . . has jurisdiction to **enjoin** the agency from
> withholding agency records and to order the production of any agency records
> improperly withheld from the complainant. In such a case **the court shall determine
> the matter de novo** . . . **and the burden is on the agency to sustain its action.**[56]

On this point, the Supreme Court has noted that FOIA "explicitly confers jurisdiction to grant

injunctive relief of a described type," creates "a specific remedy for noncompliance," and contains

"the precise machinery" intended to effectuate its statutory purpose, and has concluded that FOIA's

statutory remedy supplements, rather than limits, the equitable remedies at district courts' disposal.[57]

FOIA's goal is to "pierce the veil of administrative secrecy and to open agency action to the

light of public scrutiny."[58] To effectuate this goal, FOIA "prescribes its own burdens and standards

of proof to address the unique evidentiary issues inherent in FOIA actions."[59] Specifically, FOIA

"expressly places the burden on the agency to sustain its action and directs the district courts to

determine the matter *de novo*, giving no deference to the agency's determinations,"[60] thereby

creating a "strong presumption in favor of disclosure."[61] The Fifth Circuit applies this standard when

---

[56] 5 U.S.C. § 552(a)(3)(A) (emphasis added).

[57] *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 3 (1974).

[58] *Batton*, 598 F.3d at 176.

[59] *Gahagan,* 2015 WL 350356 at *11.

[60] *Cooper Cameron*, 280 F.3d at 542 (citations and internal quotation marks omitted).

[61] *Id.* at 545 (citations and internal quotation marks omitted).

12

deciding motions for summary judgment in FOIA cases,[62] and the Court is aware of no authority indicating that a deviation from that standard is warranted here.

Unlike the plaintiffs in the cases cited by Defendants in their response to Gahagan's objections to the Magistrate Judge's Report and Recommendation, Gahagan has not moved for a preliminary injunction. Rather, his two motions seek relief that falls squarely within FOIA's statutory framework. The motions, in their entirety, are therefore properly governed by the standards and burdens of proof that apply to a motion for summary judgment in the FOIA context. In this context, Gahagan, the moving party, is entitled to the relief he seeks if a reasonable trier of fact could not find that Defendants have met their burden of disclosing non-exempt responsive agency records.[63]

Gahagan contends that the Magistrate Judge's error pervades the entire Report and Recommendation.[64] This Court, reviewing the Report and Recommendation *de novo*, agrees. Although the Report and Recommendation concludes, at various points, that Gahagan's motion should be denied because a "rational trier of fact" could find for Defendants,[65] and thus ostensibly recognizes that Defendants have the ultimate burden of proof, the Report and Recommendation fundamentally mischaracterizes Gahagan's requests for injunctive relief under FOIA as requests for a preliminary injunction.  Because this error goes to the heart of Gahagan's requests, this Court will reject the Report and Recommendation in full, and will review Gahagan's motions *de novo*.

---

[62] *See, e.g., Batton*, 598 F.3d at 175; *Cooper Cameron*, 280 F.3d at 543.

[63] *Cooper Cameron,* 280 F.3d at 543. *See, e.g. ,Gahagan*, 2015 WL 350356 at *11–*12.

[64] Rec. Doc. 40–1 at pp. 1–2.

[65] *See, e.g.,* Rec. Doc. 38 at p. 23.

## V. Gahagan's  First Motion for Summary Judgment

**A.**    ***Gahagan's Arguments in Support of His "Motion for Summary Judgment"[66]***

In his first motion, Gahagan urges the Court to: (1) order that Defendants "conduct a lawfully adequate search for responsive agency records in accordance with [his] FOIA requests and FOIA;" (2) order that Defendants "respond to [his] FOIA request as mandated by 5 U.S.C. § 552, produce forthwith any and all non-exempt agency records responsive to [his] FOIA request, and produce a *Vaughn* index of any responsive records withheld under claim of exemption;" and (3) consistent with the language of FOIA, order that Defendants "are enjoined from continuing to withhold any and all non-exempt agency records responsive to [his] FOIA request."[67] The Court addresses his arguments in turn below.

### 1.    ICE's "Routing" of Gahagan's Request

First, Gahagan contends that ICE did not "obey its lawful duty to search the records in its possession for responsive agency records," but rather "unlawfully 'routed'" his FOIA request to another government agency.[68] According to Gahagan, "[t]he legal obligation to respond under FOIA rests exclusively with the agency to which the FOIA request is directed and which possesses the record at the time of the FOIA request,"[69] and the requestee agency has a statutory duty to timely respond to the request, regardless of whether it "routes" or "refers" the request.[70]

Gahagan maintains that a requestee agency improperly withholds documents pursuant to

---

[66] Rec. Doc. 9.

[67] *Id.* at p. 1.

[68] Rec. Doc. 9–2 at p. 7.

[69] *Id.* at p. 10.

[70] *Id.* at p. 11.

FOIA if it "routes" the request and then does not timely respond to the request, because "[t]here is no routing exception to the mandate that an agency must disclose responsive agency records within 20 working days,"[71] and because a referral "could be considered a withholding if its net effect is to impair the requester's ability to obtain the records or significantly increase the amount of time he must wait to obtain them."[72] Accordingly, Gahagan maintains, ICE cannot "route a FOIA request to a different government agency, and then refuse to conduct a lawfully adequate search of records in its possession," as is required by FOIA.

Gahagan argues that ICE is "withholding" responsive records from him, because it "has not searched for or produced the responsive and improperly withheld agency records," and "continues to refuse to search for or produce" the records.[73] Further, Gahagan argues, this withholding is "improper" under FOIA, because it has "resulted in very long delays" not lawfully justified by ICE, forcing him to file this lawsuit and "ensuring ineffective assistance of counsel" to his client.[74]

## 2. Adequacy of Defendants' Responses to Gahagan's FOIA Requests

Gahagan next maintains that Defendants have all "refused to conduct an adequate search for responsive agency records or produce the responsive agency records within 20 working days," as required by FOIA.[75] Thus, Gahagan asserts, because Defendants have not met "their burden of demonstrating either the adequacy of their searches or the legal justification for their withholding

---

[71] *Id.* (internal quotation marks omitted).

[72] *Id.* at p. 14 (internal quotation marks omitted).

[73] *Id.* at p. 17 (internal quotation marks omitted).

[74] *Id.* at p. 18.

[75] *Id.* at p. 20.

of agency records," the Court "must grant [his] motion for summary judgment."[76]

## B.    *Defendants' Opposition*[77]

In opposition to Gahagan's first motion, Defendants aver that, at the time their opposition was filed, they had "fully processed and responded to" Gahagan's FOIA requests, having "conducted an adequate search for documents," "produced all non-exempt material responsive to [his] request," and "created a *Vaughn* index for any withheld documents."[78]

### 1.    Adequacy of Defendants' Responses to Gahagan's FOIA Requests

#### a.    Declarations

Defendants first point to declarations filed by CBP, ICE, and State, and maintain that each of these are sufficient to carry their burden of opposing Gahagan's motion.

As to the sufficiency of CBP's response to Gahagan's request, Defendants indicate that a declaration filed by Sabrina Burroughs "describes in specific detail the search undertaken to recover responsive documents," and indicates that the search yielded one document responsive to Gahagan's request, which was released to Gahagan on December 4, 2014 "but for minimal redactions pursuant to FOIA exemption[s]" § 552(b)(6), (b)(7)(C) and (b)(7)(E).[79]

Addressing the sufficiency of State's response to Gahagan's request, Defendants contend that a declaration submitted by John Hackett "describes in great detail the search undertaken to recover responsive documents within State," and indicates that State found two documents responsive to

---

[76] *Id.*

[77] Rec. Doc. 18.

[78] *Id.* at p. 5.

[79] Rec. Doc. 18 at pp. 5–6. This declaration was stricken from the record pursuant to an order of the Magistrate Judge dated April 14, 2015, and re-filed, with dates of birth redacted, on April 21, 2015. Rec. Doc. 35 (Order); Rec. Doc. 37-1 (re-filed declaration).

