**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MICHAEL GAHAGAN** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 14-2619** |
| **UNITED STATES CUSTOMS AND BORDER PROTECTION, et al.** | **SECTION: "G"(2)** |

## ORDER

In this action arising under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), Plaintiff Michael W. Gahagan ("Gahagan") sought relief in connection with his request for agency records he claims that Defendants United States Customs and Border Protection ("CBP"), United States Immigration and Customs Enforcement ("ICE"), and United States Department of State ("Department of State") (collectively "Defendants") unlawfully withheld.[1] Pending before the Court is Gahagan's "Motion for Attorney's Fees and Costs Pursuant to the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E)."[2] Having reviewed the motion, the memoranda in support, the memorandum in opposition, the record, and the applicable law, the Court will grant the motion and award Gahagan $16,485.70, representing $16,016 for attorney's fees and $469.70 for litigation costs.

## I. Background

Gahagan, an immigration attorney, filed the instant action against Defendants in order to obtain materials required to represent his client, Theodore Weegar, in removal proceedings before

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 62.

the New Orleans Immigration Court.[3] In his complaint, Gahagan alleges that he filed FOIA requests seeking these materials from Defendants in July 2014.[4] He further alleges that, as of November 15, 2014, when he filed the instant complaint, he had received no response from CBP.[5] ICE, on the other hand, allegedly notified Gahagan that it "would . . . forward [his] request" to the United States Citizenship and Immigration Services ("USCIS"), prompting Gahagan to appeal ICE's "refusal to search its files for the requested agency records" on August 18, 2014.[6] Gahagan maintains that, as of November 15, 2014, he had received 56 "fully redacted and fully withheld agency records" from USCIS marked "Referred to Immigrations and Customs Enforcement," but that he had received no response from ICE regarding his request or his appeal.[7]  Finally, Gahagan contends that the Department of State mailed him a letter on July 31, 2014 requesting additional information to process his request, an action Gahagan deemed to be a denial of his request, prompting him to file a FOIA appeal.[8] Gahagan avers that he supplied the requested information to the Department of State, but had received "no substantive reply" at the time he filed the instant complaint on November 15, 2014.[9]

On November 24, 2014 and December 29, 2014, Plaintiff filed two successive motions for

---

[3] Rec. Doc. 1.

[4] *Id.* at 4.

[5] *Id.* at 4–5.

[6] *Id.* at 5–6.

[7] *Id.* at 6.

[8] *Id.* at 6–7.

[9] *Id.* at 7.

summary judgment.[10] The Court granted in part and denied in part those motions.[11] On July 19, 2015, Gahagan filed a third motion for summary judgment, which the Court granted in part and denied in part.[12] Gahagan filed the instant motion on November 20, 2015.[13] Defendants filed an opposition on December 1, 2015.[14] With leave of Court, Gahagan filed a reply on December 4, 2015.[15]

## II. Parties' Arguments

### A. *Gahagan's Arguments in Support of an Award of Attorney's Fees and Costs*

In his motion, Gahagan requests an award of $34,777 in attorney's fees, representing a rate of $300 per hour, as well as costs in the amount of $469.70, pursuant to 5 U.S.C. § 552(a)(4)(E).[16] Gahagan asserts that he is both eligible and entitled to an award of attorney's fees and costs pursuant to FOIA because he substantially prevailed in the underlying litigation pursuant to 5 U.S.C. § 552(a)(4)(E)(ii)(I) and (II).[17] According to Gahagan, he substantially prevailed in his lawsuit because he: "(1) filed a FOIA request with the government; (2) the government failed to disclose the requested records with the legally mandated Vaughn index within 20 business days as mandated by FOIA; (3) Plaintiff sued the government because he had exhausted his administrative remedies; and (4) the agency then released the requested information both voluntarily and pursuant to <u>multiple</u>

---

[10] Rec. Docs. 9, 24.

[11] Rec. Docs. 46, 47.

[12] Rec. Docs. 49, 57.

[13] Rec. Doc. 62.

[14] Rec. Doc. 63.

[15] Rec. Doc. 67.

[16] Rec. Doc. 67-1 at 8.

[17] *Id.* at 1.

Court Orders."[18] Gahagan contends that he substantially prevailed because the Court ordered Defendants to conduct a legally adequate search and produce a *Vaughn* index, and because Defendants made a voluntary or unilateral change in their position and finally produced the requested information after three motions for summary judgment.[19]

Gahagan asserts that the Fifth Circuit has explained that in enacting FOIA, Congress has evinced a strong desire "to establish a national policy of open government through the disclosure of government information" and "[a] crucial means of implementing the policy is a liberal attorney fee provision."[20] Gahagan asserts that in determining whether a claimant is entitled to an award, a court should consider four factors: "(1) the benefit to the public deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law."[21] First, in support of his contention that the public derived a benefit from this case, Gahagan cites a Northern District of California case, *Mayock v. Immigration and Naturalization Service*, asserting that *Mayock* is factually and legally identical to this case and the attorney in that case was granted attorney's fees.[22] Gahagan also cites a Fifth Circuit case, *Blue v. Bureau of Prisons*, in which the court stated that "the successful FOIA plaintiff always acts in some degree for the benefit of the public, both by bringing government into compliance with the FOIA disclosure policy and by securing for the public at large the benefits assumed to flow from the disclosure of

---

[18] *Id.* at 2–3 (internal citations omitted).

[19] *Id.* at 2.

[20] *Id.* at 4 (quoting *Cazalas v. Dep't of Justice*, 709 F.2d 1051, 1057 (5th Cir. 1983)).

[21] *Id.* at 8 (quoting *State of Texas v. Interstate Commerce Comm'n*, 935 F.2d 728, 730 (5th Cir. 1991)).

[22] *Id.* at p. 9 (citing 736 F. Supp. 1561, 1564 (N.D. Cal. May 16, 1990)).

government information."[23] Gahagan asserts that the release of documents worked to preserve the integrity of the Immigration Court proceedings.[24] According to Gahagan, attorney's fees in this case are appropriate because the FOIA response helped protect the public's interest in the fair administration of justice.[25] Gahagan acknowledges that an individual desire to access information does not always mean that there is a public benefit; however, he asserts that an individual desire does not preclude an award of attorney's fees.[26]

Second, Gahagan asserts that there was no commercial benefit to him as he is an immigration attorney who filed this lawsuit in order to obtain information from the government, information that he asserts was necessary to effectively represent his client.[27] Gahagan contends that he was not using the information to make a profit and he actually lost income by having to refuse a new case due to the time-consuming nature of the litigation.[28]

Third, Gahagan contends that the nature of his interest in the records weighs in favor of his entitlement to attorney's fees.[29] In support, Gahagan cites a case from another section of the Eastern District of Louisiana, *Hernandez v. United States Customs and Border Protection Agency*, where, according to Gahagan, the court determined that an immigrant placed in deportation proceedings who sued the government to obtain the documents he needed to defend himself implicated "the strong public interest in preserving the administration of justice in our nation's

---

[23] *Id.* (citing 570 F. 2d 529, 533 (5th Cir. 1978)).

[24] *Id.* (citing *Jarno v. Dep't of Homeland Sec.*, 365 F. Supp. 2d 733, 738 (E.D. Va. Apr. 18, 2005)).

[25] *Id.* (citing *Jarno*, 365 F. Supp. 2d at 738)).

[26] *Id.* (citing *Cazalas v. Dep't of Justice*, 709 F.2d 1051, 1053 (5th Cir. 1983); *Hernandez v. U.S. Customs & Border Protection Agency*, No. 10-4602, 2012 WL 398328, at *8 (E.D. La. Feb. 7, 2012) (Barbier, J.)).

[27] *Id.* at 11.

[28] *Id.*

[29] *Id.*

immigration courts."[30] Gahagan asserts that although the government may argue that he filed his FOIA request as a substitute for discovery, "FOIA is the exclusive means that a respondent in Immigration Court proceedings must use to obtain documents for use in immigration proceedings."[31] Gahagan contends that the government routinely refuses to produce requested documents in a timely manner under the statute and he often has to resort to litigation to obtain the agency records he needs to effectively represent his clients.[32] According to Gahagan, although some courts have recognized that an award of attorney's fees is generally inappropriate when a litigant utilizes FOIA as a means of obtaining earlier access to information for use in other pending litigation, this case is distinguishable from those cases because the vast majority of them involve business firms seeking trade information for use in private civil litigation, and none involve deportation proceedings.[33]

Fourth, Gahagan contends that he is entitled to attorney's fees under FOIA because the government caused "unnecessary litigation by untruthfully arguing that 'there is a litany of cases [that] place the burden squarely on a plaintiff when deciding injunctive relief in FOIA matters,' even though no Judge has ever applied a preliminary injunction standard to a FOIA cause of action without the Plaintiff first moving for a preliminary injunction."[34] Gahagan contends that opposing counsel's untruthful factual and legal arguments and the filing of misleading pleadings are not an isolated incident.[35] Furthermore, according to Gahagan, the government has the burden of proof

---

[30] *Id.* at 12 (citing *Hernandez*, 2012 WL 398328, at *11).