16

Gahagan's FOIA request, but withheld these documents in full pursuant to FOIA exemption 5 U.S.C. 552(b)(3) and 8 U.S.C. § 1202(f).[80]

Regarding the sufficiency of ICE's response to Gahagan's request, Defendants aver that a declaration filed by Fernando Pineiro indicated that ICE, "understanding [that Gahagan's client] was in the midst of a removal process . . . forwarded [Gahagan's] request to [USCIS]," which is "the custodian of all A-files, which are the official files for all immigration and naturalization records."[81] Defendants contend that USCIS located 56 pages of documents originating from ICE, and in turn "referred [those] . . . pages back to ICE for direct response to [Gahagan]."[82] Further, Defendants contend, ICE "tasked two of its local New Orleans Offices . . . to search for responsive documents," a request made due to the pendency of the underlying removal proceedings in New Orleans.[83] The declaration, Defendants argue, "describes in great detail the specific electronic filing systems that were searched by each office" and provides the search queries used.[84]

### b.   Redactions and Withholdings

Defendants next argue that they made "appropriate redactions and withholdings" pursuant to FOIA exemptions "3, 7(C), and (E)," and that the foregoing declarations constitute proper *Vaughn* indexes.[85] Defendants contend that their redactions were "minimal," and that these documents need

---

[80] *Id.* at pp. 6–7. This declaration was stricken from the record pursuant to an order of the Magistrate Judge dated April 14, 2015, and re-filed, with dates of birth redacted, on April 21, 2015. Rec. Doc. 35 (Order); Rec. Doc. 37-2 (re-filed declaration).

[81] *Id.* at p. 7 (citing Rec. Doc. 18-4).

[82] *Id.*

[83] *Id.*

[84] *Id.* at pp. 7–8.

[85] *Id.* at p. 9.

not be examined *in camera* to ascertain whether the redactions were appropriate.[86]

### 2.    ICE's "Routing" of Gahagan's FOIA Request

Finally, Defendants argue that ICE properly referred documents to USCIS for direct response to Gahagan, because this referral did not significantly impair Gahagan's ability to obtain the documents, and did not significantly increase the time required to obtain these documents.[87] However, Defendants contend that any dispute as to this issue "is moot since the agencies have processed and released the referred material" to Gahagan.[88]

### C.    *Gahagan's Reply[89]*

### 1.    Defendants' Representations

In further support of his motion, Gahagan first argues that Defendants falsely represent: (1) the date of his client's removal hearing; and (2) that he has "obtained all the responsive records that he has requested via FOIA."[90]

### 2.    Adequacy of Defendants' Responses to Gahagan's FOIA Request

### a.    Declarations

Next, Gahagan contends that Defendants' declarations are insufficient, because these declarations: (1) do not identify the individuals who conducted the searches in response to his request;[91] (2) do not indicate that Defendants searched the "likely locations of responsive records,"

---

[86] *Id.* at p. 11.

[87] *Id.* at pp. 12–13.

[88] *Id.* at p. 13.

[89] Rec. Doc. 21.

[90] *Id.* at p. 2.

[91] *Id.* at p. 6.

and (3) do not contain sufficient factual descriptions required to demonstrate the adequacy of the search as a matter of law.[92] According to Gahagan, these declarations fail to show the "reasonableness and adequacy" of Defendants' FOIA search; thus, Gahagan argues, Defendants have failed to carry their burden, warranting summary judgment and an order compelling Defendants to "conduct an adequate search for the requested information."[93]

### b. *Vaughn* Index

Further, Gahagan argues, "CBP has refused to submit a *Vaughn* index as mandated by FOIA."[94]

### 4. ICE's "Routing" of Gahagan's FOIA Request

Finally, Gahagan argues that ICE "simply refused to search its records for the specific . . . information" he requested from ICE and instead "had USCIS search its records for an 'A-File,'"[95] a search at "an agency [he] did not request, for documents [he] is not seeking."[96]

### D. *Analysis*[97]

In his first motion, Gahagan asserts that he is entitled to summary judgment based upon: (1) ICE's "routing" of his request to USCIS[98] and (2) Defendants' failure to produce responsive

---

[92] *Id.* at pp. 8–9.

[93] *Id.* at pp. 9–10.

[94] *Id.* at p. 9.

[95] *Id.* at p. 10.

[96] *Id.*

[97] In its Order in *Gahagan*, 2015 WL 350356, the Court set forth the law applicable to several of the issues presented by Gahagan's motions. Thus, where the Court's prior Order sets forth the applicable law, it is quoted here.

[98] Rec. Doc. 9-2 at pp. 7–20.

documents, conduct an adequate search, or justify their withholding of responsive information.[99]

At the time Gahagan filed his first motion for summary judgment, Gahagan averred that ICE had disclosed 56 "fully redacted" pages of documents to him, while CBP and State had disclosed nothing.[100] The Local Rule 56.1 statement attached to Gahagan's second motion for summary judgment,[101] however, points to several developments in the instant litigation relevant to Gahagan's first motion. First, Gahagan contends that on December 16, 2014, he received one page of responsive information from CBP, and has not received a *Vaughn* index to "explain the legality of its withholdings from this document."[102] Second, Gahagan avers that on December 29, 2014, he received several documents from ICE, seven pages of which "were withheld *in toto*" and marked as "non-responsive," and one page of which was redacted in full.[103] Finally, Gahagan contends that State has "released no responsive agency records" to him, even though State "claims that it has found responsive agency records pursuant to his request."[104]

### 1.    ICE's "Routing" of Gahagan's FOIA Request

Gahagan first argues that ICE's "routing" of his FOIA request to USCIS resulted in an "improper witholding," in violation of FOIA, entitling him to summary judgment.[105] On this point,

---

[99] *Id.* at pp. 20-21.

[100] Rec. Doc. 9-1 at pp. 2–5.

[101] Rec. Doc. 24-1.

[102] *Id.* at p. 2.

[103] *Id.* at pp. 2–4 (citing Rec. Doc. 18-2 at pp. 2–10). This exhibit was stricken from the record pursuant to an order of the Magistrate Judge dated April 14, 2015, and re-filed, with dates of birth redacted, on April 21, 2015. Rec. Doc. 35 (Order); Rec. Doc. 37-1 at pp. 2–10 10 (re-filed exhibit)

[104] *Id.* at pp. 4-5 (citing Rec. Doc. 18-3 at p. 11 (declaration of John Hackett)). State's supporting declaration was stricken from the record pursuant to an order of the Magistrate Judge dated April 14, 2015, and re-filed, with dates of birth redacted, on April 21, 2015. Rec. Doc. 35 (Order); Rec. Doc. 37-2 (re-filed declaration).

[105] Rec. Doc. 9-2 at pp. 7–20.

the Court notes that it is undisputed that ICE has now produced documents to Gahagan.[106] An agency's production of requested records moots a plaintiff's FOIA claim.[107]  Therefore, the Court deems Gahagan's argument on this point to be moot, to the extent that it is premised upon ICE's outright failure to respond to his request and produce documents to him.

After ICE produced documents to him, Gahagan contended that ICE's search was deficient because it "refused to follow the FOIA mandate and had USCIS search its records for an A-File."[108] This Court has previously rejected the premise that an agency's referral constitutes a *per se* violation of FOIA.[109] Specifically, in *Gahagan v. United States Citizenship and Immigration Services*, this Court held that: (1) requestee agencies may make referrals to other agencies, as long as those referrals do not result in an improper withholding of responsive, non-exempt agency records; and (2) requestee agencies remain responsible for any improper withholding that results from a referral.[110] Accordingly, the Court likewise finds here that ICE's "routing" of Gahagan's FOIA request is not a *per se* violation of FOIA. This does not end the Court's inquiry, however, because the Court still must determine whether ICE has conducted an adequate search or improperly withheld responsive records. The Court will consider these issues below.