[31] *Id.* at 13 (citing *Jarno*, 365 F. Supp. 2d at 740).

[32] *Id.*

[33] *Id.* at 14–15.

[34] *Id.* at 17.

[35] *Id.* (citing *DaSilva v. U.S. Citizenship and Immigration Servs.*, No. 13-13, 2014 WL 775606, at *7 (E.D.

with respect to this element and they have failed to meet this burden.[36] Gahagan asserts that the question is not whether the plaintiff has affirmatively shown that the agency was unreasonable, but whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material before the plaintiff filed suit.[37]

Gahagan contends that once a plaintiff is deemed eligible and entitled to attorney's fees, the court turns to the proper amount of the fee award.[38] He asserts that the court determines the proper attorney's fee award by multiplying the hours reasonably expended in the litigation by a reasonable hourly fee, producing what is called the lodestar.[39] Gahagan asserts that he is requesting $300 per hour because that is the "prevailing market rate[] in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation."[40] Gahagan contends that he has been practicing law in the Eastern District of Louisiana for more than eight years and has successfully litigated multiple FOIA cases with identical fact patterns.[41] Gahagan asserts that in *Hernandez*, another section of the Eastern District of Louisiana awarded $300 an hour in a factually and legally similar FOIA case to an attorney with more than eight years of experience.[42] In support, Gahagan also attaches affidavits from other attorneys within the Eastern

---

La. Feb. 24, 2014)).

[36] *Id.* at 16 (citing *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 235–36 (D.D.C. 2011)).

[37] *Id.*

[38] *Id.* at 18 (citing *Summers v. U.S. Dep't of Justice*, 477 F. Supp. 2d 56, 63 (D.D.C. 2007)).

[39] *Id.* (citing *Judicial Watch, Inc. v. Bureau of Land Mgmt.*, 562 F. Supp. 2d 159, 175 (D.D.C. 2008)).

[40] *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

[41] *Id.* at pp. 18–19.

[42] *Id.* at p. 19 (citing *Hernandez v. U.S. Customs & Border Protection Agency*, No. 10-4602, 2012 WL 398328, at *14–16 (E.D. La. Feb. 7, 2012) (Barbier, J.)).

District of Louisiana who assert that $300 is the prevailing hourly rate for the litigation of a FOIA suit by someone with Gahagan's skills, experience, and reputation.[43]

Gahagan also contends that district courts within the Fifth Circuit apply the lodestar method outlined by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.* to calculate fee awards.[44] Gagahan contends that after multiplying the number of hours reasonably expended in the case by the prevailing hourly rate for legal services in the district in order to calculate the lodestar, courts can make adjustments based upon consideration of twelve factors.[45] Gahagan contends that the burden of reasonableness of the hours expended is on the fee applicant.[46] However, Gahagan contends, in *Hernandez*, the court stated that "an agency cannot put a requestor through the time and expense of enforcing compliance with FOIA and then complain that the resources expended were out of proportion to the good obtained."[47] Gahagan requests $34,006.25, representing $33,540 in attorney's fees and $466.25 in costs.[48] Gahagan contends that he has removed all excessive and duplicative work from his billing statement and all his fees and costs are adequately documented.[49]

Addressing the twelve *Johnson* factors, Gahagan asserts that litigation was unnecessarily compounded by USCIS's refusal to obey FOIA and due to the government untruthfully arguing that courts had ruled in ways that they had not, and therefore the factor "time and labor required"

---

[43] Rec. Doc. 62-6; 67-1 at 12–13.

[44] Rec. Doc. 69-2 at p. 19 (citing 488 F.2d 714 (5th Cir. 1974)).

[45] *Id.* at pp. 19–20 (citing *Hernandez*, 2012 WL 398328, at *13).

[46] *Id.* at p. 20 (citing *Hernandez*, 2012 WL 398328, at *13).

[47] *Id.* (citing *Hernandez*, 2012 WL 398328, at *14).

[48] *Id.*

[49] *Id.*

confirms the reasonableness of the lodestar amount.[50] He contends that the second factor, the novelty and difficulty of the issues involved, is met because FOIA procedures are so difficult that no other immigration attorney in the Eastern District of Louisiana is willing to represent clients in FOIA suits and this case was made more difficult by the pressing time constraints imposed by his client's pending deportation proceeding.[51] Gahagan also argues that the third factor, the skill required to litigate a FOIA case in federal court, is demonstrated by the fact that no other immigration attorney in this district or market takes these cases.[52] Turning to the fourth factor, preclusion of other employment, Gahagan asserts that he seeks an upward adjustment under this factor because he is a sole practitioner and was precluded from accepting one worthy case as a result of this case, causing him a loss in $5,000 in income.[53] As for the fifth factor, the customary fee, Gahagan contends that his customary fee, along with other attorneys who practice FOIA law in this district, is $300 per hour where an attorney has more than eight years of experience.[54] Addressing the sixth factor, whether the fee is fixed or contingent, and the eleventh factor, the nature and length of professional relationship between the attorney and the client, Gahagan asserts that he is representing himself pro se.[55]

Turning to the seventh factor, the time limitations imposed by the client or the circumstances of the case, Gahagan contends that the circumstances in this case imposed considerable time constraints on Gahagan, and because there was little time for unnecessary or

---

[50] *Id.* at 21.

[51] *Id.*

[52] *Id.*

[53] *Id.* at 21–22.

[54] *Id.* at 22 (citing *Hernandez*, 2012 WL 398328, at *14–16).

[55] *Id.* at 22–23.

redundant work, this factor further confirms the reasonableness of the hours Gahagan expended.[56]

Gahagan asserts that the eighth factor, the amount involved and the results obtained, is perhaps the

most important factor.[57] Gahagan contends that he was successful in all three of his motions for

summary judgment and forced the government to conduct an adequate search, produce all

responsive agency records, and produce an adequate *Vaughn* index.[58] Gahagan contends that the

ninth factor, the experience, reputation, and ability of the attorney, is addressed in the affidavits he

submitted from local attorneys.[59] Gahagan seeks an upward adjustment pursuant to the tenth factor,

the undesirability of the case, which, he asserts, is intended to incentivize attorneys to accept

undesirable cases, especially in the civil rights context.[60] Gahagan asserts that he was forced to

file this litigation because the government refused to follow the 20-day mandate in producing the

requested agency records and *Vaughn* index, and then refused to properly adjudicate Gahagan's

appeal, "all while knowing that Mr. Weegar's deportation hearing was fast approaching."[61]

Finally, addressing the twelfth factor, awards in similar cases, Gahagan points to the court's ruling

in *Hernandez* awarding $300 per hour for an attorney with more than eight years of experience

and $180 per hour for an attorney with approximately two years of experience.[62] Gahagan

acknowledges, however, that another section of the Eastern District of Louisiana recently awarded

only $200 per hour in a FOIA case.[63]

---

[56] *Id.* at 22.

[57] *Id.* (citing *Abner v. Kansas City So. Ry. Co.*, 541 F.3d 372, 376–77 (5th Cir. 2008)).

[58] *Id.* (citing Rec. Docs. 46, 47, 57, 61).

[59] *Id.* at 23 (citing Rec. Doc. 62-6).

[60] *Id.* (citing *Cooper v. Pentecost*, 77 F.3d 829 (5th Cir. 1996)).

[61] *Id.*

[62] *Id.* (citing 2012 WL 398328, at *14–16).

[63] *Id.* (citing *DaSilva v. U.S. Citizenship and Immigration Servs.*, No. 13-13, 2014 WL 775606, at *9 (E.D.

Gahagan asserts that a portion of his fee request represents time spent in preparing this fee application which is permitted under "fees on fees" litigation precedent.[64] Furthermore, Gahagan asserts that he is entitled to recovery of $466.25 in costs pursuant to 5 U.S.C. § 552(a)(4)(E)(i), which provides for recovery of costs.[65] Finally, Gahagan requests that the Court order Defendants to pay Gahagan within a reasonable amount of time, to be determined by the Court, because, in another litigation, it took Defendants more than a year to pay Gahagan his attorney's fees.[66]

## B.     *Defendants' Arguments in Opposition to an Award of Attorney's Fees*

Defendants contend that even if Gahagan is eligible for attorney's fees, he is not entitled to them.[67] Alternatively, Defendants assert that even if the Court finds that Gahagan is both eligible for and entitled to attorney's fees, the fee should be nominal given Gahagan's "minimal success" in obtaining only one document, the Form I-826, which CBP argued was non-responsive.[68] Defendants argue that although the Court disagreed with CBP regarding the responsiveness of the record, its withholding was not in bad faith and was reasonable.[69]

Defendants contend that because the Court entered a judicial order requiring them to release one page in CBP's possession, Gahagan is eligible for some attorney's fees.[70] However, Defendants assert that merely obtaining a *Vaughn* index does not make a plaintiff a prevailing

---

La. Feb. 24, 2014) (Africk, J.)).