---

[106] Rec. Doc. 24-1 at pp. 4–5.

[107] *Ayanbadejo v. Chertoff,* 517 F.3d 273, 278 (5th Cir. 2008) ("Although the Ayanbadejos argue that the district court erred in dismissing their FOIA claim as moot, the USCIS did produce the Ayanbadejos' immigration record to their counsel pursuant to their FOIA request, making this claim moot.").

[108] Rec. Doc. 21 at p. 10 (internal quotation marks omitted).

[109] *See Gahagan*, 2015 WL 350356 at *19–*20.

[110]  *Id.* (citing *McGehee v. C.I.A.,* 697 F.2d 1095, 1110 (D.C. Cir. 1983)).

## 2.     Adequacy of Defendants' Responses to Gahagan's FOIA Requests

### a.     Failure to Produce

Gahagan argues that Defendants failed to produce responsive records to him, in violation of FOIA.[111] It is undisputed that CBP, like ICE, has now produced responsive records to Gahagan. Accordingly, to the extent that Gahagan's first motion seeks summary judgment based upon CBP's outright failure to produce responsive records, the motion is moot. Gahagan's allegations regarding State's outright non-production of documents are not moot, however, as State has not produced responsive agency records to Gahagan. However, because Gahagan's arguments on this point are properly addressed pursuant to legal standards that apply to several aspects of Gahagan's second motion, the Court will address Gahagan's production-related arguments as to all Defendants, including State, in its analysis of Gahagan's second motion.

### b.     Sufficiency of Declarations

Gahagan also argues that Defendants have not conducted an adequate search,[112] a "threshold" issue in this FOIA case.[113] Specifically, Gahagan contends that declarations submitted by Defendants after he filed his first motion (1) do not identify the individuals who conducted the searches in response to his request; (2) do not indicate that Defendants searched the "likely locations of responsive records," and  (3) do not contain sufficient factual descriptions required to demonstrate the adequacy of the search.[114] Gahagan further argues that ICE "simply refused to search its records

---

[111] Rec. Doc. 9-2 at pp. 20–21.

[112] *Id.*

[113] *Batton*, 598 F.3d at 176.

[114] Rec. Doc. 21 at pp. 5–9.

at all" for the information he specifically requested.[115]

"An agency may demonstrate that it conducted an adequate search by showing that it used methods which can be reasonably expected to produce the information requested."[116] In considering whether an agency has met its burden on this point, "there is no requirement that an agency search every record system."[117] Rather, the Court "must decide only whether the search was adequate."[118]

In *Batton v. Evers*, the Fifth Circuit found that two declarations "sufficiently prove[d] the adequacy and reasonableness of the IRS's search" by "list[ing] the particular databases that were searched and explain[ing] that these databases contain the type of information requested." The Court explained:

> [T]he Oklahoma City disclosure office searched documents identified by the agent assigned to investigate [the Plaintiff,] as well as internal databases and systems of records to locate documents responsive to [the Plaintiff's] FOIA request. The IRS conducted the search based on the personal information provided by [the Plaintiff] in his FOIA request within the databases and systems of records available to the disclosure office.[119]

Applying these legal standards here, the Court will now determine whether Defendants have met their burden of proving that they conducted an adequate search pursuant to Gahagan's request.

### i.   Identity of the Individual Performing the Search

Preliminarily, the Court will address Gahagan's argument that Defendants' declarations are insufficient because they do not name the individual who actually searched for records pursuant to

---

[115] *Id.* at p. 9.

[116] 598 F.3d at 176 (citations and internal quotation marks omitted).

[117] *Id.* (citations omitted).

[118] *Id.* (citations and internal quotation marks omitted).

[119] *Batton*, 598 F.3d at 176.

his FOIA request.[120] On this point, Gahagan cites several cases from district courts in the District of Columbia, in which those courts applied legal standards developed by United States Courts of Appeals from the District of Columbia Circuit. These cases suggest that in the District of Columbia Circuit, agency declarations must identify "by whom" the search was conducted.[121]  This Court, which is located in the Fifth Circuit, applies Fifth Circuit authority on this point. Gahagan does not cite, and the Court has not found, any Fifth Circuit case requiring affidavits to identify the individual who conducted a FOIA search. Therefore, this Court applies *Batton*, which does not appear to require an agency to name the individual who conducted the search.[122] Applying *Batton*, Defendants' declarations are not *per se* deficient for failing to name the individuals who conducted Gahagan's search. Therefore, to the extent that Gahagan contends that a rational trier of fact could not find for Defendants based upon their failure to name the individual who conducted the search pursuant to his FOIA request, his arguments are unavailing.

### ii.     Adequacy of CBP's Search

Applying *Batton* here, the Court turns first to CBP's supporting declaration. Addressing CBP's search methodology, the declaration first summarizes Gahagan's FOIA request, and then states that:

---

[120] Rec. Doc. 21 at pp. 6–7.

[121] *See Nat'l Sec. Counselors v. C.I.A.*, 960 F.Supp.2d 101, 152 (D.D.C. 2013) (quoting *Steinberg v. U.S. Department of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994)) ("in order to satisfy its burden of establishing the adequacy of its search, an agency's affidavit must "describe in ... detail what records were searched, by whom, and through what process."); *People for the American Way Found. v. Nat'l Park Serv.*, 503 F.Supp.2d 284, 293 (D.C. Cir. 2007) (quoting *Ferranti v. ATF*, 177 F. Supp.2d 41, 47 (D.D.C. 2001)) ("[a]ffidavits that include search methods, locations of specific files searched, descriptions of searches of all files likely to contain responsive documents, and names of agency personnel conducting the search are considered sufficient."); *Ctr. for Pub. Integrity v. F.C.C.*, 505 F.Supp.2d 106, 117 (D.D.C. 2007) (same).

[122] In *Batton*, as noted above, the Fifth Circuit found sufficient a declarations that stated that (1) the "Oklahoma City Disclosure Office" conducted the search; (2) identified the databases and records searched; and (3) "explain[ed] that these databases contain the type of information requested." 598 F.3d at 176. *Batton* does not address who conducted the search.

In an effort to locate documents responsive to Plaintiff's FOIA request, the FOIA Division conducted a search in "ENFORCE." ENFORCE is an electronic database system utilized by CBP and is an integrated system that combines two major systems: the Enforcement Case Tracking System (ENFORCE), which supports enforcement case processing and management functions and stores data in a single repository (EID-Enforcement Integrated Database) and IDENT, the Automated Biometric Identification System which captures biometric information, including photographs and fingerprints.  The purpose of ENFORCE is to record information for producing both administrative and legal documents to support Department of Homeland Security (DHS) enforcement activities. ENFORCE records were searched using the name Theodore Weegar, and variations on the name combined with the provided date-of-birth.[123]

Like the declarations at issue in *Batton*, CBP's supporting declaration identifies the locations CBP searched and how the search was conducted. Unlike the declarations at issue in *Batton*, however, CBP's supporting declaration is devoid of any non-conclusory explanation of why CBP chose to employ the foregoing search methodology in response to Gahagan's search for "any and all" materials relating to Mr. Weegar. Thus, on this showing, a rational trier of fact could not find that CBP conducted a search that was "reasonably expected to produce the information requested," even when viewing the declaration in the light most favorable to CBP and even affording it a presumption of legitimacy. Accordingly, and for this reason, Gahagan is entitled to summary judgment to the extent that he contends that CBP failed to conduct an adequate search.[124]

---

[123] Rec. Doc. 37-1 at pp. 2–3.

[124] After the Magistrate Judge issued its Report and Recommendation, CBP filed a "supplemental declaration" indicating that it searched both ENFORCE and another database, TECS, and searched no other record systems "because standard operating procedures for FOIA database research for Travel related FOIA Requests are conducted in TECS and ENFORCE which, as stated above, are combined of multiple record systems and databases, which would most likely contain any and all responsive records." Rec. Doc. 42-1 at pp. 2–3. Gahagan urges the Court to strike this supplemental declaration, because it is not based upon the declarant's personal knowledge. Rec Doc. 45 at p. 6. Even if the declaration were based upon Burroughs' personal knowledge, and even if the Court deemed the supplemental declaration to be an amendment to the Defendants' opposition to Gahagan's motions, the supplemental declaration does not specify why the search methodology employed was reasonably expected to produce the information requested.