[64] *Id.* at 24 (citing *Sierra Club v. Envtl. Prot. Agency*, 769 F.2d 769, 808 (D.C. Cir. 1985)).

[65] *Id.* at 24–25.

[66] Rec. Doc. 62 at 1.

[67] Rec. Doc. 63 at 1.

[68] *Id.* at 1–2.

[69] *Id.* at 2.

[70] *Id.* at 3.

party.[71] Defendants assert that although Gahagan contends that he is eligible for attorney's fees because the Court held that CBP and ICE did not perform reasonable searches, the Court granted summary judgment in Gahagan's favor only "to the extent that the supporting declarations failed to state adequate language sufficient for either defendant to prevail on this point."[72] Defendants assert that the Court did not instruct ICE or CBP to conduct additional searches and no additional documents were produced.[73]

Furthermore, Defendants contend that Gahagan's claim is insubstantial and Gahagan fails to meet any of the other four criteria in order to be entitled to attorney's fees.[74] Defendants contend that Gahagan's request is strictly personal, garnering no public benefit, as he was attempting to utilize this FOIA proceeding as a means to obtain discovery in his client's deportation proceeding, which is inappropriate.[75] In support, Defendants cite a district court case from the District of Columbia where the court stated that "Congress clearly recognized that the FOIA would be used as a means of obtaining discovery from the Government and, significantly, in such cases attorneys' fees would not ordinarily be awarded."[76] Defendants assert that although there is case law stating that a successful FOIA plaintiff always achieves some degree of public benefit by bringing the government into compliance with FOIA, and the benefit from the public disclosure of government information, this "broadly defined public benefit" is not the benefit to which this factor is

---

[71] *Id.* (citing *Nw. Coal. For Alternatives to Pesticides v. Environmental Protection Agency*, 275 F. App'x 10 (D.C. Cir. 2008)).

[72] *Id.* at 3–4.

[73] *Id.* at 4.

[74] *Id.*

[75] *Id.* (citing *Simon v. United States*, 587 F. Supp. 1029 (D.D.C. 1984)).

[76] *Id.* at 6 (citing *Horsehead Indus., Inc. v. Environmental Protection Agency*, 999 F. Supp. 59, 67 (D.D.C. 1998)).

addressed.[77] Defendants also assert that simply alleging that prosecution of a suit has compelled an agency to improve the efficiency of its FOIA processing is not sufficient to meet the public benefit criterion.[78] In addition, they contend that even if Gahagan did not have any commercial interest in the material sought, "his personal interest in the material is so great it outweighs an award of attorney's fees."[79]

Finally, Defendants contend that Gahagan must show not only that Defendants made withholdings in this case but also that such withholdings were unreasonable.[80] Defendants assert that the single document they withheld is a computer record that is only printed in paper form by CBP if it is required for a specific reason; but here, it was never printed, served, or executed.[81] Defendants argue that they took a reasonable approach in withholding the document based upon the agency's understanding of the electronic system.[82]

Defendants contend that even if Gahagan is entitled to an award of attorney's fees, his award must be significantly reduced as it is excessive.[83] Defendants assert that an hourly rate of $300 is excessive as the Fifth Circuit recently affirmed a decision setting Gahagan's hourly rate at $200 per hour.[84] Defendants contend that the Fifth Circuit rejected Gahagan's reliance on *Hernandez v. United States Customs and Border Protection Agency*, stating that "$300 an hour

---

[77] *Id.* at 4–5 (citing *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995); *Ellis v. United States*, 941 F. Supp. 1068, 1078 (D. Utah 1996)).

[78] *Id.* at 5 (citing *Read v. FAA*, 252 F. Supp. 2d 1108, 1110–11 (W.D. Wash. 2003)).

[79] *Id.* (citing *Read*, 252 F. Supp. 2d at 111).

[80] *Id.* at 7.

[81] *Id.*

[82] *Id.* at 8.

[83] *Id.*

[84] *Id.* (citing *DaSilva v. U.S. Citizenship and Immigration Servs.*, 599 F. App'x 535 (5th Cir. 2014)).

appeared to be atypically high."[85] Defendants also assert that another section of the Eastern District of Louisiana, in *St. Stephen's Missionary Baptist Church v. Taylor*, in 2008, assessed an hourly rate of $150 for a partner, where the partner was David J. Krebs, a skilled attorney with over 25 years of experience in the area of the subject litigation.[86] Defendants assert that Gahagan's request for $300 an hour is excessive as he is only eight years removed from law school and the majority of his experience is handling immigration matters, not FOIA matters.[87] According to Defendants, Gahagan's level of experience would most likely classify him as a Senior Associate at best in a law firm, entitling him to a rate of roughly $175 an hour.[88] Defendants also contend that in light of the *Johnso*n factors, any award of attorney's fees to Gahagan should be decreased given the amount of material produced in response to his broad FOIA requests and the reasonableness of Defendants' withholdings.[89] Because, Defendants assert, Gahagan was largely unsuccessful, he should be compensated only for the time spent on successful claims.[90] In support, Defendants cite a District Court for the District of Columbia case, *Electronic Privacy Information Center v. United States Department of Homeland Security*, where the court stated that the plaintiff could recover fees for work done only on his successful claims and then consider whether the success obtained on those claims is proportional to the efforts expended by counsel.[91]

---

[85] *Id.* at 8–9 (citing *DaSilva*, 599 F. App'x at 543)).

[86] *Id.* at 7 (citing No. 05-294, 2008 WL 4057162 (E.D. La. Aug. 29, 2008)).

[87] *Id.* at 10.

[88] *Id.* at 10–11.

[89] *Id.* at 11.

[90] *Id.*

[91] *Id.* (citing 982 F. Supp. 2d 56, 60 (D.D.C. 2013)).

Defendants also assert that Gahagan's claim for attorney's fees should be reduced for his use of poor billing judgment.[92] Citing the Fifth Circuit in *Saizan v. Delta Concrete Products*, Defendants assert that the burden is on the plaintiff to show the reasonableness of the hours billed and the use of billing judgment, including documentation of the hours charged and those written off as unproductive, excessive, or redundant.[93] Defendants contend that although Gahagan has litigated several FOIA cases in the past, he somehow researched for 7.3 hours before drafting the instant complaint for 3.5 hours.[94] Furthermore, Defendants assert that Gahagan filed three motions for summary judgment, but the majority of each was "bloated with the same canned caselaw and statutory guidance."[95] Defendants also assert that Gahagan's research time is excessive and although Gahagan asserts that he spent 10.9 hours to research and draft the instant motion, the motion is virtually identical to the motion filed in No. 14-2233, *Gahagan v. USCIS*.[96]

## C.   *Gahagan's Arguments in Further Support of an Award of Attorney's Fees and Costs*

In reply, Gahagan asserts that although Defendants assert that his claim is not substantial pursuant to 5 U.S.C. § 552(a)(4)(E)(ii), the "not insubstantial" test applies only when a plaintiff seeks fees under the theory that there was a "voluntary or unilateral change in position by the agency," not when a plaintiff has prevailed pursuant to a judicial order.[97] In response to Defendants' argument that Gahagan's FOIA request was "strictly a personal request," Gahagan asserts that in *Hernandez*, which he asserts was factually and legally similar, the court rejected this

---

[92] *Id.* at 12.

[93] *Id.* (citing 448 F.3d 795, 799 (5th Cir. 2006)).

[94] *Id.* (citing Rec. Doc. 62-4 at 2).

[95] *Id.* at 13.

[96] *Id.*

[97] Rec. Doc. 67 at 2.

argument.[98] Addressing Defendants' arguments regarding the fact that Gahagan used FOIA as a means of discovery, Gahagan asserts that FOIA is the exclusive means that a respondent in Immigration Court proceedings must use to obtain documents for use in the proceedings.[99] Gahagan also re-urges his arguments regarding the benefit the public derived from his FOIA request, as well as his assertion that he did not receive any commercial benefit and in fact lost income by having to refuse another case.[100] Gahagan also contends that the court in *Hernandez* rejected the Government's argument that a plaintiff is not entitled to attorney's fees because the nature of his interest in the records is as a means of discovery.[101]

Turning to whether the Defendants' withholding had a reasonable basis in law, Gahagan contends that here the Defendants' "recalcitrant and obdurate action of knowingly misrepresenting case law, which unnecessarily dragged out this litigation, served only to 'thwart the requestor.'"[102] Gahagan contends that Defendants have not satisfied their burden of showing that they had a colorable or reasonable basis for not disclosing the material until after Gahagan filed suit.[103]

Gahagan contends that Defendants, in opposing the requested hourly rate, cite cases as old as 1996, cite no cases within the last seven years, and only two cases within the last ten years.[104] Gahagan contends that in *DaSilva*, a case cited by Defendants, the court divided the plaintiff's single FOIA cause of action for the purpose of granting and denying attorney's fees and reduced

---

[98] *Id.* at 3 (citing *Hernandez v. United States Customs & Border Protection Agency*, No. 10-4602, 2012 WL 398328, at *8 (E.D. La. Feb. 7, 2012) (Barbier, J.)).