### iii.     Adequacy of ICE's Search

ICE's declaration likewise summarizes Gahagan's FOIA request.[125] Like the declarations at issue in *Batton*, ICE's declaration then describes the search methodology it employed, which included a referral to USCIS. Unlike CBP's declaration, however, ICE's declaration specifies why it employed the search methodology it did, stating that it referred Gahagan's search to USCIS "[b]ecause [Gahagan] sought documents in connection with the removal proceedings before the Immigration Court in New Orleans, Louisiana," and later "determined that the files contained with the ERO and OCC New Orleans would be most likely to maintain responsive records."[126]

These declarations, however, do not indicate that ICE pursued "the type of information requested" by Gahagan, unlike the declarations at issue in *Batton*. ICE notes in its declaration that Gahagan requested "any and all" materials relating to Mr. Weegar,[127] but does not explain why a search tailored to Weegar's removal proceedings and initially referred to USCIS "can be reasonably expected to produce the information requested"[128] by Gahagan, as *Batton* requires.  Although "[t]here is no requirement that an agency search every record system,"[129] ICE must nonetheless provide sufficient information to permit a rational trier of fact to conclude that "the search was adequate."[130] ICE has not explained why a search premised upon the pendency of Weegar's removal proceedings in New Orleans and initially referred to USCIS could be reasonably expected to yield

---

[125] Rec. Doc. 18-4 at p. 7.

[126] *Id.* at p. 8.

[127] *Id.* at p. 7.

[128] *Batton*, 598 F.3d at 176 (citations omitted).

[129] *Id.* (citations omitted).

[130] *Id.*

"any and all" nonexempt information about Weegar, as Gahagan requested.

Gahagan also contends that a search of locations "most likely" to produce responsive records, ICE's stated basis for searching the ERO and OCC New Orleans offices, is insufficient under FOIA.[131] As noted above, the Fifth Circuit requires that an agency employ methods it "reasonably expect[s] to produce the information requested."[132] This appears to be equivalent to a requirement that a search be "likely" to yield responsive documents.[133] Accordingly, ICE's declaration, in stating that it searched locations "most likely" to maintain responsive documents, is also deficient on this basis, because it did not indicate that ICE searched all likely locations.[134]

Consequently, even when viewing this declaration in the light most favorable to ICE, the nonmoving party, and even when affording a presumption of legitimacy to the declaration, a rational trier of fact could not find for ICE on this point. Gahagan is therefore entitled to summary judgment to the extent that he contends that ICE conducted an inadequate search.

---

[131] Rec. Doc. 21 at p. 7 (citing *Hall v. C.I.A.*, 881 F.Supp.2d 38, 59 (D.C. Cir. 2012); *Oglesby v. U.S. Department of Army*, 920 F.3d 57 (D.C. Cir. 1990)) ("Because the CIA's affidavits stated that the CIA searched the systems 'most likely' to contain responsive documents, the Court concludes that the CIA has only searched systems 'most likely' to contain responsive documents, and did not search all systems 'likely to produce responsive documents.'").

[132] *Batton*, 589 F.3d 169, 176 (5th Cir. 2010).

[133] *See* Black's Law Dictionary (defining "likely" as "showing a strong tendency; reasonably expected.").

[134] After the Magistrate Judge issued its Report and Recommendation, ICE filed a supplemental declaration indicating that because Gahagan's request was made "in connection with removal proceedings," the ICE FOIA office determined that there were no other offices" aside from those searched that were "likely to have records responsive to the Request." Rec. Doc. 42-2 at p. 5. This supplemental declaration appears to render moot Gahagan's arguments regarding ICE's use of the "most likely" terminology. However, Gahagan also argues that this supplemental declaration should be stricken from the record "for lack of personal knowledge of the facts on which [sic] he asserts as true." Rec. Doc. 45 at p. 13. Even if this supplemental declaration were based upon the declarant's personal knowledge, and even if the Court deemed the supplemental declaration to be an amendment to Defendants' opposition, the supplemental declaration does not explain why a search tailored to the pendency of removal proceedings in New Orleans was reasonably expected to yield all documents in ICE's possession pertaining to Mr. Weegar.

### iv.      Adequacy of State's Search

Finally, State's declaration quotes Gahagan's FOIA request, summarizes its activity in response to that request, describes State's methodology for evaluating FOIA requests, and indicates that, in the course of evaluating Gahagan's request, it determined that certain offices and records systems were the "only" ones "reasonably likely to have documents responsive" to Gahagan's request.[135] It then describes in detail the methods used to search for responsive documents in these locations.[136] State's declaration not only sets forth the search methodology State employs and the reason State employs this search methodology, but also explains, as did the declarations at issue in *Batton*, why State executed the search at issue here in the manner that it did: because it could reasonably be expected to yield the records Gahagan requested.[137] Accordingly, when viewing this declaration in the light most favorable to State, and when affording a presumption of legitimacy to this declaration, a rational trier of fact could find that State conducted an adequate search for non-exempt agency records. Gahagan's motion will therefore be denied to the extent that it contends that State conducted an inadequate search.

### 3.      *Vaughn* Index

Finally, after Defendants produced documents to Gahagan and filed supporting declarations into the record, he asserted that CBP failed to produce a proper *Vaughn* index.[138] Gahagan briefed this issue more fully on his second motion. The Court will therefore consider his arguments on this point below.

---

[135] Rec. Doc. 37-2 at pp. 2–5.

[136] *Id.* at pp. 5–9.

[137] Rec. Doc. 37-2 at p. 4.

[138] Rec. Doc. 21 at p. 10.

## VI. Gahagan's "Second Motion for Summary Judgment"

**A.**     ***Gahagan's Arguments in Support of His "Second Motion for Summary Judgment"[139]***

      In his second motion, Gahagan requests that the Court "enter an order granting summary judgment in [his] favor with regard to his FOIA cause of action," and order that: (1) CBP "produce forthwith a *Vaughn* index of responsive agency records under claim of exemption for the responsive document produced to him;" (2) ICE "produce forthwith . . . completely unredacted copies of the agency records noted only as 'Non Responsive' . . . which are not being withheld under any claim of a lawful FOIA exemption;" (3) ICE "submit an unredacted copy" of an agency record produced to him "for an *in camera* inspection to determine whether [ICE's] withholdings, and claim of non-segregability, are lawful under FOIA;" (4) "Defendants produce forthwith to [him] any reasonably segregable portion of each and every responsive agency record being withheld under claim of lawful FOIA exemption;" and (5) "Defendants are enjoined from continuing to withhold any and all non-exempt agency records responsive to [his] FOIA requests,"[140] for reasons summarized below.

### 1.     *Vaughn* Index

      Gahagan first contends that CBP "has refused to produce its legally mandated *Vaughn* index justifying its withholding of responsive agency records produced after he filed his first motion for summary judgment," and has therefore "not met its burden of demonstrating the legal justification for its withholding of agency records," requiring the Court to grant summary judgment to him.[141]

### 2.     Sufficiency of ICE's Disclosures

      Gahagan next argues that the Court should order ICE to produce a one-page, almost fully

---

[139] Rec. Doc. 24.

[140] *Id.* at pp. 1–2.