[99] *Id.* (citing *Jarno v. Dep't of Homeland Sec.*, 365 F. Supp. 2d 733, 740 (E.D. Va. 2005)).

[100] *Id.* at 3–4.

[101] *Id.* at 6 (citing *Hernandez*, 2012 WL 398328, at *10–11).

[102] *Id.* at 7 (citing *Blue v. Bureau of Prisons*, 570 F. 2d 529, 533 (5th Cir. 1978)).

[103] *Id.* at 7–8 (citing *Davy v. Cent. Intelligence Agency*, 550 F.3d 1155, 1163 (D.C. Cir. 2008)).

[104] *Id.* at 8.

the plaintiff's award by more than 85%.[105] Gahagan asserts that no other court has followed this division scheme since.[106] Gahagan also contends that Defendants have submitted no direct evidence to contradict Gagahan's affidavits from local attorneys affirming that $300 is the prevailing rate for attorneys of comparable experience.[107] Gahagan asserts that he is well-known as a local and national expert in FOIA who has been asked twice to teach a continuing legal education course on FOIA by the American Immigration Lawyers Association.[108] Finally, Gahagan asserts that although USCIS contends that his claim should be decreased due to the amount of material produced, an agency cannot put a requestor through the time and expense of enforcing FOIA compliance and then complain that the resources expended were out of proportion to what was obtained.[109]

## III. Law and Analysis

### A.    *Legal Standard*

When a plaintiff brings a lawsuit under FOIA, a court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."[110] The Supreme Court has stated that "[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to

---

[105] *Id.* at 8–9 (citing No. 13-13, 2014 WL 775606, at *7 (E.D. La. Feb. 24, 2014) (Africk, J.)).

[106] *Id.* at 9.

[107] *Id.*

[108] *Id.* (citing Rec. Docs. 62-5, 62-6).

[109] *Id.* at 10 (citing *Hernandez v. United States Customs & Border Protection Agency*, No. 10-4602, 2012 WL 398328, at *8 (E.D. La. Feb. 7, 2012) (Barbier, J.)).

[110] 5 U.S.C. § 552(a)(4)(E)(i).

17

the governed."[111] The Fifth Circuit has recognized that FOIA's attorney fee provision plays a

critical role in effectuating this purpose:

> Congress evinced its strong desire, by enacting the FOIA, to establish a national
> policy of open government through the disclosure of government information. . . .
> A crucial means of implementing this policy is a liberal attorney fee provision. The
> fee provision is designed to remove the barriers a private individual faces in
> insuring government compliance with the policy of open government. . . . Thus, the
> fee provision serves three clear policies. First, it acts as an incentive for private
> individuals to pursue vigorously their claims for information. It allows litigants to
> overcome barriers, most particularly the need for legal fees and legal expertise, that
> government may erect in an effort to escape compliance with the law. This same
> incentive is necessary where an attorney seeking information is utilizing his or her
> own services. Second and third, the provision serves a deterrent and, to a lesser
> extent, a punitive purpose. Congress recognized the practical effect of the fee
> provision is that, if the government had to pay legal fees each time it lost a case, it
> would be much more careful to oppose only those areas it had a strong chance of
> winning. . . . The fee provision is designed to deter the government from opposing
> justifiable requests for information under the FOIA and to punish the government
> where such opposition is unreasonable. These goals apply with equal force where
> an attorney litigant proceeds pro se.[112]

The basic framework for determining whether an award of attorney's fees and costs is

appropriate is a two-step analysis. First, the Court must determine the threshold issue of whether

the FOIA litigant is "eligible" for a fee award. In order to be deemed eligible for a fee award, the

plaintiff must have "substantially prevailed" in the underlying FOIA lawsuit.[113] A plaintiff can be

said to have "substantially prevailed" if he has obtained relief through either "(I) a judicial order,

or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in

position by the agency, if the complainant's claim is not insubstantial."[114] If a court determines

---

[111] *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citations omitted).

[112] *Cazalas v. Dep't of Justice*, 709 F.2d 1051, 1057 (5th Cir. 1983) (internal quotations and citations omitted).

[113] 5 U.S.C. § 552(a)(4)(E)(i).

[114] 5 U.S.C. § 552(a)(4)(E)(ii)(I–II).

that a plaintiff is "eligible" for an award of attorney's fees, the court next evaluates whether the plaintiff is entitled to such an award.[115] This determination is left to the sound discretion of the district court.[116] In exercising this discretion, however, the court must consider four factors: "(1) the benefit to the public deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law."[117] All four factors are to be weighed as guides to the court's discretion in FOIA attorneys' fees awards and no one factor is dispositive.[118]

**B.    Analysis**

**1.    Gahagan's Eligibility for an Award of Attorney's Fees**

Gahagan contends that he is eligible for an award of attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(e)(i) because the Court issued multiple Orders compelling USCIS to produce a legally adequate *Vaughn* index, conduct a legally adequate search, and produce records for an *in camera* inspection.[119] Gahagan also asserts that the Fifth Circuit has held that when the government "delayed in releasing the documents and [the Plaintiff] did not receive the documents until after the [government] was served with suit," the Plaintiff has "substantially prevailed."[120] Therefore, Gahagan contends that he has substantially prevailed by causing the production of the requested information from the government because Defendants have given no reasonable excuse for their

---

[115] *State of Texas v. Interstate Commerce Comm'n*, 935 F.2d 728, 730 (5th Cir. 1991).

[116] *Blue v. Bureau of Prisons*, 570 F.2d 529, 533 (5th Cir. 1978).

[117] *Id.*

[118] *Id.* (holding that the district court abused its discretion in denying an award of attorney's fees after finding that there was no benefit to the public deriving from the case and discussing none of the other factors).

[119] Rec. Doc. 62-2 at 5.

[120] *Id.* at 6 (citing *Batton v. Internal Revenue Service*, 718 F.3d 522, 526 (5th Cir. 2013)).

refusal to conduct a legally adequate search, produce all responsive agency records, or produce a legally adequate *Vaughn* index before Gahagan filed suit and three motions for summary judgment.[121]

Defendants assert that although Gahagan suggests that he is eligible for attorney's fees because Defendants were required to file a *Vaughn* index, Defendants cite a District of Columbia Circuit case, *Northwest Coalition for Alternatives to Pesticides v. Environmental Protection Agency*, where the court concluded that an order compelling the production of a *Vaughn* index, without more, is insufficient to make a plaintiff a "prevailing party" to support a claim for attorney's fees.[122] Defendants also contend that the Court's Order granting summary judgment in favor of Gahagan, which concluded that CBP and ICE did not perform reasonable searches, does not make Gahagan eligible for attorney's fees because after supplemental declarations were filed, the Court did not require that additional searches be completed.[123] However, here, Defendants acknowledge that the Court also ordered them to release a Form I-826 in CBP's possession, which was originally withheld by CBP as non-responsive and therefore, it is undisputed that Gahagan is eligible for some attorney's fees.[124]

Furthermore, Gahagan contends, and Defendants do not contest, that Gahagan received 151 documents after he filed suit, and that it wasn't until July 23, 2015, after Gahagan filed his third motion for summary judgment, that ICE provided 56 pages of documents.[125] Although Defendants focus upon the fact that the Court only ordered the production of one specific

---

[121] *Id.* at 8 (citing *Batton*, 718 F.3d at 526).

[122] Rec. Doc. 63 at 3 (citing 275 F. App'x 10 (D.C. Cir. 2008)).

[123] *Id.* at 4.

[124] *Id.* at 3.

[125] Rec. Doc. 67 at 2–3 n.2.

document, Defendants do not address Gahagan's contention that he is eligible for attorney's fees based upon the Defendants' "voluntary or unilateral change in position."[126] Accordingly, Gahagan has demonstrated that he is eligible for attorney's fees both as a result of the Court's Order requiring Defendants to produce the Form I-826, as well as Defendants' voluntary disclosure of documents following the commencement of this suit.

## 2. Gahagan's Entitlement to an Award of Attorney's Fees

Gahagan asserts that he is entitled to attorney's fees because: (1) the public derived a benefit from this case; (2) Gahagan did not obtain any commercial benefit from this lawsuit; (3) he filed this suit in order to obtain documents for his client's deportation proceeding; and (4) Defendants have not satisfied their burden to show that their withholdings had a reasonable basis in law.[127] Defendants contend that Gahagan is not entitled to attorney's fees because the request was strictly personal and garnered no public benefit, Gahagan used this litigation as a means of discovery in his client's deportation proceedings, and Gahagan has not demonstrated that Defendants' withholdings were unreasonable.[128] The Court will address each of these arguments in turn.

### (a) Public Benefit

Gahagan, citing the Fifth Circuit in *Blue v. Bureau of Prisons*, asserts that this litigation resulted in a public benefit because a successful FOIA plaintiff always acts in some degree for the benefit of the public by bringing the government into compliance with FOIA and by securing the

---

[126] 5 U.S.C. § 552(a)(4)(E)(ii).