[141] Rec. Doc. 24-2 at p. 8.

redacted document for *in camera* inspection, so that the Court may determine whether the information in the document was properly withheld,[142] and further contends that ICE has improperly withheld the seven pages of agency records marked as "non-responsive" and produced to him in fully-redacted form.[143]

Finally, Gahagan contends that by withholding the information contained in the one-page, fully redacted document *in toto*, ICE is preventing him and the Court from "determining what the document is," thereby preventing "anyone from determining whether [ICE] is being truthful with its exemption or description of the information," and "whether its holdings are lawful under FOIA's nine enumerated exemptions."[144] According to Gahagan, ICE has therefore failed to meet its burden of proof as to this document, warranting an order compelling ICE to release the "segregable, nonexempt portions" of the document.[145]

## B.    *Defendants' Opposition[146]*

### 1.    Sufficiency of ICE's Disclosures

In opposition to Gahagan's second motion, Defendants argue that ICE is not required to produce the documents it withheld as being "non-responsive," because non-responsive information is "simply not subject to the statute's disclosure requirements," and therefore may be withheld "without invoking a statutory exception."[147] Next, Defendants argue, ICE's declaration properly

---

[142] *Id.* at pp. 8–10 (citing Rec. Doc. 18-3 at p. 10).

[143] *Id.* at pp. 10–19 (citing Rec. Doc. 18-3 at pp. 2–8).

[144] *Id.* at pp. 19–21 (citing Rec. Doc. 18-3 at p. 10).

[145] *Id.* at p. 21.

[146] Rec. Doc. 27.

[147] *Id.* at p. 5.

justified ICE's decision to withhold in full the single-page document Gahagan seeks in his second motion.[148]

### 2. *Vaughn* Index

Defendants further contend that CBP's declaration constitutes a proper *Vaughn* index, as it "describes the withholding made" in the one-page responsive document found by CBP,[149] and "is sufficient to permit the Court to analyze the withholding" in light of the "minimal redactions" made to the document.[150]

## C. *Gahagan's Reply*[151]

### 1. *Vaughn* Index

In further support of his second motion, Gahagan reavers that CBP has not produced a proper *Vaughn* index, because its declaration: "does nothing more than simply rewrite the legal definitions for the different FOIA exemptions," "does not explain why each redaction falls under the purported exemptions," and does not "itemize and index each withheld document" in order to permit the Court to "make a ruling on the legality of the withholding."[152] Indeed, Gahagan contends, CBP's declaration indicates that it redacted certain information in the one-page document produced to him based upon FOIA exemptions (b)(6), (b)(7)(C) and (b)(7)(E), but the only exemption indicated on the document is (b)(7)(E).[153]

---

[148] *Id.* at pp. 6–7.

[149] *Id.* at p. 7.

[150] *Id.*

[151] Rec. Doc. 30.

[152] Rec. Doc. 30 at pp. 3–5.

[153] *Id.* at p. 4.

### 2.    Sufficiency of ICE's Disclosures

Gahagan next reavers that ICE has not met its burden of proving that it legally withheld the documents marked as "non-responsive" and produced to him, because ICE appears simultaneously to contend that it searched for "responsive" documents, and that it found non-responsive documents in the course of that search.[154] According to Gahagan, ICE "cannot search specifically for 'responsive' agency records, discover 'responsive' agency records, and then attempt to fully redact entire pages of these 'responsive' agency records simply by writing 'Non Responsive' on the 'responsive' documents."[155] Gahagan contends that if these records "were truly not responsive," then they "never would have been discovered according to [ICE's] specifically described search terms," and "definitely would not have been produced to [him] after receiving multiple layers of review from at least two government agencies to determine their responsiveness."[156]

### D.    *Analysis*[157]

In his first and second motions, Gahagan contends that summary judgment should be granted due to ICE's production of seven pages of documents marked as "Non Responsive" and redacted in full[158] and ICE's production of a one-page document marked as exempt and redacted in full,[159] building on arguments asserted in connection with his first motion. Gahagan also requests that the

---

[154] *Id.* at p. 6.

[155] *Id.* at p. 7.

[156] *Id.*

[157] In its Order in *Gahagan*, the Court set forth the law applicable to several of the issues presented by Gahagan's motions. Thus, where the Court's prior Order sets forth the applicable law, it is quoted here. *See Gahagan*, 2015 WL 350356.

[158] *Id.* at pp. 10–19 (citing Rec. Doc. 24-3 at pp. 2–8).

[159] *Id.* at pp. 19–21 (citing Rec. Doc. 24-3 at p. 10).

Court order an *in camera* review of this one-page document.[160] Additionally, Gahagan contends that CBP has failed to produce a *Vaughn* index regarding the one-page document it disclosed to him.[161]

Preliminarily, the Court notes that it has deferred its analysis of several arguments advanced in Gahagan's first motion until this portion of its Order. Both motions attack the redaction and withholding of Defendants' disclosures. Gahagan more fully briefed this issue in connection with the second motion. Therefore, the Court will consider Gahagan's arguments on this point below. Because the legal standards governing these issues also governs Gahagan's arguments regarding State's failure to produce the responsive documents it found, raised in his first motion, the Court will likewise consider State's alleged improper withholding here.

### 1.     Redaction and Withholding

In keeping with FOIA's "strong presumption in favor of disclosure," Defendants have the burden of "justify[ing] the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document."[162] Defendants may meet their burden by "identifying the documents at issue and explaining why they fall under exemptions."[163] This Court determines *de novo* the propriety of a redaction or withholding.[164]

Although an agency's affidavits are afforded a presumption of legitimacy where no bad faith

---

[160] *Id.* at pp. 8-10.

[161] Rec. Doc. 24-2 at p. 8.

[162] *Ray*, 502 U.S. at 173.

[163] *Batton*, 598 F.3d at 175.

[164] 5 U.S.C. § 552(a)(4)(B) ("On complaint, the district court of the United States in which the complainant resides, or has his principal place of business . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of agency records improperly withheld from the complainant.  In such a case the court shall determine the matter de novo.").

has been shown,[165] further inquiry into the validity of an agency's decision to withhold documents may be warranted or required in some instances. Thus, courts may, in their discretion, order the production of a *Vaughn* index or review disputed documents *in camera* to determine the validity of a withholding.[166]   A *Vaughn* index is "a routine device through which the defendant agency describes the responsive documents withheld or redacted and indicates why the exemptions claimed apply to the withheld material,"[167] and consists of an "index and detailed justification" of claims of exemption.[168]

Gahagan requests that the Court order CBP to produce a *Vaughn* index, and order ICE to submit certain documents produced by ICE for *in camera* review. The Fifth Circuit's *Batton* decision illustrates the circumstances in which the use of *in camera* review or a *Vaughn* index may be warranted. In *Batton*, the defendant identified thousands of responsive documents, produced a fraction of those documents to the plaintiff, and then moved for summary judgment, contending that an array of FOIA exemptions justified its decision to withhold documents identified as "Examination Workpapers"[169] and "Agent's Working Papers" and generically described in affidavits.[170] The plaintiff then urged the district court to order the defendant to produce a *Vaughn* index.[171] The court denied the plaintiff's request for an order compelling the defendant to produce a *Vaughn* index, and

---

[165] *Batton*, 598 F.3d at 176.

[166] *Stephenson*, 629 F.2d at 1145.

[167] *Batton*, 598 F.3d at 174 (citations omitted).

[168] *Stephenson*, 629 F.2d at 1145.

[169]  598 F.3d at 174.

[170] *Id.*

[171] *Id.*

granted the defendant's motion for summary judgment.[172] The Fifth Circuit, in turn, reversed, reasoning that the "broad, conclusory descriptions of the documents" afforded the plaintiff "no opportunity to challenge the withholding and offer[ed] this court no opportunity to review the applicability of the claimed exemptions."[173] In these circumstances, the court held, the district court abused its discretion in failing to inquire further into the validity of the claimed exemptions, either by ordering a *Vaughn* index or an *in camera* inspection of the withheld documents.[174] Applying these legal standards here, the Court will now address Gahagan's arguments regarding Defendants' redactions and withholdings.