[127] Rec. Doc. 62-2 at 9–18.

[128] Rec. Doc. 63 at 4–8.

21

benefits assumed to flow from the public disclosure of government information.[129] The court also held, however, in weighing this factor, that a court should take into account "the degree of dissemination and likely public impact that might be expected from a particular disclosure."[130] The court stated that this factor "does not particularly favor attorneys' fees where the award would merely subsidize a matter of private concern; this factor rather speaks for an award where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices."[131] Therefore, Gahagan may not rely upon this general benefit in order to establish that this first factor has been met.

Gahagan also cites *Davy v. Central Intelligence Administration*, a D.C. Circuit case, in support of his contention that he is "the quintessential requestor of government information envisioned by FOIA."[132] However, in *Davy*, the plaintiff sought information regarding the individuals allegedly involved in President Kennedy's assassination, and had asserted that the released documents provided new information bearing on the controversy over a contention that the Central Intelligence Administration was involved in the assassination plot.[133] Gahagan's request of documents pertaining specifically to his client, for use in his client's deportation proceedings, does not serve the public in a similar way as the information requested in *Davy*.

However, Gahagan also asserts that the public benefitted from the government's compliance with his FOIA request because the government's response "worked to preserve the

---

[129] Rec. Doc. 62-2 at 9 (citing 570 F.2d 529, 533 (5th Cir. 1978)).

[130] *Blue*, 570 F. 2d at 533.

[131] *Id.* at 533–34.

[132] Rec. Doc. 67 at 4 (citing 550 F.3d 1155, 1157 (D.C. Cir. 2008)).

[133] 550 F.3d at 1159.

integrity of Immigration Court proceedings."[134] In support, Gahagan cites *Jarno*, where a judge in the Eastern District of Virginia concluded that the plaintiff's success on his FOIA claim contributed to the legitimacy of the immigration and asylum process.[135] In *Jarno*, the court cited a District of New Jersey case, *Landano v. United States Department of Justice*, for the proposition that "[a]ttorney's fees are appropriate where a FOIA response helps protect the public's interest in the 'fair and just' administration of justice."[136] The court in *Jarno* stated that the release of documents to the plaintiff allowed the Immigration Court to make a determination based on all the relevant evidence regarding the plaintiff's political asylum case, thereby preserving the fairness and legitimacy of the proceedings.[137] In this case, after filing suit, Gahagan has received 151 records, and on October 20, 2015, the Court ordered CBP to produce any segregable portion of the previously withheld Form I-826.[138] Gahagan represents that the documents "will be used in Mr. Weegar's immigration proceedings so that the Judge can make an informed determination based on all of the relevant evidence."[139] Accordingly, the Court concludes that the public benefit factor weighs in favor of an award of attorney's fees because the disclosure of the documents contributes to the legitimacy of the immigration proceedings.

---

[134] Rec. Doc. 62-2 at 9 (citing *Jarno v. Dep't of Homeland Sec.*, 365 F. Supp. 2d 733, 738 (E.D. Va. Apr. 18, 2005)).

[135] *Id.* (citing 365 F. Supp. 2d at 739).

[136] 365 F. Supp. 2d at 739 (citing *Landano v. U.S. Dep't of Justice*, 873 F. Supp. 884, 892 (D.N.J. 1994)).

[137] *Id.*

[138] Rec. Doc. 62-1 at 9; Rec. Doc. 57 at 17.

[139] Rec. Doc. 67 at 5.

### (b)    Commercial Benefit

Gahagan asserts that he filed this lawsuit because had a duty to obtain the information needed to effectively represent his client in immigration court proceedings.[140] Gahagan asserts that he received no commercial benefit and actually lost income by having to refuse a new case due to the time-consuming nature of the litigation.[141] Defendants do not appear to contest Gahagan's assertion that he obtained no commercial benefit, arguing only that Gahagan's personal interest in the requested material outweighs this factor.[142] Therefore, the Court finds that this factor weighs in favor of an award of attorney's fees.

### (c)    Nature of Plaintiff's Interest in the Records

Gahagan asserts that because he sought the records in order to assist his client in his removal proceedings, this factor weighs in favor of an award of attorney's fees.[143] On the other hand, Defendants contend that Gahagan is not entitled to an award of attorney's fees because Gahagan's personal interest in the records outweighs the other factors.[144]

Gahagan contends that in *Hernandez*, another section of the Eastern District of Louisiana determined that this factor weighed in favor of an award of attorney's fees where the plaintiff sought the requested records to ensure that he was afforded a full and fair hearing in his pending deportation proceeding.[145] Gahagan asserts that the court stated that the plaintiff's interest, while personal in nature, also implicated the strong public interest in preserving the administration of

---

[140] Rec. Doc. 62-2 at 11.

[141] *Id.*

[142] Rec. Doc. 63 at 5.

[143] Rec. Doc. 62-2 at 15.

[144] Rec. Doc. 63 at 5.

[145] Rec. Doc. 62-2 at 12 (citing 2012 WL 398328, at *11).

justice in our nation's immigration courts.[146] The court in *Hernandez* found the Eastern District of Virginia case, *Jarno*, which Gahagan also cites, instructive.[147] The court in *Jarno*, in discussing this factor, explained that the plaintiff's central interest in that case was to force the defendant to disclose the requested documents in order to facilitate the fair adjudication of his political asylum case in Immigration Court and, although this was his main motivation, the public benefit derived from the released documents and his case overall was substantial.[148] In *Jarno*, the court stated that "[a]ttorney's fees are appropriate where a FOIA response helps protect the public's interest in the fair and just administration of justice."[149]

In opposition, Defendants cite a Western District of Washington case, *Read v. Federal Aviation Administration*, where the court concluded that although the plaintiff had no commercial interest in the requested records, his personal interest was sufficient to motivate him to pursue the FOIA litigation and therefore, although the commercial benefit factor weighed in favor of granting attorney's fees, the factor was outweighed by the nature of the plaintiff's interest.[150] In *Read*, the plaintiff sought records from the Federal Aviation Administration.[151] The opinion does not explain, however, what information the requested records contained or why the plaintiff wanted the records. Therefore, the Court does not find *Read*, which is not binding, persuasive. Gahagan's asserted interest in this case was motivated by his desire to effectively represent his client in his removal proceedings. As in *Hernandez*, the Court concludes that Gahagan's interest in the

---

[146] *Id.*

[147] 2012 WL 398328, at *10.

[148] *Jarno v. Dep't of Homeland Sec.*, 365 F. Supp. 2d 733, 739–40 (E.D. Va. 2005).

[149] 365 F. Supp. 2d at 739.

[150] Rec. Doc. 63 at 5 (citing 252 F. Supp. 2d 1108, 1111 (W.D. Wash. 2003)).

[151] *Read*, 252 F. Supp. 2d at 1109.

requested records also implicates the strong public interest in preserving the administration of justice in our nation's immigration courts.

Defendants also assert that an award of attorney's fees is inappropriate in this case because Gahagan used the FOIA litigation as a means of discovery in his client's deportation proceedings.[152] In support, Defendants cite cases from the D.C. Circuit, the District Court for the District of Columbia, the District of Utah, and the Northern District of California, stating that when FOIA is used as a discovery tool, an award of attorney's fees is inappropriate.[153] Gahagan cites *Hernandez*, *Jarno*, and two Board of Immigration cases, *Matter of Henriquez Rivera* and *Matter of Khalifah*, in support of his assertion that there is no right to discovery in immigration proceedings, and that FOIA is the exclusive means that a respondent in Immigration Court proceedings must use to obtain documents.[154] In *Matter of Khalifah*, the Board of Immigration Appeals specifically stated that there is no right to discovery in deportation proceedings.[155] As the cases cited by Defendants demonstrate, a concern about using FOIA as a discovery tool arises when the plaintiff has used FOIA "as a substitute for discovery in private litigation with the government."[156] Here, Gahagan had no other option in obtaining these records. Furthermore, none of the cases cited by Defendants involve deportation proceedings. Therefore, the fact that Gahagan

---

[152] Rec. Doc. 63 at 5.

[153] *Id.* at 5–7 (citing *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 712 (D.C. Cir. 1977); *Horsehead Indus., Inc. v. EPA*, 999 F. Supp. 59, 67 (D.D.C. 1998); *Ellis v. United States*, 941 F. Supp. 1068, 1079 (D. Utah 1996); *Md. Dep't of Human Res. v. Sullivan*, 738 F. Supp. 555, 563 (D.D.C. 1990); *Simon v. United States*, 587 F. Supp. 1029 (D.D.C. 1984); *Guam Contractors Ass'n v. Dep't of Labor*, 570 F. Supp. 163, 169 (N.D. Cal. 1983)).