### a.    ICE

Gahagan contends that ICE has violated FOIA, to the extent that it has fully redacted seven pages of documents produced to him and marked those documents as "Non Responsive."[175] In its supporting declaration, ICE claims that the documents fully redacted and marked as "Non Responsive" are "Immigration Bond documents and a copy of a cancelled check which do not pertain to Plaintiff's client. The individual referenced in these documents has a different name and Alien Number."[176]

FOIA provides that an agency may permissibly withhold information that falls within statutorily-defined categories; courts in the Fifth Circuit construe these categories narrowly.[177] As

---

[172] *Id.*

[173] *Id.* at 181.

[174] *Id.* at 178-184.

[175] *See* Rec. Doc. 18-4 at p. 18.

[176] Rec. Doc. 18-4 at p. 21.

[177] *Batton,* 598 F.3d at 175 ("The exemptions to disclosure are explicitly limited by statute and should be construed narrowly.").

—

Gahagan points out, FOIA contains no exemption for "non-responsive" documents. However, FOIA requires agencies, "upon any request for records which . . . reasonably describes such records . . . [to] make the records promptly available to any person."[178] Logically, requestee agencies need not make non-responsive records available to the requester.[179] However, an agency that receives a FOIA request must "use[] methods which can be reasonably expected to produce the information requested."[180] If the agency prepares and executes an appropriate query, then the information located and produced as a result of the query should be responsive. ICE  has not explained why it found the above-described documents when executing Gahagan's search, or why it ultimately redacted them and produced them to Gahagan. Accordingly, the Court will exercise its discretion and will order ICE to produce these documents for *in camera* review so that the Court may determine whether these documents were lawfully withheld.[181]

Gahagan also asserts that ICE is unlawfully withholding segregable portions of the single-page, almost fully redacted document disclosed to him, and has not met its burden of justifying why

---

[178] 5 U.S.C. § 552(a)(3)(A).

[179] *See, e.g. Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Justice*, 48 F.Supp.3d 40, 52 (D.D.C. 2014) (holding that "non-responsive" documents are "simply not subject to the statute's disclosure requirements," and may be withheld without invoking a statutory exemption); *Competitive Enterprise Institute v. United States Envtl. Prot. Agency*, 12 F.Supp.3d 100, 114 (D.D.C. 2014) ("Documents that are 'non-responsive' to a FOIA request, conversely, are simply not subject to the statute's disclosure requirements, and agencies may thus decline to release such material without invoking a statutory exemption"); *White v. Center for Medicare and Medicaid Servs.*, No. 06-2490, 2007 WL 1234987 (E.D. La. Apr. 6, 2007) (Barbier, J.) (holding that agency carried its burden on summary judgment by submitting a  "clear, specific, reasonably detailed" affidavit that "properly described" withheld information, including documents withheld as "non-responsive").

[180] 598 F.3d at 176 (citations and internal quotation marks omitted).

[181] *See Batton* 598 F.3d at 183–84 ("Where the existence of the records is known and a factual dispute exists regarding the content of the documents, the district court abused its discretion by failing to order a *Vaughn* index or similar device."). *See, e.g., Citizens for Responsibility and Ethics in Wash.*, 48 F.Supp.3d at 52 (concluding, after reviewing alleged "non-responsive" documents *in camera*, that these documents truly were non-responsive and thus not subject to production pursuant to FOIA).

it redacted the document in this way.[182] Thus, he urges the Court to review the document *in camera*

to determine the propriety of ICE's redaction.[183] Section 552(b) of FOIA provides that:

> Any reasonably segregable portion of a record shall be provided to any person
> requesting such record after deletion of the portions which are exempt under this
> subsection. The amount of information deleted, and the exemption under which the
> deletion is made, shall be indicated on the released portion of the record, unless
> including that indication would harm an interest protected by the exemption in this
> subsection under which the deletion is made. If technically feasible, the amount of
> the information deleted, and the exemption under which the deletion is made, shall
> be indicated at the place in the record where such deletion is made.

The document at issue here is labeled "NCIC Unit Worksheet," and is dated 5/10/2008.[184]

The body of the document is redacted in full, and marked "(b)(7)(E), (k)(2)."  To justify its

redactions, ICE attached a document it labeled as a "*Vaughn* index."[185] This document contains an

"index and detailed justification" of claims of exemption,[186] and therefore fits the description of a

*Vaughn* index. In its *Vaughn* index, ICE describes this document, and states:

> One page document entitled "NCIC Unit Worksheet" for use by an ICE employee
> when a packet of information must be created.
>
> Redaction: Document contains the names of documents and law enforcement
> databases that must be consulted when creating a packet of information for
> submission to NCIC which is the National Crime Information Center which assists
> law enforcement officials perform [sic] their official duties.  FOIA Exemption
> (b)(7)(E) exempts from release information that would disclose law enforcement
> techniques or procedures, the disclosure of which could reasonably be expected to
> risk circumvention of the law. Exemption (b)(7)(E) is asserted to withhold the types
> of information submitted to NCIC. Moreover, the document was derived from the
> Alien File, Index, and National File Tracking System of Records which has been

---

[182] Rec. Doc. 24-2 at pp. 19–21; Rec. Doc. 24-3 at p. 10.

[183] Rec. Doc. 24-2 at p. 9; 19–20.

[184] Rec. Doc. 24-3 at p. 10.

[185] Rec. Doc. 18-4 at p. 21.

[186] *See Stephenson*, 629 F.2d at 1145.

exempted from release under Exemption (k)(2) of the Privacy Act. The redacted information is investigatory material compiled for law enforcement purposes.[187]

ICE's declaration also refers to an "NCIC Unit Worksheet."[188] Specifically, it indicates that: ICE compiled a NCIC Unit Worksheet for "detention and removal records pertaining to plaintiff [sic] removal proceedings."[189] Here, ICE's affidavit and *Vaughn* index indicate that the information on the one-page document was redacted pursuant to FOIA exemption (b)(7)(E) and the Privacy Act. Specifically, it explains that the document "contains the names of documents and law enforcement databases that must be consulted when creating a packet of information for submission to NCIC which is the National Crime Information Center which assists law enforcement officials perform [sic] their official duties,"[190] and was compiled for detention and removal records pertaining to Weegar's removal proceedings.[191]

FOIA exemption (b)(7)(E) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."[192] Further, at 5 U.S.C. § 552a(k)(2), the Privacy Act provides that:

> The head of any agency may promulgate rules . . . to exempt any system of records

---

[187] Rec. Doc. 18-4 at p. 31.

[188] *Id.* at p. 18.

[189] *Id.*

[190] *Id.* at p. 31.

[191] *Id.* at p. 18.

[192] 5 U.S.C. § 552(b)(7)(E).

within the agency from subsections (c)(3), (d), (e)(1), (e)(4)(G), (H), and (I) and (f) of this section if the system of records is . . . investigatory material compiled for law enforcement purposes, other than material within the scope of subsection (j)(2) of this section: Provided, however, That if any individual is denied any right, privilege, or benefit that he would otherwise be entitled by Federal law, or for which he would otherwise be eligible, as a result of the maintenance of such material, such material shall be provided to such individual, except to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence.

Furthermore, ICE's declarant states that he:

[R]eviewed each record line-by-line to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied. With respect to the records that were released in part, all information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released.[193]

As noted above, ICE's declaration is entitled to a "presumption of legitimacy" in the absence of any evidence of bad faith.[194] No bad faith is alleged here. However, ICE's declarant indicates that non-exempt portions were released,[195] but the body of the document at issue here is redacted in full. ICE's declarant has not indicated why any part of the document could not be reasonably segregated and released.  Because ICE has not explained why it was necessary to redact the entire document, the Court will order *in camera* review of the document in order to determine whether the body of the document was properly redacted in full and produced to Gahagan.[196]

---

[193] Rec. Doc. 18-4 at p. 20.

[194] *Batton,* 598 F.3d at 175 (5th Cir. 2010) (citing *Ray*, 502 U.S. at 179 (1991)).

[195] Rec. Doc. 18-4 at p. 20.