[154] Rec. Doc. 62-2 at 13–14 (citing *Hernandez*, 2012 WL 398328, at *10; *Jarno*, 365 F. Supp. 2d at 740; *Matter of Henriquez Rivera*, 25 I&N Dec. 575, 579 (BIA 2011); *Matter of Khalifah*, 21 I&N Dec. 107, 112 (BIA 1995)).

[155] 21 I&N Dec. 107, 112 (BIA 1995).

[156] *Sampson*, 559 F.2d at 712.

used FOIA in the instant litigation in order to obtain records to be used in a deportation proceeding does not weigh against an award of attorney's fees.

### (d)  Reasonableness of the Government's Withholdings

Finally, Gahagan asserts that Defendants have not satisfied their burden to show that their withholdings were reasonable.[157] In opposition, Defendants contend that Gahagan has failed to demonstrate that Defendants' withholdings were unreasonable.[158] Defendants contend that the document in question is a computer record that is printed in paper form only when it is to be served upon an individual who has been arrested or detained in order to provide him with notice of his rights.[159] Defendants contend that Mr. Weegar was never detained or arrested by CBP and therefore the Form I-826 was never printed, served, or executed.[160] Therefore, Defendants contend that their decision not to provide the document was reasonable in light of their understanding of the agency's electronic system.[161]

The Fifth Circuit in *Blue v. Bureau of Prisons* stated that the reasonableness of the government's withholding factor weighs in favor of an award of attorney's fees if the agency's nondisclosure "was designed to avoid embarrassment or thwart the requester."[162] Gahagan asserts that the burden is on Defendants to show that their withholding is reasonable, but cites no Fifth Circuit precedent for this assertion. The D.C. Circuit in *Davy v. Central Intelligence Agency* held that this factor requires a court to answer not whether the plaintiff has affirmatively shown that the

---

[157] Rec. Doc. 62-2 at 18.

[158] Rec. Doc. 63 at 7.

[159] *Id.*

[160] *Id.*

[161] *Id.* at 8.

[162] 570 F.2d 529, 534 (5th Cir. 1978).

agency was unreasonable, "but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after [the plaintiff] filed suit."[163] However, even if demonstrating this factor is Gahagan's burden, the Court concludes that Gahagan has demonstrated that the agency's failure to disclose was unreasonable.

The Fifth Circuit has held that FOIA's disclosure exemptions are "explicitly limited by statute and should be construed narrowly."[164] The withholding at issue in this case was not based upon any statutory exception, but rather the government's statement that the requested documents were of no consequence because the document was never printed, served, or executed. The Court, in granting in part Gahagan's third motion for summary judgment, determined that Defendants had not met their burden of establishing the validity of CBP's decision to withhold Form I-826 on the grounds that it was non-responsive, and concluded that the withheld Form I-826 was responsive to Gahagan's FOIA request.[165] Although Defendants contend that they did not act unreasonably in withholding the document, the Supreme Court has held that FOIA establishes a "strong presumption in favor of disclosure," and accordingly "places the burden on the [government] agency [to which a request has been made] to justify the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document."[166] Therefore, in light of the clear precedent of the Supreme Court and the Fifth Circuit, Gahagan has demonstrated that Defendants' actions in withholding the requested document were unreasonable.

---

[163] 550 F.3d 1155, 1162–63 (D.C. Cir. 2008).

[164] *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010) (citations omitted).

[165] Rec. Doc. 57 at 15.

[166] *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).

### (e)    Conclusion

Considering that all four factors weigh in favor of an award of attorney's fees, the Court concludes that an award of attorney's fees is appropriate.

### 3.    The Reasonableness of Gahagan's Requested Attorney's Fees

Gahagan requests an award of $34,777 in attorney's fees, representing a rate of $300 per hour, as well as costs in the amount of $469.70.[167] Defendants oppose this award on the grounds that: (1) Gahagan's requested rate of $300 is inappropriate and unsupported by other cases in the district; (2) in light of the *Johnson* factors, any award should be reduced given the amount of material that was produced in response to Gahagan's broad FOIA requests and the reasonableness of Defendants' withholdings; (3) Gahagan should only be compensated for time spent on successful claims; and (4) Gahagan exercised poor billing judgment.[168]

Courts in the Fifth Circuit engage in a two-step process to assess attorney's fees. First, a lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work.[169] "There exists a strong presumption of the reasonableness of the lodestar amount."[170] However, after calculating the lodestar, a district court may decrease or enhance the amount of attorney's fees based on the relative weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*[171] These factors are: (1) the time

---

[167] Rec. Doc. 67-1 at 8.

[168] Rec. Doc. 63 at 8–13.

[169] *Saizan v. Delta Concrete Prods. Co.,* 448 F.3d 795, 799 (5th Cir. 2006).

[170] *Id.* at 800.

[171] *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). Traditionally, courts have considered the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) when calculating attorney's fees. In *Perdue v. Kenny A. ex. rel. Winn*, 559 U.S. 542, 550–551 (2010), the Supreme Court noted that the *Johnson* factors were "[o]ne possible method" for determining reasonable attorney's fees, but that the factors "gave very little actual guidance to district courts. Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results." Since *Perdue*, however,

and labor required to litigate the matter; (2) the novelty and difficulty of the issues; (3) the skill

required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate

the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether

the client or case imposed time constraints; (8) the amount involved and results obtained; (9) the

experience, reputation, and ability of the attorney; (10) whether the case was "undesirable;" (11)

the type of attorney-client relationship and whether the relationship was long-standing; and (12)

awards made in similar cases.[172] The lodestar may not be adjusted due to a *Johnson* factor,

however, if the creation of the lodestar award, multiplying the number of hours reasonably

expended on the case by an appropriate hourly rate in the community for such work, already took

that factor into account.[173] Such reconsideration is impermissible double-counting.[174]

       The Court will first address the requested hourly rate. "'Reasonable' hourly rates 'are to be

calculated according to the prevailing market rates in the relevant community."[175] The applicant

bears the burden of producing satisfactory evidence that the requested rate is aligned with

prevailing market rates,[176] which necessarily includes an affidavit of the attorney performing the

---

the Fifth Circuit and the Eastern District of Louisiana have continued to weigh the *Johnson* factors when considering whether to decrease or enhance the lodestar in attorney's fee cases. *See, e.g., Ransom v. M. Patel Enters., Inc.*, 734 F.3d 377, 388 n.17 (5th Cir. 2013); *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013); *Altier v. Worley Catastrophe Response, LLC*, No. 11-241, 2012 WL 161824, at *22 (E.D. La. Jan. 18, 2012) (Wilkinson, M.J.). Accordingly, this Court does the same. *See Ahmed v. Bros. Food Mart, et al.*, No. 13-5948, Rec. Doc. 33 (E.D. La. Sept. 12, 2014) (Brown, J.).

[172] *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

[173] *Saizan v. Delta Concrete Prods. Co.,* 448 F.3d 795, 800 (5th Cir. 2006).

[174] *Id.*

[175] *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886 (1984)).

[176] *Blum*, 465 U.S. at 897.

work and information of rates actually billed and paid in similar lawsuits.[177] "When an attorney's customary billing rate is the rate at which the attorney requests the lodestar to be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed."[178] A court abuses its discretion when it awards attorney's fees without "a reasonably specific explanation for all aspects of a fee determination, including any award of an enhancement."[179]

    In support of his request for a rate of $300 per hour, Gahagan submits his own declaration stating that his normal billing rate is $300 per hour, as well as the declarations of three other attorneys who practice within the Eastern District of Louisiana and assert that Gahagan is a "known expert in the field of immigration law and the Freedom of Information Act in Louisiana" and that they are not aware of other attorneys in the Eastern District of Louisiana who would perform these types of services for less than $300 per hour."[180] In addition, Gahagan submits invitations he has received for speaking engagements, as well as the 2016 edition of Super Lawyers Magazine listing Gahagan as a Super Lawyer Rising Star.[181] Gahagan also asserts that he is the owner of The Immigration Law Firm of New Orleans who specializes in the areas of immigration law and the Freedom of Information Act, is the current Federal Litigation Chairman for the American Immigration Lawyers Association Midsouth Chapter, and additionally submits a list of 22 cases that he has litigated or is currently litigating involving immigration, FOIA, or both.[182] In support

---

[177] *Id.* at 895 n.11.

[178] *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995).

[179] *Perdue,* 559 U.S. at 558.

[180] Rec. Docs. 62-5, 62-6, 67-12 at 12–13.

[181] Rec. Doc. 62-5 at 5–6, 67-1 at 73.

[182] Rec. Doc. 62-5.

of his assertion that $300 per hour is the prevailing market rate, Gahagan cites *Hernandez*, stating that in a factually and legally similar FOIA case, the court awarded $300 per hour to an attorney with more than eight years of experience.[183] However, in opposition, Defendants contend that the Fifth Circuit in 2014 recently rejected Gahagan's argument in a case with "similar content and briefing" that an award of $300 per hour was appropriate, stating that the court there concluded that "$300 per hour appeared to be atypically high."[184] The Fifth Circuit, in *DaSilva v. United States Citizenship and Immigration Services*, affirmed the district court's award of an hourly rate of $200 per hour for Gagahan, noting that such an hourly rate was "within the middle of the range."[185]

The Court notes that the affidavits submitted by Gahagan are from attorneys working, not in the field of immigration law, but in "family law, personal injury and business litigation," "estate, succession, real estate and commercial law," and "criminal and plaintiff work," and therefore are not persuasive in determining the market rate for immigration attorneys and attorneys involved in FOIA litigation.[186] Nor does Gahagan provide information regarding rates actually billed and paid in similar lawsuits to support his claim for an hourly rate of $300.