[196] *See Batton*, 598 F.3d at 176 ("[W]hile the FOIA leaves to the district court's discretion whether to order an examination of the contents of the agency records at issue, *in camera*, in determining whether the claimed exemptions apply, the legislative intent for exercise of this discretion is relatively clear. This is because in instances where it is determined that records do exist, the District Court must do something more to assure itself of the factual basis and bona fides of the agency's claim of exemption than rely solely upon an affidavit.") (citations, brackets, and internal quotation marks omitted).

39

> ### b.   CBP

Gahagan also contends that CBP has not produced "the mandated *Vaughn* index" justifying the redactions made on the one-page document it produced to him.[197] This document contains three redactions in fields labeled: "Subject ID," "Case No." and another field, the title of which is illegible.[198]  Each redaction reads "(b)(7)(E)." In its supporting declaration, CBP indicates that it withheld information pursuant to three FOIA exemptions: (b)(6), (b)(7)(C), and (b)(7)(E).[199] The declaration then indicates, in generalized and conclusory terms, what types of information "may" have been withheld pursuant to these exemptions.[200]

If this vague and conclusory declaration were CBP's only support for the withholding, a *Vaughn* index would be warranted here. First, the redactions on the document itself list only exemption (b)(7)(E), while CBP's affidavit also lists exemptions (b)(7)(C) and (b)(6). Second, the affidavit does not indicate, even in general terms, what type of information was redacted. Rather, it lists an array of broad categories of information that may have been redacted. To remedy these shortcomings, Gahagan, in both his reply in support of his first motion, and in his second motion, urges the Court to order CBP to produce a *Vaughn* index explaining its redactions.

After Gahagan requested a *Vaughn* index, however, CBP filed a supplemental declaration into the record indicating that the redacted information "reflects CBP's internal coordination procedures and law enforcement techniques," and is comprised of "case numbers, codes and criteria

---

[197] Rec. Doc. 24-1 at p. 22 (citing Rec. Doc. 18-2 at p. 10). This document was stricken from the record pursuant to an order of the Magistrate Judge dated April 14, 2015 and re-filed on April 21, 2015. Rec. Doc. 35 (Order); Rec. Doc. 37-1 (document).

[198] Rec. Doc 37-1 at p. 10.

[199] *Id.* at pp. 3–6.

[200] *Id.*

which are utilized by the Agency for law enforcement purposes."[201] The supplemental declaration also indicates that CBP withheld this information pursuant to exemption (b)(7)(E) only, which is consistent with the justifications listed on the document disclosed to Gahagan. It therefore provides a sufficiently "detailed justification" of claims of exemption, consistent with what might be included in a *Vaughn* index.[202]

Gahagan contends that this declaration should be stricken from the record, because it is not based upon the declarant's personal knowledge,[203] as it does not indicate that the declarant was involved in the search at issue here.[204] Several circuit courts of appeals have articulated specific standards governing the personal knowledge an agency's declarant must possess in order to support an agency's FOIA arguments,[205] although the Fifth Circuit does not appear to have done so. It is not

---

[201] Rec. Doc. 42-1 at p. 5.

[202] 629 F.2d at 1145.

[203] Rec. Doc. 45 at pp. 3–5 (citing FED. R. CIV. P. 56(c)(4); FED. R. EVID. 602; *Akin v. Q-L Investments, Inc.*, 959 F.2d 521, 530 (5th Cir. 1992) ("A district court is entitled to strike affidavits that do not comply with [the predecessor of Rule 56(c)(4)]")).

[204] *Id.* at p. 5.

[205] *See Lahr v. Nat. Transp. Safety Bd.*, 569 F.3d 964, 990 (9th Cir. 2009) ("An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy [the predecessor to Rule 56(c)(4)]") (quoting *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 814 (2d Cir. 1994)). *See also Maynard v. C.I.A.*, 986 F.2d 547, 569 (1st Cir. 1993) ("[A]n agency may rely on an affidavit of an agency employee responsible for supervising the search."); *Safecard Serv., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) ("Ms. Dishman was in charge of coordinating the SEC's search and recovery efforts, and therefore she is the most appropriate person to provide a comprehensive affidavit."). *See also Miccosukee Tribe of Indians of Fla. v. U.S.*, 516 F.3d 1235, 1246 (11th Cir. 2008) (noting that "at least two other Circuits that have held that the agency employee who actually performed a search need not be the one to supply an affidavit or sworn testimony describing the adequacy of the search so long as an official responsible for supervising the search efforts has provided testimony in one form or another," but concluding that it was not necessary to reach the issue in the matter before it, because the district court granted depositions of the individuals who performed the search at issue); *Patterson v. I.R.S.*, 56 F.3d 832, 841 (7th Cir. 1995) (accepting an affidavit "based upon this form and his familiarity with the standard procedures followed by the Disclosure Officer for the processing of such FOIA requests."); *Spannaus v. U.S. Dept. of Justice*, 813 F.2d 1285, 1289 (4th Cir. 1987) ("Special Agent Cook attested to his personal knowledge of the procedures used in handling Spannaus's request and his familiarity with the documents in question. He has therefore demonstrated ample personal knowledge to render him competent to testify regarding the interference posed by disclosure.").

necessary, however, to delve into this issue at this time, because the Court, in its discretion, may review the disputed document *in camera* in order to determine whether CBP validly redacted the information in dispute.[206] The Court finds that *in camera* review is warranted here. Rather than order CBP to produce a *Vaughn* index at this time, the Court will order CBP to submit the disputed document for *in camera* review.

### c.    State

In his first motion, Gahagan asserts that State failed to disclose responsive agency records to him, in violation of FOIA. Unlike CBP and ICE, State has carried its burden of justifying its search, but has not disclosed any documents to Gahagan.

In the portion of its supporting declaration in which it addresses the nature of its search for responsive documents, State indicates that it found "two responsive records" located in the Office of Visa Services.[207]   In the section of its supporting declaration addressing "FOIA exemptions claimed," State indicates that it "withheld certain information in two documents that pertains to the issuance or refusal of visas that is exempt from disclosure under Exemption 3," pursuant to 8 U.S.C. § 1202(f)."[208] Finally, in a section titled "Narrative *Vaughn* Index," State represents that:

> Documents C05697816 and C05697817 are each three-page printouts from the electronic CCD/VOIS providing the results of name checks run through CLASS in the course of processing visa applications for Theodore Weegar, including consular officers' comments concerning those results. These documents pertain directly to the issuance or refusal of visas to enter the United States. Therefore, the Department has withheld both documents in full under FOIA Exemption 3, 5 U.S.C. § 552(b)(3), pursuant to § 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f). The Department has conducted a thorough review of these documents for the purpose of releasing any non-exempt information and determined that there is no information

---

[206] *Batton*, 598 F.3d at 175–76.

[207] Rec. Doc. 37-2 at pp. 5–6.

[208] *Id.* at p. 10.

that may be reasonably segregated and released.[209]

As an initial matter, this declaration "describes the responsive documents withheld or redacted"—two three-page printouts pertaining to the issuance or refusal of visas—and also "indicates why the exemptions claimed apply to the withheld material."[210] Specifically, the declaration indicates that the documents were fully withheld pursuant to FOIA exemption (b)(3). FOIA exemption (b)(3) permits agencies to exempt from disclosure matters that are:

> [S]pecifically exempted from disclosure by statute . . . if that statute--
>
> (A)(i)   requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or
>
> (ii)   establishes particular criteria for withholding or refers to particular types of matters to be withheld; and
>
> (B)   if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

Further, the declaration indicates that the documents are exempt from disclosure pursuant to 8 U.S.C. § 1202(f), which provides, in pertinent part, that:

> The records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States, except that--
>
> (1)   in the discretion of the Secretary of State certified copies of such records may be made available to a court which certifies that the information contained in such records is needed by the court in the interest of the ends of justice in a case pending before the court.

Thus, the declaration indicates (1) what State found; (2) what State withheld; (3) why State

---

[209] *Id.* at p. 11.