Although Defendants do not submit any evidence challenging Gahagan's affidavits or declaration, they assert that a review of the applicable jurisprudence does not support an hourly rate of $300 per hour for an attorney with 7–8 years of experience.[187] Defendants cite a Fifth

---

[183] Rec. Doc. 62-2 at 18–19.

[184] Rec. Doc. 63 at 8–9 (citing *DaSilva v. United States Citizenship & Immigration Servs.*, 599 F. App'x 535, 543 (5th Cir. 2014).

[185] 599 F. App'x at 543.

[186] Rec. Docs. 62-6, 67-1 at 12.

[187] Rec. Doc. 63 at 9.

Circuit case, several cases from the Eastern District of Louisiana, as well as a Louisiana Fourth Circuit Court of Appeal case, all decided in the last twenty years, in which courts have awarded less than $300 per hour, including a case decided in 2008 where another section of the Eastern District of Louisiana awarded $150 per hour for a partner and $140 an hour for a junior partner,[188] and a 2005 case in which the Louisiana Circuit Court of Appeal determined that $200 per hour was not a rate in excess of community standards.[189] However, the most recent of the cases cited by Defendants was decided seven years ago, and therefore, these cases hold substantially less weight regarding the current prevailing rates in the New Orleans area.

This Court in No. 14-2233, *Gahagan v. United States Citizenship and Immigration Services*, in a March 21, 2016 Order, concluded that $200 an hour was an appropriate hourly rate for Gahagan given his eight years of experience in immigration law and FOIA.[190] In concluding that $200 was the appropriate hourly rate, the Court noted that the Fifth Circuit recently held that a district court that had awarded Gahagan $200 per hour in attorney's fees was within his discretion as $200 per hour was in the middle of the range of rates for attorneys with Gahagan's experience.[191] The arguments made in Gahagan's motion for attorney's fees in *Gahagan v. United States Citizenship and Immigration Services* are almost identical to the arguments made in the instant

---

[188] *Id.* (citing *St. Stephen's Missionary Baptist Church v. Taylor*, No. 05-294, 2008 WL 4057162 (E.D. La. Aug. 29, 2008) (Knowles, M.J.)).

[189] *Id.* (citing *Motton v. Lockheed Martin Corp.*, 2003-CA-0962 (La. App. 4 Cir. 3/5/05), 900 So. 2d 901).

[190] No. 14-2233, *Gahagan v. United States Citizenship and Immigration Services*, Rec. Doc. 59 at 39 (citing *Kennedy v. Generator & Utility Serv. Corp.*, No. 12-2499, 2013 WL 3456974, at *2 (E.D. La. July 9, 2013) (Wilkinson, M.J.) (finding that $160 per hour was within the range of reasonable rates for an attorney with almost six years of experience); *Gulf Coast Facilities Mgmt., LLC v. BG LNG Servs., LLC*, No. 09-3822, 2010 WL 2773208, at *6 (E.D. La. July 13, 2010) (Roby, M.J.) (finding a rate of $180 per hour reasonable for an attorney who had been practicing for a little over six years); *Marks v. Standard Fire Ins. Co.*, No. 09-1947, 2010 WL 487403, at *2 (E.D. La. Feb. 3, 2010) (Roby, M.J.) (finding that a rate of $185 per hour was reasonable for an attorney with seven years of experience)).

[191] *Id.* (citing *DaSilva v. United States Citizenship & Immigration Servs.*, 599 F. App'x 535, 543 (5th Cir. 2014)).

33

motion. Gahagan has provided the Court with no reason to reach a different determination regarding the appropriate hourly rate in this case, and the Court sees no reason to do so. Accordingly, the Court concludes that $200 per hour is appropriate.

Next, the Court turns to the number of hours reasonably expended on this litigation. The Fifth Circuit in *Saizan v. Delta Concrete Products Co.* stated that a plaintiff seeking attorney's fees has "the burden of showing the reasonableness of the hours billed and, therefore, [is] also charged with proving that [he] exercised billing judgment. Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant."[192] Gahagan contends that he has reasonably expended 100.6 hours on the merits of the litigation and 15.3 hours on the instant motion.[193] In support, he attaches his time records documenting the time he spent working on both the merits of the litigation and the instant motion.[194] In opposition, Defendants assert that although Gahagan has litigated several FOIA cases in the past, he spent 7.3 hours researching before spending 3.5 hours drafting the complaint and the majority of his motions for summary judgment are "bloated with the same canned caselaw and statutory guidance (as in *Gahagan v. USCIS*, 14-2233)."[195]

Although Gahagan asserts that he has exercised billing judgment in compiling the record,[196] Gahagan has not documented any hours "written off as unproductive, excessive, or redundant" and therefore has failed to meet his burden of showing that he exercised billing

---

[192] 448 F.3d 795, 799 (5th Cir. 2006).

[193] Rec. Doc. 67-1 at 8.

[194] *Id.* at 2–5.

[195] Rec. Doc. 63 at 12–13.

[196] Rec. Doc. 62-5 at 3.

judgment.[197] "The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment."[198] In his declaration, Gahagan asserts that, prior to the filing of this case, he had litigated seventeen immigration and/or FOIA related cases.[199] However, despite this experience, Gahagan asserts that he spent 7.3 hours performing research before drafting his complaint.[200] Furthermore, Gahagan asserts that he expended a total of 23.8 hours researching issues for his three motions for summary judgment and the corresponding reply memoranda.[201] However, again, Gahagan represents that he has litigated many FOIA cases in the past and therefore this number appears excessive. For example, in Gahagan's first motion for summary judgment, he asserted that it was unlawful to "route" a FOIA request to another agency or withhold responsive agency records for longer than 30 working days.[202] In his declaration, Gahagan asserted that he had litigated several FOIA cases in the Eastern District of Louisiana in the past, including another case before this Court, No. 14-2233, *Gahagan v. United States Citizenship and Immigration Services*.[203] In that case, Gahagan made the same argument, asserting that it was unlawful for an agency to "refer" responsive agency records to another agency or withhold responsive agency records for longer than 30 business days.[204]

---

[197] *Walker v. U.S. Dep't of Hous. and Urban Dev.*, 99 F.3d 761, 769–70 (5th Cir. 1996).

[198] *Id.* at 770.

[199] Rec. Doc. 62-5 at 3–4.

[200] Rec. Doc. 67-1 at 2.

[201] *Id.* at 2–5.

[202] Rec. Doc. 9-2 at 7.

[203] Rec. Doc. 62-5 at 4.

[204] No. 14-2233, *Gahagan v. United States Citizenship and Immigration Services*, Rec. Doc. 10-2 at 7.

In addition, as Defendants note, Gahagan asserts that he spent 11.8 hours researching and drafting the instant motion for attorney's fees, despite the fact that the motion is virtually identical to the motion for attorney's fees filed in No. 14-2233, *Gahagan v. United States Citizenship and Immigration Services*, where Gahagan billed 11.9 hours.[205] Having reviewed the motion for attorney's fees in the instant case and the motion for attorney's fees in *Gahagan v. United States Citizenship and Immigration Services*, and having determined that the motions contain almost entirely the same arguments and the same case law, the Court will reduce the number of hours that Gahagan may recover for his work on the instant motion to two hours rather than 11.8 hours. Gahagan's time records reflect the hours of an attorney who has to research and draft motions working from a blank slate, rather than an attorney with expertise in the subject matter and experience in FOIA litigation. Although it is prudent to ensure there wasn't any intervening caselaw, the sheer number of hours spent on researching and drafting in an area Gahagan claims to have expertise in is excessive.[206] Therefore, in light of the fact that Gahagan has not met his burden of showing that he exercised billing judgment, and considering the redundant and excessive nature of Gahagan's hours, the Court finds that a 25% reduction for the remainder of Gahagan's asserted hours is appropriate.[207] Reducing the hours that Gahagan may recover for the instant motion and applying a 25% reduction for billing judgment to the remaining hours, the number of hours reasonably expended on this case is 80.08.[208]

---

[205] Rec. Doc. 63 at 13.

[206] Here, Gahagan is being awarded $200 per hour which is a rate in the middle of the range. *DaSilva v. U.S. Citizenship and Immigration Servs.*, 599 F. App'x 535, 543 (5th Cir. 2014)).

[207] *Walker v. U.S. Dep't of Hous. and Urban Dev.*. 99 F.3d 761, 770 (5th Cir. 1996) (finding that 15% was the appropriate reduction); *Lalla v. City of New Orleans*, 161 F. Supp. 2d 686, 699–707 (E.D. La. 2001) (Livaudais, J.) (finding that 25% was the appropriate reduction).