[210] *Batton*, 598 F.3d at 174.

withheld the information; and (4) why State was unable to release any reasonably segregable information. Given that the declaration addresses each of these points, and given that State's asserted basis for withholding records appears to be consistent with the statute, the Court finds, when viewing the declaration in the light most favorable to State, the non-moving party, that a rational trier of fact could find for State as to the sufficiency of its basis for withholding responsive records from Gahagan. Accordingly, Gahagan's motion will be denied, to the extent that it seeks summary judgment based upon State's failure to produce responsive information.

## VII. Conclusion

The Court referred Gahagan's two pending motions for summary judgment[211] to the Magistrate Judge.[212] The Magistrate Judge issued a Report and Recommendation denying the motions,[213] to which Gahagan timely objected.[214] The Court, having considered Gahagan's objections, has determined that the Magistrate Judge improperly characterized Gahagan's requests for relief pursuant to FOIA as requests for preliminary injunctive relief, a remedy Gahagan did not request, governed by legal standards that do not apply to the requests for FOIA injunctive relief that Gahagan actually made here. Thus, the Court rejected the Report and Recommendation in full and reviewed Gahagan's motions *de novo*.

In his first "Motion for Summary Judgment," Gahagan contends that he is entitled to judgment as a matter of law pursuant to FOIA as a result of: (1) ICE's "routing" process;[215] and

---

[211] Rec. Doc. 9; Rec. Doc. 24.

[212] Rec. Doc. 33.

[213] Rec. Doc. 38.

[214] Rec. Doc. 40.

[215] Rec. Doc. 9-2 at pp. 7–20.

(2) Defendants' alleged failure to conduct an adequate search,  produce responsive records, and justify their withholding of responsive records.[216] On this basis, he urges the Court to: (1) order Defendants to "conduct a lawfully adequate search for responsive agency records in accordance with [his] FOIA requests and FOIA;" (2) order Defendants to "respond to [his] FOIA request as mandated by 5 U.S.C. § 552, produce forthwith any and all non-exempt agency records responsive to [his] FOIA request, and produce a *Vaughn* index of any responsive records withheld under claim of exemption;" and (3) consistent with the language of FOIA, order that Defendants "are enjoined from continuing to withhold any and all non-exempt agency records responsive to [his] FOIA request."[217]

After Gahagan filed his first motion, the underlying factual basis of this litigation changed. Specifically, ICE and CBP produced documents to Gahagan, mooting Gahagan's arguments for summary judgment to the extent that these arguments were premised upon ICE and CBP's outright failure to produce documents to Gahagan. Additionally, all three Defendants submitted declarations addressing the sufficiency of their searches and the basis for their decisions to withhold records, or portions of records, from Gahagan. Defendants' disclosures and declarations led Gahagan, in reply, to challenge the adequacy Defendants' searches and CBP's failure to produce a *Vaughn* index.

As to Gahagan's first asserted basis for summary judgment—ICE's "routing" process—Gahagan's motion is moot to the extent that it is premised upon ICE's outright failure to produce documents to him. Further, this Court has previously found, and finds here, that "routing" is not a *per se* violation of FOIA, and is permissible as long as it does not result in an improper withholding of responsive records. Additionally, "routing" does not relieve ICE of its duty to

---

[216] Rec. Doc. 9-2 at pp. 20–21.

[217] *Id.* at p. 1.

conduct an adequate search. The Court therefore considered ICE's "routing" in its analysis of these issues, as is summarized below.

As to Gahagan's second asserted basis for summary judgment—Defendants' failure to conduct an adequate search, produce responsive records, and justify their withholding of responsive records—the Court considered Gahagan's adequacy arguments in its analysis of his first motion, and considered Gahagan's production, withholding, and *Vaughn* index arguments in its analysis of Gahagan's second motion. In considering Gahagan's search-related arguments, the Court has determined that: (1) Defendants' declarations are not *per se* deficient for failing to identify the individual who conducted the search; (2) CBP and ICE have not carried their burdens of showing that they conducted an adequate search; (3) State has carried its burden of showing that it conducted an adequate search. Thus, Gahagan's first motion will be granted to the extent that it asserts that CBP and ICE have not conducted an adequate search, and denied to the extent that it asserts that State has not conducted an adequate search.

In his second "Motion for Summary Judgment,"[218] Gahagan seeks judgment in his favor due to: (1) ICE's full redaction of seven pages of documents on the basis that these documents are "non-responsive" and ICE's near-full redaction of a one-page agency record; and (2) CBP's failure to produce a *Vaughn* index.[219]  On this basis, he requests that the Court: (1) order ICE to produce the seven pages of records produced to him in fully redacted form and marked as "Non Responsive;" (2) order ICE to submit for *in camera* review an unredacted copy of the one-page record produced to him in a fully redacted form; (3) order CBP to produce a *Vaughn* index; (4) order Defendants to

---

[218] Rec. Doc. 24.

[219] Rec. Doc. 24-2 at p. 8.

produce any reasonably segregable portion of records withheld under claim of exemption; and (5) order Defendants to cease withholding all non-exempt responsive records.

In deciding this motion, this Court first considered whether Defendants have carried their burden of showing that they lawfully redacted and withheld information from Gahagan, concluding that: (1) it will order *in camera* review in order to determine whether ICE lawfully withheld seven pages of records marked as "Non Responsive" and the information in one page of records redacted nearly in full; (2) it will also order *in camera* review of the document CBP produced to Gahagan; and (3) State had carried its burden with respect to its decision to fully withhold the responsive documents it found pursuant to Gahagan's FOIA request.

Accordingly,

**IT IS ORDERED** that the Magistrate Judge's "Findings and Recommendation"[220] is **REJECTED.**

**IT IS FURTHER ORDERED** that Gahagan's "Motion for Summary Judgment"[221] is **MOOT IN PART, DENIED IN PART**, **AND GRANTED IN PART.**

**IT IS FURTHER ORDERED** that Gahagan's "Motion for Summary Judgment"[222] is **MOOT** to the extent that it requests judgment on the basis of ICE and CBP's failure to produce any responsive documents to him.

**IT IS FURTHER ORDERED** that Gahagan's "Motion for Summary Judgment"[223] is **DENIED** to the extent that it seeks judgment on the basis that State did not conduct an adequate

---

[220] Rec. Doc. 38.

[221] Rec. Doc. 9.

[222] *Id.*

[223] *Id.*

search and did not produce responsive records to him.

**IT IS FURTHER ORDERED** that Gahagan's "Motion for Summary Judgment"[224] is **GRANTED** to the extent that it requests judgment on the basis that ICE and CBP did not conduct adequate searches.

**IT IS FURTHER ORDERED** that Gahagan's "Second Motion for Summary Judgment"[225] is **GRANTED IN PART, AND JUDGMENT DEFERRED IN PART** until the Court can conduct an *in camera* review.

**IT IS FURTHER ORDERED** that Gahagan's "Second Motion for Summary Judgment"[226] is **GRANTED** to the extent that it requests that the Court order ICE to submit the one-page, fully redacted document[227] in dispute to the Court for *in camera* inspection. ICE is to submit this document for *in camera* inspection no later than Monday, June 22, 2015. ICE is also to submit the seven pages of documents marked as "non-responsive"[228] for *in camera* inspection at this time. The Court will defer its decision on whether ICE has lawfully withheld the information contained in these documents until it has had an opportunity to complete its *in camera* review of the documents.

---

[224] *Id.*

[225] Rec. Doc. 24.

[226] *Id.*

[227] Rec. Doc. 24-3 at p. 10.

[228] *Id.* at pp. 2–8.

**IT IS FURTHER ORDERED** that CBP is to submit the disputed document[229] to the Court for *in camera* inspection no later than Monday, June 22, 2015. The Court will defer its decision on whether CBP must submit a *Vaughn* index or has lawfully withheld the information contained in this document until it has had an opportunity to complete its *in camera* review of the document.

**NEW ORLEANS, LOUISIANA**, this 16th day of June, 2015.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[229] Rec. Doc. 37-1 at p. 10.

49