[208] Gahagan asserted that he had spent 115.9 hours on the case. Rec. Doc. 67-1 at 8. 115.9-11.8=104.1. 104.1x.25=26.025. 104.1-26.025=78.075. 78.075+2=80.075.

Multiplying the number of hours reasonably expended in this case, 80.08, by the hourly rate of $200, the lodestar is $16,016. There is a strong presumption that the lodestar is sufficient and "a party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified."[209] Gahagan seeks an upward adjustment of the lodestar based upon the *Johnson* factors of preclusion of other employment and undesirability of the case.[210] Gahagan asserts that he is a sole practitioner and was precluded from accepting another case as a result of this litigation, causing a loss of $5,000 in income.[211] Gahagan also asserts that the undesirability of the case factor is intended to incentivize attorneys to accept undesirable cases, most often in the civil rights context, and he was forced to file costly and time-consuming litigation because the government refused to follow FOIA's 20-day mandate in producing the requested agency records and *Vaughn* index, and refused to properly adjudicate Gahagan's appeal "all the while knowing that Mr. Weegar's deportation hearing was fast approaching."[212]

The Court concludes that Gahagan has not met his burden of demonstrating that an enhanced fee is justified in this case. Gahagan has not provided any further explanation regarding his assertion that he lost $5,000 in income as a result of this case. No information regarding this statement was provided in his declaration, or in any other exhibit. Gahagan's bare assertion that he was precluded from taking a case and therefore lost $5,000 is insufficient to rebut the "strong presumption of the reasonableness of the lodestar amount."[213] Furthermore, Gahagan asserts that

---

[209] *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010).

[210] Rec. Doc. 62-2 at 21–23.

[211] *Id.* at 21–22.

[212] *Id.* at 23.

[213] *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).

the undesirability of this case warrants an upward adjustment.[214] However, in support, Gahagan only cites the government's actions which led to the filing of this lawsuit, and fails to explain why this makes litigation of the case undesirable. Therefore, Gahagan has failed to meet his burden of showing that the case is so undesirable as to warrant an upward adjustment.

Defendants seek to reduce the lodestar amount "given the amount of material produced in respect to Plaintiff's broad FOIA requests and the reasonableness of CBP's withholding – withholding a single document due to it being a generic computer generated cover letter" and that he was "largely unsuccessful in furtherance of his FOIA claims in this matter."[215] Defendants contend that Gahagan should only be compensated for time spent on his successful claims.[216] The degree of success obtained is perhaps the most important Johnson factor.[217] In support of their assertion that any award of attorney's fees should be reduced on this ground, Defendants cite a District Court for the District of Columbia case, *Electronic Privacy Information Center v. Department of Homeland Security*, where, they assert, the court awarded only $3,321.95 out of the requested $22,000 in attorney's fees "after the court weeded out improper billing" and reduced the fees because the plaintiff had only won one of its claims and devoted only 6 of 42 pages to that particular argument.[218] In opposition, Gahagan cites *Hernandez*, where the court stated that "an agency cannot put a requestor 'through the time and expense of enforcing compliance with FOIA and then complain that the resources expended were out of proportion to the good obtained.'"[219]

---

[214] Rec. Doc. 62-2 at 23.

[215] Rec. Doc. 63 at 11.

[216] *Id.*

[217] *Abner v. Kansas City So. Ry. Co.*, 541 F.3d 372, 376–77 (5th Cir. 2008) (citing *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

[218] Rec. Doc. 63 at 11–12 (citing 982 F. Supp. 2d 56 (D.D.C. 2013)).

[219] Rec. Doc. 67 at 10 (citing *Hernandez v. U.S. Customs & Border Protection Agency*, No. 10-4602, 2012

In his complaint, Gahagan alleged that he requested "any and all documents . . . related to Mr. Theodore Weegar in the possession of" Defendants.[220] Gahagan filed three motions for summary judgment.[221] After Gahagan filed his first motion for summary judgment, ICE and CBP produced documents to him and all three Defendants submitted declarations addressing the sufficiency of their searches and the basis for their decisions to withhold records from Gahagan.[222] In reply, Gahagan challenged the adequacy of Defendants' searches and CBP's failure to produce a *Vaughn* index.[223] The Court granted Gahagan's first motion for summary judgment to the extent that he asserted that CBP and ICE did not conduct an adequate search and denied the motion to the extent that he asserted that the Department of State had not conducted an adequate search.[224] The Court granted Gahagan's second motion for summary judgment to the extent that it requested that the Court order ICE to submit a one-page, fully redacted document in dispute to the Court for an *in camera* inspection and to submit the seven pages of documents marked as "non-responsive" to the Court for an *in camera* inspection as well.[225] The Court deferred ruling on whether ICE had lawfully withheld the information contained in the documents until it had the opportunity to inspect them.[226] The Court also ordered CBP to submit the disputed document to the Court for an *in camera* inspection and deferred decision on whether CBP must submit a *Vaughn* index or whether

---

WL 398328, at *14 (E.D. La. Feb. 7, 2012) (Barbier, J.)).

[220] Rec. Doc. 1 at 4–6.

[221] Rec. Docs. 9, 24, 49.

[222] Rec. Doc. 46 at 45.

[223] *Id.*

[224] *Id.* at 46.

[225] *Id.* at 48.

[226] *Id.*

it has lawfully withheld the information contained in the document until it had the opportunity to inspect the document.[227] In all, Defendants produced 151 records to Gahagan following the commencement of this suit.[228]

After reviewing the documents *in camera*, the Court granted Gahagan's second motion for summary judgment to the extent that it urged the Court to order CBP to produce a *Vaughn* index.[229] The Court denied the motion to the extent that it requested that the Court order ICE to produce the seven pages of "non-responsive" records, order ICE to produce any additional portions of the one-page fully-redacted record, order ICE and the Department of State to produce any reasonably segregable portion of any responsive records being withheld, and enjoin ICE and the Department of State from continuing to withhold non-exempt responsive records.[230] The Court granted Gahagan's third motion for summary judgment to the extent that Gahagan requested the Court to enjoin CBP from continuing to withhold any and all non-exempt records responsive to his FOIA requests and ordered CBP to produce any segregable portion of the Form I-826.[231] The Court denied the third motion for summary judgment to the extent that it requested that the Court order CBP to produce an unredacted Form I-826 and to enjoin all Defendants from continuing to withhold any and all non-exempt agency records responsive to Gahagan's FOIA requests.[232] The Court further ordered CBP to produce an updated *Vaughn* index.[233] Accordingly, the Court is not

---

[227] *Id.* at 49.

[228] Rec. Doc. 67 at 2 n.2.

[229] Rec. Doc. 47 at 11–12.

[230] *Id.* at 12.

[231] Rec. Doc. 57 at 17.

[232] *Id.*

[233] *Id.* at 18.

persuaded by Defendants' argument that Gahagan had limited success because it appears that, during the course of this litigation, he obtained access to the majority of the information he sought in his complaint.

The parties do not request an upward or downward departure based on any of the remaining *Johnson* factors. Reviewing these factors, the Court finds that some of the factors, whether the fee is fixed or contingent, and the nature and length of the professional relationship with the client, are inapplicable given that Gahagan is an attorney who represented himself pro se. The Court has already discussed the factor of "awards made in similar cases." The remaining factors confirm the reasonableness of the lodestar amount. Having concluded that none of the *Johnson* factors warrant an adjustment of the lodestar of $16,016, the Court will award attorney's fees in the amount of $16,016.

### 4.      Litigation Costs

Pursuant to 5 U.S.C. § 552(a)(4)(E), a court may also assess "litigation costs reasonably incurred." Gahagan seeks $469.70 in costs, $400 of which is for the filing fee and the remainder of which is for postage and printing costs.[234] Defendants do not state any opposition to Gahagan's recovery of litigation costs. The Court therefore finds that the costs were reasonably incurred and will award Gahagan the full $469.70 as requested.

### 5.      Deadline to Pay Award of Attorney's Fees

Finally, Gahagan requests that the Court set a deadline for Defendants to comply with any Court Order requiring Defendants to pay him attorney's fees.[235] The Court declines to do so. If Defendants fail to comply with a Court Order, Gahagan may file an appropriate motion.

---

[234] Rec. Doc. 67-1 at 5–6.

[235] Rec. Doc. 62.

## IV. Conclusion

The Court concludes that Gahagan has demonstrated that he has both "substantially prevailed" in this litigation and that he is entitled to an award of reasonable attorney's fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E).

Accordingly,

**IT IS HEREBY ORDERED** that Gahagan's "Motion for Attorney's Fees and Costs Pursuant to the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants shall remit payment to Gahagan in the amount of $16,485.70, representing $16,016 for attorney's fees and $469.70 for litigation costs.

**NEW ORLEANS, LOUISIANA**, this ___1st___ day of June, 2016.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**